# Exhibit A
## Part 1

**Paid in full for last day worked?**
**Hours Worked Last Day**
**First Day Missed From Work (ER)**<sup>**</sup>  06/21/2006
**Has Employee Returned to Work**
**Actual RTW Date**
**RTW Duty Type**

## Insurance Information

**Healthcare Insurance Provider**
**Specify Other:**
**Life Insurance with Cigna?**
**Life Policy Number**
**STD Effective Date**
**STD Contribution**
**STD Post-Tax Contribution**          0.00 %
**Did the Employee purchase a Buy-Up Coverage for STD?**
**STD Buy-Up Effective Date**
**STD Buy-Up Contribution**
**STD Post-Tax Buy-Up Contribution**   0.00 %
**LTD Effective Date**
**LTD Contribution**
**LTD Post-Tax Contribution**          0.00 %
**Did the Employee purchase a Buy-Up Coverage for LTD?**
**LTD Buy-Up Effective Date**
**LTD Buy-Up Contribution**
**LTD Post-Tax Buy-Up Contribution**   0.00 %
**Employer-Calculated Blended Contribution**   0.00 %

☐  **Requested Job Description From Employer**

**Incident Number**          1495456
**Comments:**
SIGNED AUTH-NO VERIFY RTW DATE
HC-UNKNOWN

**Healthcare Connect**        No
**Claim Office**              350378
**Early Notice ID**           000000000
**CHC Eligibility Source**
**CHC Data Source**
**CHC Medical Product Type**
**CIGNA Behavioral Type**
**CHC Well Aware**            Unknown

| **Last Changed User** | Carla Brewster | **Last Changed Date** | 08/21/2006 03:23 PM |
| --- | --- | --- | --- |

| **Status:** | Completed | **Assigned To:** | Carla Brewster | **Created:** | 08/21/2006 03:15 PM |
| --- | --- | --- | --- | --- | --- |

JANICE BAKE
LINA 0089



Noemi Martinez-Landis
CIGNA Group Insurance



**CIGNA**

October 24, 2007

MR. MARK DEBOFSKY
DALEY, DEBOFSKY & BRYANT
55 W. MONROE ST.
STE. 2440
CHICAGO, IL 60602

Routing d12
12225 Greenville Avenue
Suite 1000
Dallas, TX 75243-9337
Telephone 1-800-352-0611 ext 1249
Facsimile 860-731-3022

Name: JANICE BAKE
Incident Number: 1495456
Plan/Policy Number: LK0960120
Plan/Policy Holder: CORUS BANKSHARES, INC.
Underwriting Company: Life Insurance Company of North America

DEAR MR. DEBOFSKY,

We have carefully reviewed Ms. Bake's claim for Long Term Disability (LTD) benefits, and must affirm our previous denials of claim.

Our review of Ms. Bake's claim file indicates she is claiming Disability benefits from performing her occupation as a First Vice President from June 21, 2006 forward due to cervical radiculopathy with myelopathy, thoracic kyphosis, carpal tunnel syndrome (CTS), rheumatoid arthritis (RA0, spondylosis, degenerative disk disease (DDD), Hypercholesterolemia, high blood pressure (HBP), diabetes, neuropathy, bronchitis, emphysema, asthma, osteoporosis, reflux and TIA.

Corus Bankshares Inc's Long Term Disability group policy has the following provisions:

Definition of Disability
"An Employee is Disabled if, because of Injury or Sickness,
1. he or she is unable to perform all the material duties of his or her regular occupation, or solely because of Injury or Sickness, he or she is unable to earn more than 60% of his or her Indexed Covered Earnings; and
2. after Disability Benefits have been payable for 24 months, he or she is unable to perform all the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, he or she is unable to earn more than 60% of his or her Indexed Covered Earnings."

Disability Benefits
"The Insurance Company will pay Disability Benefits if an Employee becomes Disabled while covered under this Policy. A Disabled Employee must satisfy the Benefit Waiting Period and

JANICE BAKE
LINA 0090

October 24, 2007
Page 2

be under the Appropriate Care of a Physician.  Satisfactory proof of Disability must be provided
to the Insurance Company, at the Employee's expense, before benefits will be paid.  The
Insurance Company will require continued proof of the Employee's Disability for benefits to
continue."

Benefit Waiting Period
"The Benefit Waiting Period is the period of time an Employee must be continuously Disabled
before Disability Benefits may be payable. The Benefit Waiting Period is shown in the Schedule
of Benefits."

The Benefit Waiting Period under the Corus Bankshares Long Term Disability policy is 90 days
of continuous Disability.

Per policy language, to qualify for Long Term disability benefits under this policy, the medical
evidence on file must first support continuous functional deficits from June 21, 2006 thru
September 19, 2006 and then forward.

Ms. Bake underwent anterior cervical diskectomy and fusion in January 2006.  She did return to
work temporarily but stopped working again on June 20, 2006 due to complaints of pain.

All medical evidence on file was taken into consideration for the appeal of Ms. Bake's claim.
Additionally an Independent Peer Review was conducted prior to rendering our determination.
A copy of this report is included for your review.

Based on the results of the medical review, although the available documentation support
multiple medical problems, the clinical findings do not provide documentation to support what
is precluding Ms. Bake from functioning at a sedentary capacity throughout the Benefit Waiting
Period.

In reviewing Ms. Bake's claim, Life Insurance Company of North America considered her
claim file as a whole for purposes of determining her entitlement to benefits. The policy
provides that Life Insurance Company of North America would pay benefits only if a person
met the policy's requirements.  Disability is determined by medically supported limitations and
restrictions which would preclude Ms. Bake from performing the duties of her sedentary
occupation throughout the Benefit Waiting Period. The presence of a condition, diagnosis or
treatment plan does not equate disability under the policy.

As the information on file is not sufficient to change our previous determinations regarding your
eligibility for Long Term Disability benefits under this policy, we are affirming our previous
denial decisions within the meaning and terms of this group Long Term Disability policy.
Consequently, we will consider your client to have exhausted all administrative remedies with
our office and no further appeals will be considered.

JANICE BAKE
LINA 0091

October 24, 2007
Page 3

Please note that Ms. Bake has a right to bring legal action regarding this claim under the ERISA section 502(a). The plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local United States Department of Labor Office or your State Insurance Regulatory Agency.

Part 919 of the Rules of the Illinois Department of Insurance requires that our company advise you that if you wish to take this matter up with the Illinois Department of Insurance, it maintains a Consumer Division in Chicago at:

100 W. Randolph St., Ste., 15-100
Chicago, IL 60601
and in Springfield at:
320 West Washington St.
Springfield, IL 62767

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy. This determination has been made in good faith and without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein.

Please review your client's insurance booklet, certificate or coverage information available from her employer to determine if she is eligible for additional benefits.

Sincerely,


Noemi Landis

 

Avrom Simon, MD, MPH, CPE
333 W. Hubbard
Suite 708
Chicago, IL 60610

Patient: Janice Bake

File No.: FS 58980

Date: 10/22/07

To Whom it May Concern:

This complex case concerns a patient who is currently 57 years old. The patient was employed in a bank; the job duties of her position were described as "sedentary" in regard to physical demands. Records in this case begin in 4/02; I will begin by summarizing the pertinent clinical information and then addressing the specific questions in this case.

The file begins with a visit to the hospital on 4/3/02. The patient had what appeared to be a vertebro-basilar transient ischemic attack. The patient's medication at the time of admission were: Zanaflex, Aciphex Levoxyl, Singulair, Lipitor, Evista, Paxil, Norvasc, Ambien, Advair, Baby Aspirin.

Brain MRI and EEG were normal.

In 8/03, the patient is seen for hand and neck pain. EMG/NCV testing shows bilateral carpal tunnel syndrome. MRI of the cervical spine showed multiple level degenerative disc disease. In 1/04, the patient is noted to have "chronic pain." The patient had a knee problem with an MRI of the knee failing to show surgically amenable pathology. Medications at this time included: Naprosyn, Gabitril, Albuterol, Advair, Baby Aspirin, Metformin, Fastin, Ambien, Cymbalta, Zanaflex, Singulair, Evista, Cardizem, Benicar, Nexium, Zetia, Synthroid and Folvite. Dr. Mizera was helping the patient optimize treatment options for her fibromyalgia complaints. Other disease processes present in this patient included anxiety, somatic dysfunction, hypertension, diabetes, GERD, hypothyroidism, asthma and emphysema. Depression had been a problem, yet Ms. Bake indicates that she was doing better with that.

Records then shift a year later to 1/05; the patient is noted to be a brittle diabetic, associated with some nausea and fatigue. On 1/17/05, the patient was seen by Dr. Mizera for left calf pain; this was felt possibly due to a radiculopathy. Testing included MRI of the thoracic spine and lumbar spine; an L4-5 disc herniation on the left was noted (and had been noted in prior evaluations). Ultrasound for venous thromboses was negative.

Ms. Bake was seen by a pain management specialist. An "inconsistent" neurological exam was documented. Oxycontin was recommended to aid in pain relief.

The next records are from 5/05; at that doctor's visit we are told that the patient "has recently been diagnosed with rheumatoid arthritis. She could not tolerate Methotrexate and is currently treated with Prednisone and apparently some nonsteroidal (anti) inflammatory medication also." On this visit to the neurologist, the patient had a diagnosis made of left ulnar neuropathy.

On 6/22/05, the patient was taken to surgery to treat a left knee meniscus tear. On 9/9/05, the patient had arthroscopic surgery on the other knee; chondromalacia was found at surgery.
In 2006, the patient had a cervical fusion procedure at C5-6, C6-7 on 1/30/06, due to herniated discs at these two levels and ongoing pain in the upper extremities. In early 2/06, there were several tests for cardiac pathology. Post operative notes indicate good healing in regard to the cervical spine surgery. In 3/06, the patient began her physical therapy treatments. This continued for more than a year.

JANICE BAKE
LINA 0093




Page 2
Patient: Janice Bake

The patient was seen by Dr. Bovis, neurosurgeon, on 4/25/06, to evaluate ongoing pain in the thoracic spine. There was some concern about a possible discitis or osteomyelitis. The patient had a cardiac screen on 5/26/06 which showed "coronary artery disease with soft plaque causing approximately 30% obstruction in the proximal LAD." Carotid artery testing was normal, as were lower extremity peripheral arteries. No specific action was taken in regard to the patient's cardiac status. Repeat thoracic MRI in 5/06 was interpreted as showing multiple level degenerative disease. Biopsies were done of the thoracic disc; they were negative for malignancy. The patient ceased working on 6/21/06.
There are a series of PT notes from 7/06 for some sort of musculoskeletal pain complaints. On 7/27/06, the neurosurgeon documents a normal exam, although the patient has subjective complaints of some numbness and tingling in the arm. Brain MRI was normal.

There is a visit to orthopedist Dr. Bergin from 8/22/06, at which time the patient had a complaint of right leg pain, with a normal neurological examination. "Overall her pain is being managed. However, she is unable to perform her job duties and this may be permanent," said Dr. Bergin. More PT continued, and on 8/25/06 we are told "able to do more around the house compared to the onset of therapy." There was a visit to the rheumatologist in 9/06 who advises a home exercise program for iliotibial band tightness. At the end of 10/06 there was workup for GI distress; an abdominal wall hernia was diagnosed, which was surgically treated on 11/10/06.

There is another note from Dr. Bergin, orthopedist, from 11/06, noting that the patient has a "remarkable tremor," something heretofore not noted by anybody. She is noted to be unsteady when walking, although has no focal neurologic deficits.

There is a report from the Bureau of Disability Determination Services from 12/6/06. The patient alleges disability due to:

Cervical Spine pain
Numbness and tingling of the upper extremities
Thoracic Spine pain
Right and left knee pain as well as jaw pain

On exam, Dr. McFarlane notes that the patient is in no distress, but can not sit in one position for a long time due to discomfort in her thoracic spine and cervical spine. There was a decrease in range of motion at the lumbar spine and cervical spine, with some point tenderness to palpation over the paraspinal muscles. There was some pain on full range of motion of the knees, and the patient was using a cane to aid in ambulation. There was no muscle atrophy or wasting seen. There was a self limiting sub-maximal effort in regard to motor muscle testing. The patient had normal hygiene and wore normal and appropriate clothing.

A follow up appointment with the rheumatologist notes bilateral knee arthritis. The patient "has had improvement in her neck pain. She has been using her TENS unit. She is well appearing. She has some tenderness in her trapezius muscles and paraspinal muscles, predominantly in her thoracic spine and lower lumbar spine.

No pain with forward flexion or extension of her lumbar spine. No pain with internal or external rotation of her hips. No pain with range of motion of her knees." No mention of the tremor was made.
Repeat cervical spine and thoracic spine MRI was done in 1/07; multi-level degenerative changes were seen, with no intervening changes. Dr. Arnold, the rheumatologist, notes that "she has excellent grips strength in her hands bilaterally. She has good strength at her biceps and triceps. She has no significant lateral epicondylar tenderness. There is no swelling in her left upper extremity. She has crusting around her lips and is otherwise well-appearing."

JANICE BAKE
LINA 0094

 

Page 3
Patient: Janice Bake

There is a note from PT from 2/27/07 telling us that the patient "reports able to return to increase ADL activity. Able to use arms more overhead with getting dishes out of cabinet and able to return to cooking with lighter/smaller pots and pans." The patient was going to join a gym with a pool to engage in exercises.

The patient was seen by Dr. Gil, psychiatrist, for an independent evaluation on 5/17/07. The patient was diagnosed with depressive disorder. The patient stated that she has significant problems with performing activities of daily living, and that her niece or sisters come over to help her take care of grooming and hygiene. The patient uses a cane, but drives short distances. She is only able to concentrate for about 20 minutes watching TV. She has difficulty sleeping and naps during the day. She does not do any home chores activities such as cleaning or laundry. During the interview with Dr. Gil the patient was noted to be depressed and tearful.

There is an initial evaluation from pain management specialist Dr. Konowitz from 7/07 who documents an unremarkable exam. Specifically there was no dermatomal sharp touch loss, with "manual muscle testing (being) normal. The gait is normal." He wanted to review prior studies before treating the patient.

Discussion

I attempted to reach Dr. Arnold the rheumatologist on two occasions (10/18 and 10/19); she was unavailable. On 10/18 Dr. Bergin was in surgery. A message left with Diane on 10/19 for Dr. Bergin was not returned.

Question:

**Please review the medical information sent to you and comment whether the Restrictions and Limitations are supported or not in the documents provided for review from 06/21/06 through 09/18/06 and from 09/19/06 through present.**

The patient has had chronic pain for the duration of this case (i.e. since at least 2002) and likely way before that. I do not find evidence that the patient's status precluded her capacity for sedentary work in the bank historically. Notes indicate that nothing particularly unique occurred to the patient on 6/21/06 to make her stop working. Progress notes from providers subsequent to that time fail to inadequate a decompensation in her status. She was actively progressing in her physical therapy and actively engaging in exercises. There were occasional subjective complaints of pain that did not "match up" objectively. Specifically, I found no evidence of muscular deconditioning, as would undoubtedly occur in a person being quite sedentary. Neurosurgeon Dr. Bovis write on 7/27/06, "She has no weakness and no other complaints.

A detailed neurologic examination was performed revealing that she is entirely neurologically intact." No tremors, no weakness, no atrophy, no gait disturbance, no visual problems. A PT note from 8/25/06 states that "overall, notices able to do more around the house compared to the onset of therapy."

In summary, then, I fail to see objective data that would preclude sedentary work in this patient from 6/21/06 to 9/18/06. The patient had ongoing medical problems that required medical attention, doctor's visits and physical therapy, as well as medication, which is not being disputed. There was no significant change in status that would have required a departure from prior sedentary work duties.

On 10/26/06, the patient developed abdominal pain which was later deemed to be an abdominal wall hernia. This was treated surgically on 11/10/06. By 11/28/06, the patient was back at her physical therapist.

JANICE BAKE
LINA 0095



Page 4
Patient: Janice Bake

On 12/7/06 the patient states, "...noticing past few days starting to improve and activity helps." Ongoing notes from Dr. Arnold, the rheumatologist fail to show significant functional impairment or pathology during the patient's office visits. The Social Security Disability examiner, in his review from 12/06 documents no atrophy or muscular deconditioning. He documents extensive subjective complaints that are not compatible with the patient's physical exam findings.

PT notes from 2/27/07, as noted above, indicate, "Patient reports able to return to increased ADL activity. Able to use arms more overhead with getting dishes out of cabinet and able to return to cooking with lighter/smaller pots and pans." She was to join a gym. It must be noted, that although the patient continued to see her numerous providers, and had ongoing musculo-skeletal problems requiring ongoing medical attention, we are exploring her functional capabilities. Again, the preponderance of notes suggest that the patient had no evidence of deconditioning or atrophy, as would be expected in a patient as otherwise dysfunctional as Ms. Bake asserts. Physicians' progress notes should clearly delineate the patient's functional status and behavior in the office, waiting room, etc. These notes do not indicate impairment of such a degree that sedentary work activity would be precluded. This is seen not only in the physician notes, but also, as seen above, in physical therapy notes. Using the arms overhead to obtain dishes from her kitchen cabinet and cook is notable, as this activity easily requires the physical demands of performing a sedentary job.

PT notes also indicate an ongoing active exercise program which the patient freely engages in on a regular basis.

The note from the psychiatrist in 5/07 indicates that the patient has significant depression; it is not clear to this reviewer if the patient is being optimally treated with appropriate medications for this condition, which, if adequately treated, might help relieve some of her subjective complaints. Clearly, it appears that the patient's mental health disorder is playing some role in her ongoing subjective status. I will defer further analysis of that, however, to a psychiatrist. Intriguingly, the patient relates that she must get up and move about every 20 minutes or so; Dr. Gil does not indicate if the patient had to get up and move about during the course of their interview, which likely exceeded 20 minutes.

The data in the file supports that this patient has multiple medical problems. Note that the patient's diabetes, hypertension, pulmonary conditions, etc., are playing no significant role here. The key issue is the patient's ongoing musculo-skeletal complaints, issues that have been present for years. Again, in 6/06, there was no significant fomenting event that led to the patient to suddenly cease work from her sedentary job. The notes fail to show that the patient is significantly functionally deteriorated. She has no evidence of muscular deconditioning. The patient is engaging in sedentary work merely by getting up in the morning, getting dressed and taking a shower.

Notes from her providers and her physical therapists indicate that the patient is performing at, a minimum, this level. The patient drives and is able to go to her appointments. She is able to perform the exercises (which clearly exceed sedentary physical demand) at her physical therapists. Numerous providers document unremarkable examination findings, including pain management specialist Dr. Konowitz, in his note from 7/07, the last note in the file.

I fail to see objective evidence that supports restrictions or limitations in this patient from 9/19/06 onward, with the exception of the time period noted above for the hernia surgery. The patient would require an ergonomically correct work station, and would require a postural/stretching break every hour of 5 minute's duration.

 

Page 5
Patient: Janice Bake

Thank you very much for this file review.   Please feel free to consult with me again if I can be of additional assistance.

Professionally,


Avrom Simon, MD, MPH, CPE



# ACKNOWLEDGEMENT LETTER

TO: Jo Jacobson

PHONE #: *972-907-5685*

OFFICE: *Dallas*

CLAIMANT: Janice Bake

IC#: *FS58980*

REFERRAL & MEDICAL RECEIVED BY INTRACORP ON: 09/26/07

PHYSICIAN ADVISOR SPECIALTY:  Occupational Medicine

** FINAL REPORT WILL BE FAXED TO YOU ON OR BEFORE:  10/11/07

(WITHIN 10 WORKING DAYS OF RECEIPT)

Sharon Garcia, LVN                          Date: 09/26/07
INTRACORP RUR NURSE

4100 International Pkwy, Suite. 1010, Carrollton, TX 75007
(800) 237-0377 EXT 74225
Fax 972-307-3766

*Noemi Martinez-Landis*
*CIGNA Group Insurance*
12225 Greenville Avenue
Suite 1000
Dallas, TX 75243-9337

Phone: 800-352-0611 ext. 1249
Fax: 860-731-3211



**CIGNA Group Insurance**
Life · Accident · Disability·

MR. MARK DEBOFSKY
DALEY, DEBOFSKY & BRYANT
55 W. MONROE ST.
STE. 2440
CHICAGO, IL 60602

September 20, 2007

| | |
|---|---|
| Name: | JANICE BAKE |
| Incident Number: | 1495456 |
| Plan/Policy Number: | LK0960120 |
| Plan/Policy Holder: | CORUS BANKSHARES, INC. |
| Underwriting Company: | Life Insurance Company of North America |

DEAR MR. DEBOFSKY,

This letter is to acknowledge the receipt of the request for the voluntary appeal of the above mentioned Long Term Disability claim in the Dallas Appeals Team.  The appeal will be managed by:

Noemi Landis
Appeals Claim Examiner
CIGNA Group Insurance
Dallas Appeal Team
12225 Greenville Avenue, 5th Floor
Dallas, TX 75243
PH:  800-352-0611 Ext 1249
FAX: 860-731-3022

It is our understanding you have submitted all the available documentation to support this appeal.  Therefore, we will proceed with a complete medical review of all the evidence on file.  We need this information to determine your functional ability, and whether you qualify for Total Disability benefits as defined under the Long Term Disability policy.

The medical review takes four to six weeks.  Should there be any delays, we will notify you immediately.

Please contact our office at 800-352-0611 ext. 1249 should you have any questions.

Sincerely,

Noemi Martinez-Landis
Appeal Claim Manager

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation.  Products and services are provided by these subsidiaries and not by CIGNA Corporation.  These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

LAW OFFICES

# Daley, DeBofsky & Bryant

55 W. Monroe St.
Suite 2440
Chicago, Illinois 60603

VOICE (312) 372-5200
FAX (312) 372-2778
WEB ddbchicago.com

Frederick J. Daley Jr.
Mark D. DeBofsky
David A. Bryant
Marcie E. Goldbloom
James R. Comerford
Violet Borowski
Sandra Dye
Gregory Benker

Of Counsel
Heather F. Aloe

August 27, 2007

Ms. Medha Bharadwaj
Appeal Claim Manager
CIGNA Group Insurance
D212
12225 Greenville Ave, Suite 1000
Dallas TX, 75243-9337
**BY CERTIFIED MAIL**

Re:    Claimant:    Janice Blake
       Incident No.:    1495456
       Policy No.:    LK0960120

Dear Ms. Bharadwaj:

We are pleased to submit Ms. Bake's second appeal to CIGNA's denial of Ms. Bake's claim for long-term disability benefits denied both initially and following appeal. As a preliminary matter, we refer you to our appeal letter of April 5, 2007 addressed to Michelle Miller. We stand on all the arguments previously made because they remain valid with respect to Ms. Bake's long-term disability claims, and further submit additional evidence and the arguments below which should be considered together with both the evidence submitted and arguments made in our prior appeal.

As you are aware, Ms. Bake was employed at Corus Bank as the First Vice President Operations Analysis. She was diagnosed with cervical spondylosis and herniated disks at C5-6 and C6-7, and underwent anterior cervical diskectomy and fusion at C5-6 and C6-7 in January 2006. Ms. Bake attempted to transition back to work after first working at home part-time and at work part-time while simultaneously undergoing physical therapy. However, due to persistent, severe pain in her back, neck and arms, Ms. Bake was forced to cease working on June 20, 2006, ending her long-time, 31-year employment with Corus Bank. Ms. Bake subsequently applied for long-term disability ("LTD") benefits. CIGNA denied her claim on November 8, 2006, and again on appeal on May 25, 2007.



CIGNA erroneously denied Ms. Bake's LTD claim by failing to consider the effect of all Ms. Bake's impairments in assessing her disability. *Abram v. Cargill, Inc.,* 395 F.3d 882 (8th Cir. 2005); *Kalish v. Liberty Mutual/Liberty Life Assur. Co. of Boston,* 419 F.3d 501 (6th Cir. 8/18/2005)(failing to consider co-morbidity of accompanying conditions). Failing to consider the combined effect of all of a claimant's impairments constitutes a failure to provide a full and fair review as required by ERISA. *Combe v. Life Insur. Co. of North America,* 2007 U.S.Dist.LEXIS 45187 (E.D.La. 6/21/2007)(same).

Ms. Bake applied for LTD benefits after she was forced to discontinue working on June 20, 2006, due to severe pain in her back and neck, radiating to her upper and lower extremities. Ms. Bake suffers from multiple impairments which contribute to her constant pain including: cervical myelopathy with post-operative changes, thoracic kyphosis, carpal tunnel, rheumatoid arthritis, spondylosis, and degenerative disc disease. In addition, Ms. Bake also suffers from: hypercholesterolemia, high blood pressure, diabetes and related mild neuropathy, chronic bronchitis, emphysema, asthma, osteoporosis, TIA (stroke) and acid reflux. All of Ms. Bake's medical conditions are documented by her physicians in the medical documentation supplied to CIGNA.

In addition, all of this evidence was presented to the Social Security Administration which has found Ms. Bake "disabled," a determination connoting an inability to engage in "any substantial gainful activity." 42 U.S.C. § 423(d)(1)(A)-definition of "disabled" under Social Security Act. We are enclosing a complete copy of the Social Security claim file, including a medical report prepared by Frank Jimenez, M.D. finding Ms. Bake disabled due primarily to spinal stenosis. An evaluation by Paul McFarlane, M.D., contained in the Social Security record also documents six discrete impairments, including a balance disorder in addition to her pain, myelopathy, neuropathy, and carpal tunnel syndrome. In addition, an evaluation performed by Howard Konowitz, M.D. on July 24, 2007 further corroborates the severity of Ms. Bake's multiple pain sources.

All of this evidence corroborates the reports we have previously provided, which include detailed reports and evaluations by Dr. Christopher Bergin, furnishing a detailed rationale explaining why Ms. Bake cannot work. Those records, in turn, are further supported by the physical therapy notes showing Ms. Bake's limitations in her ability to perform activities of daily living.

Even though Ms. Bake suffers from multiple impairments, which Dr. Bergin, in his report of May 10, 2007, states is primarily due to thoracic degenerative disc disease, although she also suffers from cervical and lumbar spine disease, among other impairments, CIGNA chose only to concentrate on her cervical myelopathy as evidenced from the CIGNA's claim documents (e.g., Primary ICD Description "Cerv Disc W Myelop" and nothing listed under Secondary ICD Description). John Mendez, M.D., who performed a paper review of the medical records indicated in the claim file on 5/1/07 "no documentation of significant measured physical limitation such as spinal range of motion by inclinometry and/or upper extremity strength deficits by manual muscle testing to support any work restriction recommendations." That conclusion is absurd since the physical therapy notes document range of motion deficits and other limitations. Ms.

JANICE BAKE
LINA 0106

Bake's physical therapy reports from Swedish Covenant Hospital document decreased strength and range of motion in the upper extremities and cervical spine (5/11/06); upper extremity strength of 3+/5 (10/26/06); lumbar flexion of 30% with pain (1/5/07); and lumbar flexion of 50% (3/1/07). The physical therapy notes also reflect Ms. Bake's difficulty ambulating stairs (1/5/07) and her inability to carry objects (1/5/07; 3/1/07).

In addition, the Independent Medical Examination performed for Ms. Bake's social security disability claim by internist Paul McFarlane, M.D., on December 6, 2006, provides further objective evidence of Ms. Bake's physical limitations. Dr. McFarlane noted that Ms. Bake moves around "with some hesitation and difficulty and discomfort ambulating from standing to sitting and cannot sit in one position for a long period of time due to discomfort in her thoracic spine and cervical spine." He observed Ms. Bake "does have a resting tremor of the head bobbing" and walks with a cane. Upon examination she had point tenderness at C5-C6 and thoracic spine T5-T10. Her range of motion of the lumbar spine was limited – flexion 40 degrees, extension 10 degrees and lateral flexion 5 degrees. Ms. Bake exhibited decreased range of motion of the cervical spine – flexion 20 degrees and extension 10 degrees. She also had range of motion pain in both knees and grip strength of 4/5 bilaterally in the upper and lower extremities.

Further, on March 30, 2007, one of Ms. Bake's treating physicians, orthopedic surgeon Dr. Bergin, completed a Physical Residual Functional Capacity Questionnaire documenting her physical limitations. Dr. Bergin indicated Ms. Bake was incapable of even "low stress" jobs because of chronic pain; rarely able to lift less than ten pounds or turn her head right/left; never able look down (sustained flexion of neck), hold her head in a static position, twist, stoop, crouch/squat, climb ladders/stairs, grasp/turn/twist objects, reach overhead, or perform fine manipulations with her fingers; and only able to sit for 20 minutes at a time.

But most important of all, Ms. Bake's disability is due to pain caused by her multiple physiologic disorders. The United States Court of Appeals for the Seventh Circuit recently addressed many of the issues raised in this appeal in *Diaz v. Prudential Ins.Co. of America,* 2007 U.S.App.LEXIS 2007 (7th Cir. 8/23/2007), a case we litigated. The many lessons taught by that ruling apply here with equal force. First, complaints about severe, intractable pain "cannot be discounted simply because it is 'self-serving' or because it is not 'medical' or 'neurological' evidence." *15. Moreover, in *Diaz* as in this matter, the evidence described is more than a long series of complaints spoken across the breakfast table. It demonstrates the kind of "long history of treatment" that the court has found relevant in several cases. *16. Like the course of pain treatment described in *Diaz,* Ms. Bake also has documented evidence of pain treatment corroborating the severity of her pain complaints. Ms. Bake takes the following pain medications: Celebrex,[1] Lyrica,[2]

---

[1] Celebrex is used to relieve pain, tenderness, swelling and stiffness caused by osteoarthritis, rheumatoid arthritis and ankylosing spondylitis (arthritis affecting the spine.)
http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a699022.html (last updated 0/1/06)

[2] Lyrica is used to relieve neuropathic pain in arms, hands, fingers, legs, feet or toes.
http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a605045.html (last updated 8/1/07)

JANICE BAKE
LINA 0107

Nabumetone,[3] and Ultracet.[4] Along with strong pain medications, Ms. Bake uses a TENS (Trancutaneous Electrical Nerve Stimulation) unit, a well-known and accepted method of pain management which works by applying gentle electric current to the skin.[5] The medical records submitted to CIGNA repeatedly document Ms. Bake's pain complaints. However, it is clear from CIGNA's denial letters and claim documents that Ms. Bake's pain has been virtually ignored and/or discounted in evaluating whether Ms. Bake is capable of working.

In addition to its findings with respect to issues relating to pain and disability, *Diaz* also ruled that physical therapy records can provide relevant corroborative evidence of disability. Moreover, the court deemed a social security award to be relevant evidence of disability. *12.

CIGNA's lack of consideration of Ms. Bake's multiple impairments and Dr. Mendez's disregard of medical documentation demonstrates CIGNA impermissibly engaged in a selective review of the evidence. The insurer cannot "cherry pick" the evidence and deliberately ignore evidence to reach a skewed result. *Omasta v. Choices Benefit Plan,* 352 F. Supp. 2d 1201 (D.Utah 12/23/2004); *Ebert v. Reliance Standard,* 171 F. Supp. 2d 726 (S.D. Ohio 2001); *Spangler v. Lockheed Martin Energy Systems, Inc. (MetLife),* 313 F.3d 356 (6th Cir. 2002); *Smetana v. Reliance Standard Life Insur. Co.,* 2003 U.S.Dist. LEXIS 19564 (E.D.Pa. 9/30/03); *Small v. First Reliance Standard Life Insur. Co.,* 2005 U.S.Dist.LEXIS 3153 (E.D.Pa. 2/28/2005). Both the denial letters of November 8, 2006 and May 27, 2007, and CIGNA's claim file documents substantiate that CIGNA deliberately ignored evidence to deny Ms. Bake LTD benefits. Nor is this the first occasion in which Dr. Mendez's opinions been challenged. In *Lawrence v. Life Insur. Co. of North Amer.,* 2007 U.S.Dist.LEXIS 61253 (N.D.Ill. 8/20/07), the court questioned whether Dr. Mendez honestly and completely took all of the evidence into consideration.

Not only did CIGNA selectively review the medical evidence, it also failed to fairly consider the opinions of Ms. Bake's treating physicians. While there is no treating physician presumption under ERISA, the Supreme Court in *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834 (2003) explained, "Plan administrators, of course may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *See also, Ferguson v. Hartford Life and Accident Insur. Co.,* 268 F. Supp. 2d 463 (E.D.Pa. 2003)(holding the insurer must articulate reasons for choosing to disregard opinions of treating doctors). Similarly, the Seventh Circuit, while rejecting the treating physician presumption, stated:

---

[3] Nabumetone is used to relieve pain, swelling, stiffness and tenderness caused by osteoarthritis and rheumatoid arthritis. http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a692022.html (last updated 1/1/06)

[4] Ultracet is used to relieve moderate to severe pain, and is indicated for use only by persons expected to need medication to relieve pain around-the-clock for a long time. Ultracet is a member of the opiate family. http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a695011.html (last updated 7/1/07)
[5] http://www.mayoclinic.com/print/chronic-pain/PN00034/METHOD=print (last updated 5/15/06)

JANICE BAKE
LINA 0108

> If the incentives of the treating physician and of the plan's consultant are assumed to be equal and opposite, consideration of incentives drops out and the superior information likely to be possessed by the treating physician especially when as in this case the consultant does not bother to examine the patient, may support the treating-physician presumption afterall. *See Bali Blue Cross & Blue Shield Ass'n*, 873 F.2d 1043, 1048 (7th Cir. 1989); cf. *Whitson v. Finch*, 437 F.2d 728, 732 (6th Cir. 1971).

*Hawkins v. First Union Corp.*, 326 F.3d 914, 917 (7th Cir. 2003).

Here, CIGNA arbitrarily discounted the opinions of Ms. Bake's treating physicians indicating that Ms. Bake was indeed disabled. MRIs of the cervical and thoracic spine performed in January 2007 at the request of Ms. Bake's physician, Dr.Bergin, showed "severe degenerative changes throughout the mid-portion of the cervical spine with bulging and herniated discs at multiple levels." In his January 30, 2007 treatment notes, Dr. Bergin stated, "Basically, all the discs in her spine have some degree of degeneration . . .clearly, this is a disabling problem, and I doubt she will ever be able to work in any capacity." On May 10, 2007, Dr. Begin similarly stated, "[w]hat really limits her functioning is her thoracic and lumbar spine" resulting from severe degenerative disc disease. Instead of crediting this evidence, CIGNA relied on the determinations of a nurse and a non-treating, non-examining physician's paper review of Ms. Bake's medical documents, and gives no explanation for doing so as required by the courts.

Nor was any consideration whatsoever given to issues regarding Ms. Bake's age as we argued in our earlier appeal. Substantial caselaw requires that an insurer take into consideration all relevant vocational considerations. Instead, the claim determination issued on May 25, 2007 consists of nothing other than conclusions which fail to realistically assess Ms. Bake's ability to work. In addition to the *Combe* ruling cited earlier in this letter, *Wilson v. Life Insur. Co. of North America*, 424 F. Supp. 2d 1146 (D.Neb. 3/29/2006) is another ruling critical of LINA's cursory claim evaluation. However, two other recent decisions offer insight into how Ms. Bake's case should be assessed. In *Peterson v. Federal Express Corp. Long Term Disability Plan*, 2007 U.S.Dist.LEXIS 41590 (D.Ariz. 6/4/2007), a case involving a claimant suffering from severe pain, the court ruled:

> Finally, the court notes that a total-disability determination cannot reasonably hinge on whether an employee is minimally capable, on a good day, at the right hour, of fulfilling her job duties in barely tolerable fashion. Qualification for employment requires an ability to work effectively and to be reliable. FedEx found Peterson disabled from her own job, by significant objective findings, and has no job to call her back to that meets any of its needs. It is not persuasive or even plausible that another employer would put her on a payroll for work that will be performed sporadically and cannot be counted on. *103-*104.



*Fulayter v. Prudential Insur. Co. of America,* 2007 U.S.Dist.LEXIS 8394 (D.Ariz. 2/6/2007) offers similar insight in establishing that severe pain which interferes with performance of basic activities of daily living and markedly restricts an individual from regularly performing any activity entitles that individual to benefits. Ms. Bake is comparable to the claimants who were awarded benefits in all of the foregoing situations, and in addition to the *Diaz* ruling, the award of Social Security disability benefits offers significant corroboration, as pointed out in *LaBarge v. Life Insur. Co. of North America,* 2001 WL 109527 (N.D.Ill.), which noted that the Social Security determination constitutes "compelling evidence" of disability.

Accordingly, based on the detailed evidence of record which clearly and overwhelmingly demonstrates that Ms. Bake is unable to perform all the material duties of her occupation, we again demand that CIGNA/LINA pay all LTD benefits due and owing immediately along with interest due at the rate of 9% pursuant to 215 ILCS 5/357.9. Based on the existing claim record, there is no basis to for CIGNA to maintain its denial of benefits; and we strongly oppose any action by CIGNA to start looking for new medical opinions to shore up a basis for the denial. An appellate decision made it clear that waiting until after the denial to obtain medical documentation is improper in ERISA claims. *Kosiba v. Merck & Co.,* 384 F.3d 58 (3d Cir. 2004). Also see, *Neiheisel v. AK Steel Corp.,* 2005 U.S.Dist.LEXIS 4639 (S.D. Ohio 2/17/2005)(regulations allow for "consultation" with health professional; examinations after termination are unlawful); *Sidou v. Unum Provident Corp.,* 245 F.Supp.2d 207, 216 (D.Me. 2003)("any relative utility in conducting an examination should have been apparent to [the insurer well before the denial]" and finding that it is "simply unreasonable" to request an examination following the denial). However should additional medical consultation or vocational evidence be obtained, we demand the right to both review and comment on that evidence prior to a final decision being reached. According to *Abram v. Cargill, Inc.,* 395 F.3d 882 (8th Cir. 2005), *Harris v. Aetna Life Insur. Co.,* 379 F. Supp. 2d 1366 (N.D.Ga. 2005), and *White v. Reliance Standard Life Insur. Co.,* 2007 U.S.Dist.LEXIS 4633 (N.D.Ga. 2007), it is Ms. Bake's right to review and comment on evidence developed during the course of the claim in order to assure that she receives a full and fair review.

We look forward to receiving a prompt and favorable determination.

Very truly yours,

Mark D. DeBofsky
MDD/lp

cc:    Janice Bake

JANICE BAKE
LINA 0110

Aug. 15. 2007  9:36AM   COMPREHENSIVE PAIN MGMT GROUP            No. 7070   P. 5



July 24, 2007

Erin Arnold, MD
Illinois Bone and Joint Institute
9000 N. Waukegan Road, Suite 200
Morton Grove, Illinois 60053

. RE:    BAKE, JANICE

Dear Dr. Arnold:

Ms. Bake was evaluated at our Morton Grove office today for an initial consultation having filled
out the 13-page pain questionnaire along with a 3-page medical history that was available for my
review. The pain questionnaire was completely reviewed with the patient. Pain is marked over
the lumbar spine at approximately L2. It is centrally located not superficial in nature with radiation
laterally from this. Secondary areas of pain are localized down the right side of the right leg.
Dynamic pain score is 10. Resting pain score is 7 to 8. Symptoms are constant. They have been
present for seven years. They have a stabbing, aching quality. Intermittent ankle swelling is
reported. Subjective weakness of the hands, knees and shoulders are also reported. Impulse
related symptoms of coughing and sneezing does not trigger bowel or bladder incontinence.
Coughing will reproduce back pain however respiration does not. She has been involved in
physical therapy at Swedish Covenant Hospital. Sitting increases the pain along with forward
bending, back bending and side bending. Walking, immobilization, mild exercise and sleep will all
increase pain. Factors that decrease pain are heat, cold. Accompanying effects of pain are
nausea, drowsiness, depression, irritability, sleep problems. Two to three hours sleep cycle due
to frequently awakening.

There is a history of angina pectoris, TIA, asthma, emphysema, diabetes, arthritis and diarrhea.
There is a past medical history of thoracic kyphosis with hypertension, high cholesterol, COPD,
acid reflux, bronchiectasis, fibromyalgia, rheumatoid arthritis and rheumatic fever as a child,
diverticulosis as pertinent issues.

Allergies to Lipitor, niacin, iodine, Mobic, decongestants and Zanaflex are described. Current
medications include Cardizem, Lidoderm, Benicar, Synthroid, Singulair, Reglan, metformin,
Evista, Ambien, Lyrica, Nexium, Ultracet, phentermine. Cymbalta was recently discontinued due
to weight gain.

Coping with pain score is +24. She is a smoker and quit approximately after ten years of
smoking. She is right hand dominant. Beck's depression score is 25.

On physical examination today, the patient is 5 feet tall and weighs 165 pounds. Blood pressure
is 131/79, heart rate is 69. General appearance, nutrition, and grooming are within normal limits.
The pupils are equal, round, and reactive to light with accommodation. The extraocular muscles
are intact. There is no facial asymmetry noted. The trigeminal nerve is intact in a V-1 to V-3
distribution. The palate rises symmetrically and the tongue protrudes symmetrically in the midline.
The neck is supple and non-tender without thyromegaly, jugular venous distension, or carotid
bruits. A normal S1/S2 is present. The lungs are clear to auscultation. The abdomen is
protuberant yet benign. There is no tenderness over the lateral femoral cutaneous nerves. The
extremities are without tactile allodynia, pitting edema, or signs of chronic stasis dermatitis. The
postural alignment demonstrates upper thoracic kyphosis and slight loss of lumbar lordosis.
Palpable tenderness at L2 and deeper in the midline. No radiation to percussion is presented.

9000 Waukegan Road, Suite 130 Morton Grove, IL 60053
Phone: 847.470.8740  Fax: 847.470.8750

JANICE BAKE
LINA 0111



# Comprehensive
## Pain Management Group

Erin Arnold, MD
RE: BAKE, JANICE
July 24, 2007
Page 3

Patients with failed back or post laminectomy pain syndrome complain of a dull aching diffuse pain that is likely to be constant. It can have intermittent pain that is sharp, fleeting, and intense. They have reported perceived weakness and numbness in the extremities or a history of "the leg gives out for no reason" or that "I dropped things inexplicably." The pain has neuropathic qualities and many source. Although scar tissue is most commonly implicated, there is frequently neurologic residual along with evidence of poor physical conditioning.

The chronicity of nociceptive input to the CNS will establish pain transmission and referral patterns that are different from normal as well as heightened neuronal responsivity and neuronal imprinting. This is one component of a complex patient's pain pathways. Another component includes facet syndrome.

Pain distributed in several dermatomes of the lower extremities, often bilateral and otherwise resembling the pain of a solitary lumbar disc protrusion, may be due to widespread spondylitic changes of the lumbar spine. Regardless of whether disc protrusions are present, back pain and leg pain are prominent complaints. Weinstein, et. al found that 66% of the patients with narrowed lumbar canals due to spondylosis suffered from back pain, 36% had unilateral leg pain, and 36% had bilateral leg pain. Painful muscle spasms and cramps in the back and legs were frequent but the pain was not consistent or helpful in diagnosis. Of 227 cases, pain was felt in the buttock or hip in 25, in the thigh in 23, and in the groin or genitalia in 9. In many cases, it was classified as 'neurogenic claudication'. Objective sensory abnormalities were present in only half of the cases and often did not obey a discrete dermatomal pattern. In a few cases, perianal or 'saddle' hypoesthesia was noted. Muscle weakness was observed in 64% and was often most marked in the extensor hallucis longus and tibialis anterior, suggesting predominant L5 root involvement. Tendon stretch reflexes in the ankles or knees were decreased or absent in 70% of cases. In about 10% there was additional evidence of caudal equina involvement consisting of bowel or bladder incontinence, urinary retention or impotence. A positive response to straight-leg-rising was found in only 30% of the 227 cases, a useful point in distinguishing lumbar spondylosis and canal stenosis from that of simple disc protrusion, aggravated by extension of the lumbar spine.

RECOMMENDATIONS: The patient will obtain her MRI films for the cervical spine, thoracic spine and lumbar spine for my personal review and consideration for any possible injections. Her medical management has been optimal. Acupuncture referral was made.

Sincerely yours,

*Howard Konowitz* MD

Howard S. Konowitz, MD

HSK/lml

9000 Waukegan Road, Suite 130 Morton Grove, IL  60053
Phone: 847.470.8740  Fax: 847.470.8750

JANICE BAKE
LINA 0113

'NT OF HEALTH AND HUMAN SERVICES
CURITY ADMINISTRATION

'08   G:24-193   DISABILITY DETERMINATION AND TRANSMITTAL   2006 21-1329-01

| 1. STINATION | | | | | | 2. DDS CODE | 3. FILING DATE | 4. SSN | | BIC(if CDB or DWB CLAIM) |
|---|---|---|---|---|---|---|---|---|---|---|
| | DDS | ODO | DRS | DOB | IHTPSC | S16 | 09/15/06 | 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 | | |
| | X | | | | | | | | | |

5. NAME AND ADDRESS OF CLAIMANT (include ZIP Code)

JANICE BER BAKE
5404 Berenice
CHICAGO IL
60641

CHICAGO IL

6. WE'S NAME (if CDB or DWB CLAIM)

7. TYPE CLAIM (Title II)

| DIB | FZ | DWB | CDB-R | CDB-D | RD-R | RD-D | RD | P-R | P-D | HGFE |
|---|---|---|---|---|---|---|---|---|---|---|
| X | | | | | | | | | | |

8. TYPE CLAIM (Title XVI)

| DI | | DS | | DC | | BI | | BS | | BC | |
|---|---|---|---|---|---|---|---|---|---|---|---|

| 9. DATE OF BIRTH | 10. PRIOR_ACTION | | | 11. REMARKS |
|---|---|---|---|---|
| 05/16/49 | PD X | PT | | (773)794-1566 RECON FILED 03/05/07 |

| 12. DISTRICT-BRANCH OFFICE ADDRESS (include ZIP Code) | | DO-BO CODE |
|---|---|---|
| 4849 N. Milwaukee Ave. Suite 600 Chicago IL 60630 | | 513 |

RECEIPTED 03/09/07
AOD 06/20/06
DLI

| 13. DO-BO REPRESENTATIVE   (773) 794-0777 | 14. DATE | 11A. Presumptive Disability 0 | 11B. Impairment 00 |
|---|---|---|---|

## DETERMINATION PURSUANT TO THE SOCIAL SECURITY ACT, AS AMENDED

| 15. CLAIMANT DISABLED | 16A.PRIMARY DIAGNOSIS | BODY STS. | CODE NO. | 16B. SECONDARY DIAGNOSIS | CODE NO. |
|---|---|---|---|---|---|
| A. X Disability Began  06/20/06 | Spinal stenosis | 01 | 7240 | Asthma | 4930 |
| B. Disability Ceased | | | | | |

| 17. DIARY TYPE | MO/YR. | Reason |
|---|---|---|
| MRN | 05/10 | 3 |

| 18. CASE OF BLINDNESS AS DEFINED IN SEC 1614(a)(2)/(216)(i) | 19. CLAIMANT NOT DISABLED |
|---|---|

| A. Not Disab. for Cash Bens. Purp. | B. Disab.for Cash Benefit Purp./06/0//77 | A. Through Date of Current Determination B. Through | C. Before Age 22 (CDB only) |
|---|---|---|---|

| 20. VOCATIONAL BACKGROUND | OCC YRS. | EQ YRS. | 21. YR ACTION | | |
|---|---|---|---|---|---|
| | 16 | 12 | A. SC IN | B. X SC OUT | C. Prev Ref |

| 22. REG-BASIS CODE | 23. MED LIST NO. | 24.MDB CODE | 25.REVISED | 25A. Initial | Recon | Recon DNU | ALJ Hearing | Appeals Council | US District Court |
|---|---|---|---|---|---|---|---|---|---|
| C1-1520(f) | | | DET X | A. | B. X | C. | D. | E. | F. |

| 26. LIST NO. | A. 000 | B. 000 | C. 000 | D. 000 | E. 000 | F. 000 |
|---|---|---|---|---|---|---|

| 27. RATIONALE | See Attached SSA-4268-U4/C4 | Check if Vocational Rule Met. Cite Rule |
|---|---|---|

28.

| A. X Period of Disability | B. Disability Period | C. X Estab Beg 06/20/06 AND | D. Continues | E. Term |
|---|---|---|---|---|

| 29. LTR/PAR NO. | 30. DISABILITY EXAMINER-DOS | 31.DATE | 32. PHYSICIAN OR MEDICAL SPEC. SIGNATURE | 33.DATE |
|---|---|---|---|---|
| | Becky Schurman | 06/21/07 | See IRMA   dated 06/14/07 | |

| 32A. PHYSICIAN OR MEDICAL SPEC. NAME (Stamp, Print,or Type) | 32B. SPEC. CODE |
|---|---|
| FRANK JIMENEZ MD 2056 | 10 |

34. REMARKS

Recon Reversal. This revises previous determination dated
12/29/06.
Claimant is capable of handling her funds per report by
Dr Ana Gil, dated 05/17/07.

MULTIPLE IMPAIRMENTS CONSIDERED

34A. COMBINED MULTIPLE NONSEVERE-SEVERE

34B. COMBINED MULTIPLE NONSEVERE-NONSEVERE

| 35. BASIS CODE | 36.REV.DET CODES | 37. SSA REPRESENTATIVE | SSA CODE | 38. DATE |
|---|---|---|---|---|

Form SSA-831-C3 (5/89)  (IL-4/98 V05 rev 08022005)

Electronic Input     DECISION     CASE CONTROL



JANICE BAKE
LINA 0114

May 29 07 12:58a          @                    *              ●              p.1

## ILLINOIS DEPARTMENT OF HUMAN SERVICES
### OFFICE OF REHAB SERVICES, DISABILITY DETERMINATION
P.O. Box 19250 ● Springfield, Illinois 62794-9250
Carol L. Adams, Ph.D., Secretary ● Ann P. Robert, Deputy Director

May 03, 2007

Lake Shore Medical Clinic
111 N Wabash Ave Ste 1414
Chicago IL 60602

RE:     JANICE B BAKE                    Adjudicator:
        4922 W BYRON                     BECKY SCHURMAN
        CHICAGO IL 60641                 Telephone: 800-225-3607
                                         Extension: 43774
SS# XXX-XX-6457                          TTY: 800 362-7754
Telephone: (773) 794-1566                (for persons who are deaf or speech impaired only)

# Fax your report to 1-866-778-4959.
Use this page as your fax coversheet. This page must be the top page of your report.
## OR
# For information about sending reports to our free, secure website, email:
## CH.IL.S16B ERE@SSA.GOV



RQID: 1093629083K6540800     SITE: S16 DR: S
SSN: ********* DOCTYPE: 0002 RF: D CS: aa65

PARTIAL LIST OF ITEMS ORDERED:
Psychiatrist

*For remaining items (if any), see invoice*

```
* 1 0 9 3 6 2 9 0 8 3 *
```

G:24-193                                        CWA
E301                                    Claim#: K65408
                                        Ver. 3 (3/23/07)

JANICE BAKE
LINA 0115

May 29 07 12:58a    @                    *  .                    p.2

## SERVICE AUTHORIZATION

### DEPARTMENT OF HUMAN SERVICES
### BUREAU OF DISABILITY DETERMINATION SERVICES
P.O. Box 19251
Springfield, Illinois 62794-9851

A8871881

VENDOR NUMBER-FEIN/SSN:  36-3387664  TYPE CODE: 01  AUTHORIZATION DATE:05/03/07

| PAY TO: | CLIENT INFORMATION: |
|---|---|
| Lake Shore Medical Clinic<br>111 N Wabash Ave  Ste 1414<br>Chicago IL 60602 | JANICE B BAKE<br>4922 W BYRON<br>CHICAGO IL 60641<br><br>Applicant: |

OFFICE:

Lake Shore Medical Clinic
111 N Wabash Ave  Ste 1414
Chicago IL 60602

Phone:   (773) 794-1566
DOB:     05/16/49
SSN:     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
Appt:    05/14/07        Time: 10:00A
         5/17/07

Type Service:   40

| Service Code | Description | Amt Auth | Change Amt |
|---|---|---|---|
| 01300 | Psychiatrist | 121.00 | |

TOTAL:      121.00

SELLERS CERTIFICATION: I hereby certify that the services listed
have met all the required standards set forth in the purchasing
contract and are proper charges against the State of Illinois and
that payment has not been received. Please note your signature also
certifies that the information given herein by the provider is true,
accurate and complete, that the charges considered reasonable by the
Department of Human Services will constitute the full and complete
charge. Therefore, that the provider will not accept additional
payment from the client or any person or source and that insurance or
other payments for this service are considered as deductions from the
authorized amount certification also signifies full compliance with
title VI of the Civil Rights Act of 1964 and Title V of the
Rehabilitation Act of 1973 forbidding discrimination for reasons of
handicap, sex, age, religion, race, color or national origin. Payment
of interest may be available if the State fails to comply with the
Illinois Prompt Payment Act, ILL Rev. Stat. Ch.127, Par 132.401.



_____    5/17/07
    VENDOR SIGNATURE              DATE

Vendor instructions: Provide the services listed above.
Please sign, date and return one of the two copies of
this form to the Department of Human Services address
shown at the top of this form. Keep the other copy
for your records.

APPROVED FOR PAYMENT

_____    _____
Adjudicator              Date

CANCELLATION

Cancellation Reason (please circle)

1. Exam not Performed

2. Incorrectly Authorized

3. Client Failed to keep appointment

4. Vendor did not bill prior to
   FY cut-off

_____    _____
Adjudicator              Date

G:24-193                                    Claim #:   K65408
CWA                                         VENDOR

K65408              1093629083

JANICE BAKE
LINA 0116

May 29 07 12:58a          @                    *                         P.3

**Ana A. Gil, M.D., S.C.**

## LAKE SHORE MEDICAL CLINIC LTD
## 111 N. WABASH AVE., SUITE 1414, CHICAGO, IL 60602 (312) 558-9190

| | | |
|---|---|---|
| **REGARDING CLAIM OF:** | **JANICE BAKE** | |
| **SS#** | **XXX-XX-6457** | |
| **ADJUDICATOR:** | Becky Sherman | **CODE #G:24-193** |
| **DATE OF EXAMINATION:** | 5/17/07 | **EXAM DURATION:** 43 Min. |

**MEDICAL INFORMATION AVAILABLE FOR REVIEW PRIOR TO EXAMINATION:**
Medical Report from Christopher Bergin, M.D., 4/3/07. Diagnosis: Cervical myelopathy, thoracic spondylosis, lumbar spondylosis and carpal tunnel syndrome. It also states the claimant has a solid fusion at C5-C7. She has severe thoracic degenerative changes and report of EMG examination and nerve conduction studies for bilateral upper extremities compared to a previous study on October of 2006. This report was dated 3/13/07. Left median distal motor latency showed interval prolongation and progressive slowing of conduction across the wrist. Needle EMG showed mild activity of denervation at rest in the left APB and bilateral cervical paraspinal muscles.

### PSYCHIATRIC EVALUATION

The claimant is a 57-year-old Caucasian-American female. The claimant used a cane in order to ambulate. Her gait was slowed. It was not ataxic. She was moderately obese. She had mild psychomotor agitation and was tearful throughout the interview. She had driven herself to the clinic. The claimant was well dressed, well groomed, and had good hygiene. The claimant's clothes were clean and appropriate for the weather. The claimant understood I was a psychiatrist and that this was an examination for Social Security Disability. The claimant appeared to be a reliable informant. The claimant understood that this information was solely for the purpose of evaluating this applicant's claim for disability benefits. I also explained that the interview does not constitute a doctor/patient relationship and in no way constitutes a treating relationship.

**HISTORY OF PRESENT ILLNESS:** The claimant reports that she has been feeling very depressed since she had to leave her job in June of 2006. She said, I loved my job. I'd been working for 35 years as an operations officer for a bank and I enjoyed what I did. I had my surgery for my spinal fusion in January of 2006 at Lutheran General Hospital. I tried to return to work in March but I was in too much pain. I also had numbing of both of my hands and I wasn't able to use the computer. It was getting very difficult for me to work and sit still for long periods of time." They were very good to me but I had to end up leaving and I feel horrible. I never thought it would come to this." The claimant reports that she underwent a spinal fusion of C5-C7. She reports that she is currently in physical therapy and is attending swimming aerobic classes at Portage Park Pool once a week which will be increased to twice a week.



JANICE BAKE
LINA 0117

020704160005326

# Advocate Lutheran General Hospital

cc:  George Bovis, M.D.
     Christopher Bergin, M.D.

**PREOPERATIVE DIAGNOSIS:**
CERVICAL SPONDYLOSIS, HERNIATED DISK C5-6, C6-7.

**POSTOPERATIVE DIAGNOSIS:**
CERVICAL SPONDYLOSIS, HERNIATED DISK C5-6, C6-7.

**PROCEDURE:**
1.  ANTERIOR CERVICAL DISCECTOMY AND FUSION AT C5-6, C6-7.
2.  ALLOGRAFT C5-6, C6-7 WITH GRAFTON.
3.  ATLANTIS PLATE C5-C7.
4.  OPERATING MICROSCOPE MICRODISSECTION.
5.  SSEP/EMG MONITORING.
6.  C-ARM FLUOROSCOPY.

**NEUROSURGEON:**
GEORGE BOVIS, M.D.

**ORTHOPEDIC SURGEON:**
CHRISTOPHER BERGIN, M.D.

**ANESTHESIA:**
GENERAL.

**ESTIMATED BLOOD LOSS:**
MINIMAL.

**HISTORY OF PRESENT ILLNESS:**
The patient is a 56-year-old female with a history of severe neck and arm
pain.  An MRI scan revealed severe cervical spondylosis with bilateral
foraminal stenosis and disk herniation at C5-6 and C6-7.  The risk,
rationale, options, benefits, and alternatives of care discussed with the
patient and the family.  The risk of surgery including but not limited to
death, cardiac arrest, anesthetic complications, nerve root injury,
paralysis, infection, bleeding, stroke, hemorrhage, non-fusion, etc.  She
understands, agrees, and willing to proceed.

BAKE, JANICE
MRN#  001195017
ACCT#:  319990198
DATE OF SURGERY:  01/30/2006
ROOM:  SICC
SVC:  SGP

George Bovis, M.D.
DICTATED BY: George Bovis, M.D.
DD: 01/30/2006 DT: 01/30/2006 TD: 17:58 TT: 23:28 K#: 76298/MEDQ

REPORT OF OPERATION

JANICE BAKE
LINA 0154



020704160005326

# Advocate Lutheran General Hospital

PAGE 2

**DESCRIPTION OF PROCEDURE:**
The patient was brought to the operating room, placed under general
endotracheal anesthesia.  She was placed on the Jackson table, antibiosis was
infused and 10 mg of _____ was infused.  The C-arm fluoroscopy was brought
into the field and the C5-6 level was localized externally and the patient
was then prepped and draped in the usual sterile fashion.  An incision was
made and dissection was carried out between the carotid artery, the trachea,
and esophagus retracting the sternocleidomastoid laterally and the trachea
and esophagus medially revealing the anterior portion of the spine.  The
anterior cervical fascia was then opened.  Localizing x-ray was obtained
revealing the C5-6 level.  The longus colli muscles were then undermined and
self-retaining retractors were placed in the longitudinal in transverse
fashion.  At this point, we placed a disk space spreader at C5, C6, and C7.
At this point, the operating microscope was then brought into the field and
then using a #11 blade discectomy was performed at C5-6.  A self-retaining
retractor was placed to open the disk space again using various Decker and
Kerrison rongeurs.  A complete discectomy at C5-6 was performed including
complete foraminal decompression at C5-6 on the right and on the left side.
A ball-tipped probe was placed through the foramen.  No further compression
was seen.  The dura was found to be glistening and in fact there was no
compression.  Satisfied, we completed our dissection here at C5-6, a pledget
of Gelfoam was then placed in the disc space.  We then proceeded our
attention towards C6-7.  The disk space spreader was then placed over the
disk space and this was opened using a#11 blade and Kerrisons.  The disk
space was then exenterated and using a Midas-Rex, the foramina bilaterally
were then drilled out completely at C6-7.  There was no compression.  The
posterior longitudinal ligament was then opened.  No further compression was
seen.  There was complete decompression of both nerve roots bilaterally and
at the spinal cord centrally.  A ball-tipped probe was then used and no
further compression was seen.  At this point, Dr. Bergin performed a fusion
using corner stone Allograft at C5-6 and C6-7 with Grafton putty.  Localizing
x-ray was obtained revealing these were countersunk perfectly.  Then using an
Atlantis plate with fixed screws, we then placed C5-C7.  Satisfied with our
plating, we then performed AP and lateral x-ray revealing all as in
alignment.  Copious irrigation was used.  Immaculate hemostasis was achieved.
The wound was closed in layers over a medium Hemovac drain.  Subcuticulars
were applied to the skin and the patient left the operating room stable,
moving up the lower extremities.  There were no SSEP or EMG changes
throughout the operation.

BAKE, JANICE
MRN#:  001175617
ACCT#:  315990198
DATE OF SURGERY:  01/30/2006
ROOM:  SICC
SVC:  SGP

_____
George Bovis, M.D.
DICTATED BY: George Bovis, M.D.
DD: 01/30/2006 DT: 01/30/2006 TD: 17:58 TT: 23:28 K#: 76298/MEDQ


REPORT OF OPERATION

JANICE BAKE
LINA 0155

0207041600005328

# Advocate Lutheran General Hospital

cc:  Christopher Bergin, M.D.
     Christopher Bergin, M.D.

**ATTENDING SURGEONS:**
CHRISTOPHER BERGIN, M.D.

**COSURGEON:**
GEORGE BOVIS, M.D.

**PREOPERATIVE DIAGNOSIS:**
CERVICAL MYELORADICULOPATHY, C5-6 AND C6-7.

**POSTOPERATIVE DIAGNOSIS:**
CERVICAL MYELORADICULOPATHY, C5-6 AND C6-7.

**OPERATION PERFORMED:**
1. ANTERIOR CERVICAL DISKECTOMY WITH DECOMPRESSION OF NERVE ROOTS AND SPINAL
   CORD AT C5-6 AND C6-7.
2. ANTERIOR FUSION, C5-6 AND C6-7.
3. ANTERIOR INSTRUMENTATION, C5 TO C7, WITH USE OF ATLANTIS PLATE.
4. STRUCTURAL ALLOGRAFT PLACEMENT, C5-6 AND C6-7.
5. USE OF GRAFTON PUTTY.
6. SOMATOSENSORY MOTOR EVOKED POTENTIALS.
7. USE OF OPERATING MICROSCOPE.
8. FLUOROSCOPY.

**BRIEF HISTORY AND OPERATIVE INDICATIONS:**
This is a 56-year-old woman who presents with a complaint of neck pain
radiating to both upper extremities, numbness in both hands, and some gait
disturbances.  Imaging studies show severe degeneration, C5-6 and C6-7 with
nerve root and spinal cord compression..  Diagnosis of cervical
myeloradiculopathy was made.  The patient's diagnosis, prognosis and
treatment options discussed with her.  A second opinion was obtained with Dr.
Bovis of neurosurgery who agreed and we will do this operation together.
Risks and complications were discussed and informed consent was obtained.

**OPERATIVE REPORT:**
The patient was brought to the operating room on 01/30/2006, at which time
general endotracheal anesthesia was established by the anesthesia service.
This was done with awake fiberoptic intubation.  Prophylactic antibiotics
were given.  Leads for SSEP and motor evoked potentials were placed.  The

| | |
|---|---|
| BAKE, JANICE | |
| MRN#:  001195017 | |
| ACCT#:  319990198 | |
| DATE OF SURGERY:  01/30/2006 | |
| ROOM:  432C | |
| SVC:  SGP | |

Christopher Bergin, M.D.
DICTATED BY: Christopher Bergin, M.D.
DD: 01/31/2006 DT: 01/31/2006 TD: 17:32 TT: 22:12 K#: 77729/MEDQ

REPORT OF OPERATION

2/0;

JANICE BAKE
LINA 0156

020704160005326

# Advocate Lutheran General Hospital

PAGE 2

patient was placed supine on the radiolucent table. Roll was placed between her shoulders and her head was placed on the doughnut. Care was taken not to overextend her neck. Her alignment was checked on fluoroscopy. Somatosensory evoked and motor evoked potentials were monitored throughout the case and there was no change. Neck was prepped and draped in the usual sterile fashion. Skin incisions were made over the body of C6. Subcutaneous tissue was dissected down to platysma which was split in line with the incision. The fascia over the sternocleidomastoid was split using a tenotomy scissors. Blunt finger dissection was carried down to the prevertebral fascia which was again split with a tenotomy scissors. A spinal needle was placed in the C5-6 disk for localization. The longus colli muscles were then mobilized using Bovie electrocautery and the self-retaining retractors were placed underneath the longus colli. Distraction posts were placed in C5, C6 and C7. The C5-6 disk was approached first. Disk distraction was placed across that disk space. The operating microscope was prepped and draped into the field in normal fashion. An annulotomy was performed using a 15 blade. A disk rongeur was used to remove as much disk as possible. A combination of curets was used to remove the cartilaginous endplate back to the posterior annulus. Some more distraction could be placed. There were large osteophytic spurs and these were burred down using a bur. The rest of the posterior annulus was removed using a micro-Decker rongeur. A Rhoton #6 was then used to get behind the posterior longitudinal ligament and a 1-mm Kerrison was used to remove the posterior longitudinal ligament. Then 2-mm Kerrison was used to remove the osteophytes from the back portion of the disk space and out into the foramen. Foraminotomies were performed bilaterally. The nerve hook could then easily be placed out the foramen bilaterally and behind the bodies. Gelfoam was placed in this disk space. Distraction was then placed across the C6-7 disk and then diskectomy was performed in a similar fashion. Endplates were removed using a curet. Osteophytes were burred down using a diamond bur. Posterior longitudinal ligament was taken down using a Rhoton #6, followed by a 1-mm Kerrison. Bilateral foraminotomies were performed. Osteophytes were removed off the back of the bodies. Nerve hooks could easily be placed out both foramina. The endplates at C5-6 and C6-7 were then decorticated using a bur. The C6-7 allograft was placed first. This was an 8-mm spacer. It was packed with Grafton putty. The medial and lateral aspects of the disk were then packed with the Grafton putty and the allograft spacer was impacted into place. Attention was then turned to the C5-6 disk space. Some distraction was placed across this and a 7-mm spacer was found to be the correct fit and this disk space was also packed with Grafton putty as was the whole in the allograft. The allograft was impacted into place and checked on fluoroscopy. A 2-level plate was then

|  |  |
|---|---|
| BAKE, JANICE | |
| MRN#:  001195017 | |
| ACCT#:  319990198 | |
| DATE OF SURGERY:  01/30/2006 | |
| ROOM:  432C | |
| SVC:  SGP | |

Christopher Bergin, M.D.
DICTATED BY: Christopher Bergin, M.D.
DD: 01/31/2006 DT: 01/31/2006 TD: 17:32 TT: 22:12 K#: 77729/MEDQ

REPORT OF OPERATION 

JANICE BAKE
LINA 0157

12/18/2006  15:03    7084457500              P M WEST                      PAGE  01/05

# ILLINOIS DEPARTMENT OF HUMAN SERVICES
## OFFICE OF REHAB SERVICES, DISABILITY DETERMINATION
P.O. Box 19250 ● Springfield, Illinois 62794-9250
Carol L. Adams, Ph.D., Secretary ● Ann P. Robert, Deputy Director

December 04, 2006
Adjudicator:
**MELINDA RIDDLE**

Physicians Management West Inc
7037 W North Ave
Oak Park IL 60302

Telephone:  800-225-3607
Extension:  28652
TTY:  800 362-7754
(for persons who are
deaf or speech impaired
only)

RE:   JANICE B BAKE
      4922 W BYRON
      CHICAGO IL 60641

Telephone:  (773) 794-1566
SS#  XXX-XX-6457

---

↑   **Fax your report to 1-866-778-4959.**
   **Use this page as your fax cover sheet.**   ↑
**OR**
**Mail your report by sliding this page into the attached envelope with
the address showing.  It is pre-addressed to the correct location.
THIS PAGE MUST BE THE TOP PAGE OF YOUR REPORT
WHETHER YOU FAX IT OR MAIL IT.**

---

SSA
S16 Springfield, IL DDS
P.O. Box 8701
London, KY 40742-9800

**PARTIAL LIST OF ITEMS ORDERED:**
Internist

*For remaining items (if any), see invoice*



RQID: 1090573079J9599700      SITE: S16  DR: S
SSN: ********* DOCTYPE: 0002  RF: D  CS: 412e

**DMA**



G:22-855
E301

Claim#:  J95937

JANICE BAKE
LINA 0355

### PHYSICIANS' MANAGEMENT WEST, INC.
### 7037 W. NORTH AVE.
### OAK PARK, IL 60302

Telephone (708)445-7035                                    FAX (708)445-7500

---

#### Paul McFarlane, M.D.

#### Internal Medicine Consultative Examination
#### for the
#### Bureau of Disability Determination Services

**Claimant:** Janice B. Bake
**Date:** December 6, 2006
**Claim#:** J95937

**GENERAL INFORMATION:** I reviewed all the information sent by the Bureau of Disability Determination Services, which included a note from Illinois Bone and Joint Institute dated October 30, 2006 and the patient's medical history as well as medications.

I spent 35 minutes with the claimant. The claimant is a 57 year old, married Caucasian female, who last worked June 15, 2006 as a manager at a computer shop. She has completed high school.

The claimant alleges disability due to  1. Cervical spine pain. 2. Numbness and tingling of her upper extremities. 3. Thoracic spine pain. 4. Right and left knee pain as well as jaw pain.

**HISTORY OF PRESENT COMPLAINTS:** The claimant is 57 year old Caucasian female who is status post anterior cervical diskectomy and fusion of C5, C6 and C7. Complicated in her post-op period by numbness in the ulnar distribution bilaterally related to elevation of her arms above her shoulders. The claimant continues to have thoracic back pain as well as generalized joint pain and myalgia.

The claimant has a history of bilateral right and left knee arthroscopy. This morning, the claimant denies any fever, chills, shortness of breath, headache, or dizziness.

**PAST MEDICAL HISTORY:** Cervical myelopathy, status post fusion. Thoracic kyphosis, hypertension, hyperlipidemia, diabetes, thyroid disease, COPD, GERD, asthma, bronchiectasis, fibromyalagia, osteoporosis, osteoarthritis, rheumatoid arthritis, rheumatic fever, lupus, TIA, diverticulitis, mitral valve prolapse, tremors, measles, chicken pox, mumps, sinusitis, neuropathy. **Medications:** Celebrex, Cardizem, Levothyroxine, Zetia, Metformin, Albuterol, Advair and Ambien. **Allergies:** The claimant states she is allergic to Lipitor,

JANICE BAKE
LINA 0356

Janice B. Bake
Clm#: J95937
December 6, 2006
Page 2

Niacin, Iodine, Lovac, Sulfoxone, and De-Congestine and Vicodin.

There is no history of CVA, myocardial infarction, ulcer, liver disease, kidney disease, pneumonia, cancer or TB.

Past Hospitalization:  As stated above. Surgical History:  Cervical spine surgery at Lutheran General Hospital, left knee arthroplasty in 2005, right knee arthroscopy in 2005, carpal tunnel right hand in 2003, tonsillectomy and adenoidectomy at Grant Hospital, hysterectomy in 1993, gallbladder removal at Westlake in 1986, appendectomy in 1984, inguinal hernia in 1993, hiatal hernia in 2006. Tobacco Use:  Denied.  Alcohol Use:  Denied.  Illicit Drug Use: Denied.

FAMILY HISTORY:  Non-contributory.

REVIEW OF SYSTEMS:  As noted above.

PHYSICAL EXAMINATION:  General Appearance:  The claimant is a well developed, well nourished, cooperative but enabling female who is in no apparent distress.  She is able to move around with some hesitation and difficulty and discomfort ambulating from standing to sitting and cannot sit in one position for a long period of time due to discomfort in her thoracic spine and cervical spine.  Vital Signs: Height without shoes is 69.5 inches and weight is 180 lbs.  Blood pressure is 140/90 in the left arm taken twice, supine and sitting upright with a regular cuff.  Pulse is 82 per minute and regular. Oxygen saturation is 100%.

SKIN:  Skin texture was normal and the turgor was good.  There was no rash noted.

HEENT: Head:  Normal cephalic and atraumatic with normal coloring of the face. The claimant does have a resting tremor of the head bobbing.  Eyes:  Pupils were equal and reactive to light and accommodation.  Funduscopic examination was normal.  Conjunctiva and sclerae were normal.  Extraocular eye movements and visual fields were intact.  Snellen Test:  Uncorrected right eye 20/20, left eye 20/100, pinhole corrected right eye 20/30, left eye 20/50, corrected with glasses right eye 20/15, left eye 20/20.  Ears:  TM's are intact.  No impairment of hearing noted.  Claimant was able to understand conversational voice.  Nose:  No tenderness over paranasal sinuses or mastoids.  Throat:  Clear. Oropharynx:  Moist.

NECK:  Supple.  Trachea appeared to be in the midline.  There was no enlargement of the thyroid and no lymphadenopathy.  No carotid bruit. The neck veins were flat at 30 degrees with no venous pulsation.

LUNGS:  Thorax was normal in contour and not deformed.  Chest

JANICE BAKE
LINA 0357

Janice B. Bake
Clm#: J95937
December 6, 2006
Page 3

expansion was equal bilaterally.  There was normal resonance on percussion.  Air entry was good.  No rales, rhonchi or wheezing. There was no clubbing or cyanosis.

**CARDIAC:**  PMI was non-displaced.  There was no palpable ventricular lift or pericardial heave.  There was no peripheral edema noted. Normal S1 and S2, without murmurs or clicks.  No S3 or S4.

**BACK:**  The claimant has kyphosis and has a surgical scar in the C-spine area.  There is point tenderness at C5-C6 and thoracic spine T5-T10.  Normal lumbar curvature.  Range of motion of the lumbar spine was limited, flexion 40°, extension 10°, lateral flexion 5°.  Straight leg raise test was negative bilaterally.  Decreased range of motion on the cervical spine with flexion to 20°, extension was 10°.

**ABDOMEN:**  Soft and non-tender with no abdominal masses noted.  The liver and spleen were not enlarged.  Kidneys were not palpable. Bowel sounds were normal.  There was absence of bruit.

**PERIPHERAL PULSES:**  Palpable and equal bilaterally.

**EXTREMITIES:**  Normal peripheral vascular status without trophic changes, stasis dermatitis, varicosities, ulcerations, sores, edema or trauma.

**MUSCULOSKELETAL:**  Range of motion of all joints was within normal limits.  There was range of motion pain of both knee joints.  The claimant had a normal gait and was able to bear weight.  The claimant uses a cane to walk for balance.  Claimant was able to flex extend and oppose her hands and fingers.  Grip strength was 4/5 bilaterally and manipulations were unimpaired.  The right hand was dominant.

**ENDOCRINE:** Normal thyroid, no striae.

**HEMATOLOGICAL:** No pallor, no petechiae.

**NEUROLOGIC:**  The claimant was able to produce sustained audible and understandable speech.  Cranial nerves II through XII were intact. There was no localized muscle wasting, atrophy, or paralysis. There was involuntary movement of the head in bobbing.  DTR's were normal in the left lower extremity. No DTR's were noted in the right lower extremity.  Babinski test was negative.  Sensation to pinprick and light touch is symmetric and within normal limits.  Motor Strength of 4/5 in upper and 4/5 in the lower extremities limited by effort and perceived pain.  Cerebellar testing was negative.  Finger-to-nose and heel to shin were normal.



JANICE BAKE
LINA 0358



Janice B. Bake
Clm#: J95937
December 6, 2006
Page 4

<u>Mental Status Examination:</u>  The claimant was alert and oriented times
three.  Speech and memory were grossly normal.  Hygiene was normal
and she was appropriately dressed for the weather.  The claimant is
able to manage her funds appropriately.

<u>CLINICAL IMPRESSION:</u>

<u>Problem #1:</u>  The claimant is a 57 year old White female with cervical
             spine pain associated with numbness and tingling and is
             status post anterior spine fusion.  The claimant
             continues to have numbness and tingling and myalgia.

<u>Problem #2:</u>  Thoracic spine pain.  The claimant has point tenderness
             and diminished range of motion of lumbar spine.

<u>Problem #3:</u>  The claimant has myalgia and is being followed at the
             Illinois Bone and Joint Institute.

<u>Problem #4:</u>  Balance problems.  The claimant has normal blood pressure
             and a movement disorder without any resting tremor
             consideration of neurological movement disorder cannot
             be discluded.  The claimant is being followed at Rush
             Presbyterian St. Luke's and Illinois Bone and Joint
             Institute.

<u>Problem #5:</u>  Hypertension, moderately controlled.  The claimant is
             followed by primary care physician at the Illinois Bone
             and Joint Institute, Dr. Aaron Arnold.

<u>Problem #6:</u>  Jaw pain.  No evidence of jaw pain, however, the claimant
             describes pain that occurred after having her surgery.
             May be related to the neuron axis involvement.  Her
             dental hygiene is appropriate.  The claimant is followed
             by orthopedist and Illinois Bone and Joint Institute.


At the end of the examination the claimant was asked if all medical
complaints were addressed today and the claimant responded
affirmatively.

Thank you for referring this claimant.  If you have any questions,
please feel free to contact me.

Sincerely,

Paul E. McFarlane, M.D.
Lic#: 036-094038  Exp: 7/31/08
PM/mm

# Claim Strategy

| | | | | | |
|---|---|---|---|---|---|
| Name | JANICE  BAKE | SSN | 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 | DOB | 05/16/1949 |
| Account Name | CORUS BANKSHARES, INC. | Account # | LK 0960120 | Incurred Date | 06/21/2006 |
| Claim Manager | Kobie Burns | Incident # | 1495456 | Claim Eff Dt-Status | 08/22/2006 - Pending |

## Update Rationale

| | |
|---|---|
| Title | Initial |
| Update Rationale | Initial Claim Strategy |

**For Walk-up and Nurse Interaction Only**

| Role | Name |
|---|---|

**For Staffings Only - Indicate Resources Present (check all that apply)**

☒ AMD

☒ NCM

☐ VRC

☐ CBH Specialist

☐ On-Site Psych

☒ Network Orthopedist

## Claim Status Information

| | |
|---|---|
| Status | Pending |
| Status Reason | Initial Investigation |
| Reopened Reason | |
| Second Eye Review Required | |

| Second Eye Review Complete | Date | User ID |
|---|---|---|

**Comments**

Any Occ 9/2008

57 yof Vice President of Operation Analysis dx with Cervical Myelopathy.

Tx AP - Dr. Bergin.

Duration guideline for rtw sed/light occ - 28-42 days for med tx.

Eligibility Review -
Class 1 -F-T Executive Officers of ER working min 35 hrs/wk.
Eff Date Policy - 1/1/2003.
DOH - 2/10/1975
Elig Wait Period - 1st month after 60 days AS.
Eff Date Coverage - prior to 1/1/03. Cigna policy eff 1/1/03.
BWP - 90 days.
Policy contributory - no, ER pays 100 percent.
Enrollment card - no.

JANICE BAKE
LINA 0360

## SCHEDULE OF BENEFITS

**Premium Due Date**

Premiums are due in arrears on the date coinciding with the day of the Policy Anniversary Date or the last day of the month, if earlier.

**Classes of Eligible Employees**

On the pages following the definition of eligible employees there is a Schedule of Benefits for each Class of Eligible Employees listed below. For an explanation of these benefits, please see the Description of Benefits provision.

If an Employee is eligible under one Class of Eligible Employees and later becomes eligible under a different Class of Eligible Employees, changes in his or her insurance due to the class change will be effective on the date of the change in class.

Class 1        All active, Full-time Executive Officers of the Employer regularly working a minimum of 35 hours per week.

Class 2        All active, Full-time Employees of the Employer excluding Executive Officers regularly working a minimum of 35 hours per week.

1

JANICE BAKE
LINA 0370



## SCHEDULE OF BENEFITS FOR CLASS 1

**Eligibility Waiting Period**

For Employees hired on or before the Policy Effective Date:

> The first of the month on or
> after 60 days of Active Service

For Employees hired after the Policy Effective Date:

> The first of the month on or
> after 60 days of Active Service

**Definition of Disability/Disabled**
An Employee is Disabled if, because of Injury or Sickness,
1.    he or she is unable to perform all the material duties of his or her regular occupation, or solely due to Injury or Sickness, he or she is unable to earn more than 60% of his or her Indexed Covered Earnings; and
2.    after Disability Benefits have been payable for 24 months, he or she is unable to perform all the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, he or she is unable to earn more than 60% of his or her Indexed Covered Earnings.

**Definition of Covered Earnings**

Covered Earnings means an Employee's annual wage or salary as reported by the Employer for work performed for the Employer as in effect just prior to the date Disability begins.   Covered Earnings are determined initially on the date an Employee applies for coverage.  A change in the amount of Covered Earnings is effective on the first of the month following the change, if the Employer gives us written notice of the change and the required premium is paid.

It does not include amounts received as bonus, commissions, overtime pay or other extra compensation.

Any increase in an Employee's Covered Earnings will not be effective during a period of continuous Disability.

**Benefit Waiting Period**              90 days

A period of Disability is continuous even if the Employee can return to Active Service for up to 15 days during the Benefit Waiting Period.  The length of the Benefit Waiting Period will not be extended by the number of days the Employee can return to Active Service.

**Disability Benefit**                   The lesser of 60% of an Employee's monthly Covered Earnings rounded to the nearest dollar or the Maximum Disability Benefit, reduced by any Other Income Benefits.

"Other Income Benefits" means any benefits listed in the Other Income Benefits provision that an Employee receives on his or her own behalf or for dependents, or which the Employee's dependents receive because of the Employee's entitlement to Other Income Benefits.

**Maximum Disability Benefit**           $10,000 per month

**Minimum Disability Benefit**           The greater of $100 or 10% of an Employee's Monthly Benefit prior to any reductions for Other Income Benefits.

2

JANICE BAKE
LINA 0371

 

*Work Incentive Benefits*

For the first 12 months the Employee is eligible for a Disability Benefit, the Disability Benefit is as figured above. If for any month during this period, the sum of the Employee's Disability Benefit, current earnings and any additional Other Income Benefits exceeds 100% of his or her Indexed Covered Earnings, the Disability Benefit will be reduced by the excess amount.

After the first 12 months, the Disability Benefit is as figured above, reduced by 50% of his or her current earnings received during any month he or she returns to work. If the sum of the Employee's Disability Benefit, current earnings and any additional Other Income Benefits exceeds 80% of his or her monthly Indexed Covered Earnings, the Disability Benefit will be reduced by the excess amount figured above.

No Disability Benefits will be paid if the Insurance Company determines the Employee is able to work under a Transitional Work Arrangement or other modified work arrangement and he or she refuses to do so.

Current earnings include any wage or salary for work performed while Disability Benefits are payable. If an Employee is working for another employer on a regular basis when Disability begins, current earnings will include any increase in the amount he or she earns from this work during the period for which Disability Benefits are payable.

**Additional Benefits**

*Survivor Benefit*

| | |
|---|---|
| Benefit Waiting Period: | After 3 Monthly Benefits are payable. |
| Amount of Benefit: | 100% of the sum of the last full Disability Benefit plus any current earnings by which the Disability Benefit was reduced for that month. |
| Maximum Benefit Period | A single lump sum payment equal to 3 monthly Survivor Benefits. |

**Maximum Benefit Period**

| Age When Disability Begins | Maximum Benefit Period |
|---|---|
| Age 62 or under | The Employee's 65th birthday or the date the 42nd Monthly Benefit is payable, if later. |
| Age 63 | The date the 36th Monthly Benefit is payable. |
| Age 64 | The date the 30th Monthly Benefit is payable. |
| Age 65 | The date the 24th Monthly Benefit is payable. |
| Age 66 | The date the 21st Monthly Benefit is payable. |
| Age 67 | The date the 18th Monthly Benefit is payable. |
| Age 68 | The date the 15th Monthly Benefit is payable. |
| Age 69 or older | The date the 12th Monthly Benefit is payable. |

**Initial Premium Rates**

$.18 per $100 of Covered Payroll

Covered Payroll for an Employee will mean his or her Covered Earnings for the insurance month prior to the date the determination is made. However, an Employee's Covered Payroll will not include any part of his or her monthly Covered Earnings which exceed $16,667.

TL-004774

3

JANICE BAKE
LINA 0372

  M. BHARADWAJ 

| | INVOICE NO. |
|---|---|
| | 2B599667 |

**Intracorp**℠

5144 COLLECTION CENTER
CHICAGO, IL 60693

# INVOICE

REHABILITATION SERVICES

| DATE | CUSTOMER NO. | ACCOUNT FILE NO. | EMPLOYER | IC CASE NO. |
|---|---|---|---|---|
| 04/26/07 | 5CB15222 | 1495456 | NOT GIVEN | 2B34072 |

CIGNA DISABILITY MANAGEMENT SOLUTIONS
PO BOX 22326

PITTSBURGH, PA 15222

MEDHA BHARADWAJ

DATE OF INJURY
06/21/06

| CLAIMANT | SOCIAL SECURITY NO. | ICD9 CODE | IRS NUMBER |
|---|---|---|---|
| BAKE JANICE | 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 | 959.8 | 23-1728483 |

| DATE | ACTIVITY | TIME | MILES | EXPENSE |
|---|---|---|---|---|
| 4/23/07 | File Review<br>Vocational | .50 | | |
| | Vocational Activity – File<br>Vocational | .50 | | |
| 4/24/07 | Special Instructions Review<br>Medical | | | |
| | Report – Client/Family<br>Medical | 1.00 | | |

DETAIL SUBTOTALS    2.00

### I N V O I C E   S U M M A R Y

| | RENDERED | BILLED | RATE | |
|---|---|---|---|---|
| HOURS | 2.00 | 2.00 | 89.00 | 178.00 |
| | | | | |
| TOTAL DUE | | | | 178.00 |
| BILLED TO DATE | 178.00 | | | |

UPON RECEIPT, PLEASE SUBMIT PAYMENT WITH INVOICE COPY TO INTRACORP AT:

INTRACORP, INC.
5144 Collection Center Drive
Chicago, Illinois 60693

FOR PAYMENT QUESTIONS CALL:  (800) 289-8194

JANICE BAKE
LINA 0427

Pd KD
5/7/07

INVOICE: 2B599667

TOTAL DUE--->    178.00

PAYABLE UPON RECEIPT

 **Intracorp**

Clientele Case : 2B34072

DOT Review

To: CIGNA Disability Management Solutions
12225 Greenville Ave Suite 655
Dallas, TX  75243

Attention: Medha Bharadwaj
Customer claim #: 1495456

Re:  Janice Bake                    Date of referral: 04/23/2007

Date of injury: 06/21/2006            Intracorp file number:
S5V45L11-0001  Diagnosis: INJURY MLT SITE/SITE NEC
ER/Insured: NOT GIVEN

District Manager name: Christina McKenzie (412) 351-2643
FCM name: Sandra Wolk Schimizzi, MED,LPC,CRC,CCM
Rehabilitation Counselor/Case Manager

Date of Report: 04/23/2007

SERVICE REQUESTED
A DOT review was requested to determine if the physical requirements
of the occupation listed on the Job Description of First Vice
President-Operations Analysis from CORUS Bank match the DOT of Vice
President, Financial Institution.

Information reviewed:
Job Description of First Vice President-Operations Analysis from CORUS
Bank  DOT 186.117.078 of Vice President, Financial Institution
Disability Questionnaire completed by Janice Bake dated 9/13/06

Discussion:
The Disability Questionnaire completed by Ms. Bake indicates that job
duties of First Vice President-Operations Analysis from CORUS Bank are
"managing staff, handling fraud and relative duties, use of PC File,
phone, training and development of staff, develop procedures,
processes, use of various software, Internet, Seminars, PC, Sonter
calculater." Ms. Bake's description of her job duties match the Job
Description provided by CORUS Bank.
CORUS Bank included Essential Physical Requirements that involve
ability to operate basic office equipment such as copier, Fax machine,
etc., sit and/or stand for long periods of time, work varied
hours/days as business dictates, travel to other locations, both local
and nationwide.

The DOT 186.117.078 of Vice President, Financial Institution,
catagorizes this job as "sedentary." The DOT description job tasks
reflect the Job Description in terms of coordinating activities,
directing and managing. The DOT also includes "may solit new business

JANICE BAKE
LINA 0428

617337



or participate in community or service organizations" which implies
performing work activities in more than one site which would require
travel. Traveling locally and nationally is a typical function of a
"Vice President" of a banking institution. Because of the nature of
the position, it is my opinion that the position of First Vice
President-Operations Analysis from CORUS Bank is of a sedentary nature
and that the DOT 186.117.078 of Vice President, Financial Institution
is an appropriate match.

Respectfully Submitted,
Sandra Wolk Schimizzi, MED,LPC,CRC,CCM
Rehabilitation Counselor and Field Case Manager

JANICE BAKE
LINA 0429

617337

LAW OFFICES    ●

● 55 W Monroe St
Ste 2440
Chicago, Illinois 60603

# Daley, DeBofsky & Bryant

VOICE (312) 372-5200
FAX  (312) 372-2778
WEB  ddbchicago.com

Frederick J. Daley Jr.
Mark D. DeBofsky
David A. Bryant
Marcie E. Goldbloom
James R. Comerford
Violet H. Borowski
Barbara H. Borowski
Sandra Dye
Gregory A. Benker

Of Counsel
Heather F. Aloe

June 4, 2007

Medha Bharadwaj
Appeal Claim Manager
CIGNA Group Insurance
D212
12225 Greenville Avenue, Suite 1000
Dallas, TX 75243-9337

RE:    Janice Bake
Incident No. 1495456
Plan/Policy No. LK0960120
Plan/Policy Holder Corus Bankshares, Inc.
Life Insurance Company of North America

Dear Ms. Bharadwaj:

We are writing with respect to CIGNA's letter of May 25, 2007.  Please be advised that we are considering whether to file a second-level appeal on Ms. Bake's behalf and are hereby requesting any and all claim file documentation obtained by CIGNA since we submitted our original appeal on April 5, 2007.  Our request includes, but is not limited to the claim documentation and notes, the medical director report and findings, and any claim staffing documentation.

Thank you for your attention to this matter.

Very truly yours,

Mark D. DeBofsky

MDD/ccm
cc:    Janice Bake

JANICE BAKE
LINA 0430

May 25, 2007
Page 3

Please contact our office at 800-352-0611 ext. 1249 should you have any questions.

Sincerely,

*Medha Bharadwaj*

Medha Bharadwaj, FLMI, ACS
Appeal Claim Manager

JANICE BAKE
LINA 0433




*Medha Bharadwaj, FLMI, ACS*
*CIGNA Group Insurance*
D212
12225 Greenville Avenue
Suite 1000
Dallas, TX 75243-9337

Phone: 800-352-0611 ext. 1249
Fax: 860-731-3211

**CIGNA Group Insurance**
Life · Accident · Disability

MR. MARK DEBOFSKY
DALEY, DEBOFSKY & BRYANT
55 W. MONROE ST.
STE. 2440
CHICAGO, IL 60602

May 25, 2007

| | |
|---|---|
| Name: | JANICE BAKE |
| Incident Number: | 1495456 |
| Plan/Policy Number: | LK0960120 |
| Plan/Policy Holder: | CORUS BANKSHARES, INC. |
| Underwriting Company: | Life Insurance Company of North America |

DEAR MR. DEBOFSKY,

We have carefully reviewed your client's claim for Long Term Disability (LTD) benefits, and must affirm our previous denial of Ms. Bake's claim. Please refer to our November 08, 2006 letter for specific policy definitions and previously reviewed information. In addition to the above, please refer to the following policy provision:

### Definition of Disability

"An Employee is Disabled if, because of Injury or Sickness,
1. he or she is unable to perform all the material duties of his or her regular occupation, or solely because of Injury or Sickness, he or she is unable to earn more than 60% of his or her Indexed Covered Earnings; and
2. after Disability Benefits have been payable for 24 months, he or she is unable to perform all the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, he or she is unable to earn more than 60% of his or her Indexed Covered Earnings."

### Disability Benefits

"The Insurance Company will pay Disability Benefits if an Employee becomes Disabled while covered under this Policy. A Disabled Employee must satisfy the Benefit Waiting Period and be under the Appropriate Care of a Physician. Satisfactory proof of Disability must be provided to the Insurance Company, at the Employee's expense, before benefits will be paid.

The Insurance Company will require continued proof of the Employee's Disability for benefits to continue."

### Benefit Waiting Period

"The Benefit Waiting Period is the period of time an Employee must be continuously Disabled before Disability Benefits may be payable. The Benefit Waiting Period is shown in the Schedule of Benefits."

The Benefit Waiting Period under the Corus Bankshares Long Term Disability policy is 90 days of continuous Disability.

JANICE BAKE
LINA 0434

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are provided by these subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.



May 25, 2007
Page 2

Ms. Bake's first day off work due to cervical radiculopathy with myelopathy and thoracic kyphosis was June 21, 2006. Based on the above, the Benefit Waiting Period would have been met as of September 18, 2006 with Long Term Disability Benefits starting on September 19, 2006 provided that Ms. Bake met the Definition of Disability continuously throughout the Benefit Waiting Period.

**Overview of Eligibility of Benefits**

We based our decision on Ms. Bake's claim for benefits upon Policy language and all documents contained in her claim file, viewed as a whole.

I am aware that Ms. Bake has been off work since June 21, 2006 due to cervical radiculopathy with myelopathy and thoracic kyphosis. To clarify Ms. Bake's functionality, we conducted a medical review. As part of his review, our medical director reviewed the medical documentation contained in Ms. Bake's file.

After review of the information contained in Ms. Bake's file, our medical director said that the medical documentation does not document significant measured physical limitations, such as spinal range of motion by inclinometry and/or upper extremity strength deficits by manual muscle testing to support any work restrictions precluding Ms. Bake from performing her occupation as a First Vice President-Operations Analysis from June 21, 2006 forward.

**Summary**

Mr. Debofsky, the plan provides that Life Insurance Company of North America would pay benefits only if Ms. Bake met the plan's requirements, including the definition of Disability. Disability is determined by medically supported limitations and restrictions which would preclude Ms. Bake from performing the duties of her occupation from her last day worked through the end of the Benefit Waiting Period. We do not dispute Ms. Bake may have been somewhat limited or restricted due to her subsequent diagnoses and treatment; however, an explanation of Ms. Bake's functionality and how her functional capacity prevented Ms. Bake from continuously performing the material duties of her occupation from June 21, 2006 through September 18, 2006 and beyond was not clinically supported. The presence of a condition, diagnosis or treatment does not necessarily equate to a presence of a disabling condition or decreased level of functionality. As such, we are reaffirming our previous denial decision of November 08, 2006 within the meaning and terms of Ms. Bake's group Long Term Disability plan.

You may request a review of this decision by writing to the Life Insurance Company of North America representative signing this letter at the address noted on the letterhead. The written request for review must be sent within 180 days of the receipt of this letter. In addition to any written comments, your request for review must include new documentation you wish us to consider. Under normal circumstances, you will be notified of a decision on Ms. Bake's appeal within 45 days of the date your request for review is received. If there are special circumstances requiring delay, you will be notified of the reason for delay within 30 days of receipt of your request, and every 30 days thereafter. A final decision will be made no later than 90 days.

Please note that Ms. Bake has a right to bring legal action regarding her claim under the ERISA section 502(a). Ms. Bake and her plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact Ms. Bake's local United States Department of Labor Office or her State Insurance Regulatory Agency.

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy. This determination has been made in good faith and without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein.

Please review Ms. Bake's insurance booklet, certificate or coverage information available from her employer to determine if she is eligible for additional benefits.

Rule 9.19 of the Rules and Regulations of the Illinois Department of Insurance requires that our company advise you that if you wish to take this matter up with the Illinois Department of Insurance, it maintains a consumer division at 100 West Randolph, Suite 15-100, Chicago, Illinois, 60601.

JANICE BAKE
LINA 0435

May 25, 2007
Page 3

Please contact our office at 800-352-0611 ext. 1249 should you have any questions

Sincerely,



Medha Bharadwaj, FLMI, ACS
Appeal Claim Manager

JANICE BAKE
LINA 0436



Bake, Janice

Please see previous IRR. File was staffed with Md Mendez. However, after the staffing, addl records have been received. Would like MD Mendez to address this new information. Would these new PT notes support limitations/restrictions to preclude cx from performing her sedentary occupation beyond 6/21/06
Medha Bharadwaj, ACM

## 5/15/07:

Medical records reviewed include, but are not limited to
- 7/13/06, 9/12/06 and 9/14/06 PT notes, handwritten.  No measurements listed.
- 5/10/07 note, Dr. Bergin.  Thoracic and lumbar spine limit her ability to work. She has numbness and parasthesias in her arms as well as some weakness that is consistent both with cervical radiculopathy and median and ulnar neuropathies Has severe pain.  Has severe degenerative discs.  Increasing thoracic back pain may be a flare up from her rheumatoid arthritis.  Unable to work even in a sedentary capacity.  Permanently disabled.  No measurements listed.
See Investigation Results below for assessment.
John Mendez, M.D.

## ASSESSMENT
Based on the additional provide medical records, the original assessment remains unchanged because there remains no documentation of significant measured physical limitations, whether they pertain to the cervical, thoracic or lumbosacral spine areas.
**John Mendez, M.D.**

*Confidential, unpublished property of CIGNA. Do not duplicate or distribute. Use and distribution limited solely to authorized personnel. © Copyright 2007 CIGNA*

JANICE BAKE
LINA 0437



Bake, Janice

57 yof First VP sedentary per DOT, off work since 6/21/06 due to cervical radiculopathy with myelopathy and thoracic kyphosis. BSD is 9/19/06. II claim. Cx had anterior cervical diskectomy and fusion in January 2006 and then returned to work after this, and then ceased work on 6/20/06 due to pain. Claim denied based on MC staffing that found that medical did not support l/r. Atty has appealed with medical records. Question
   1. Does new medical records support limitations and/or restrictions from 6/21/06 through 9/18/06 and from 9/19/06 forward to preclude sedentary work capacity

Medha Bharadwaj, ACM


**5/1/07:**

Medical records reviewed include, but are not limited to
   - 9/27/06 note, Dr. Arnold.  Degenerative arthritis cervical and lumbar spine. Pain along iliotibeal band  and occasionally anterior shin.  Exam showed tenderness to palpation along right IT band, greater trochanter, and lateral shin. Knee joint line tenderness.  No measured physical limitations are documented.
   - 8/22/06 note, Dr. Bergin.  7 mo post ACDF.  Normal gait and neuro exam.
   - 7/11/06 note, Dr. B.  Mid thoracic pain better with activity modification.  Has degenerative and inflammatory changes in the thoracic spine.  Exam showed no neuro deficits and increased thoracic kyphosis.
   - 5/16/06 note, Dr. B.  Neck pain somewhat better.  Mid thoracic spine pain. Exam showed a well-healed incision and mid-thoracic spine pain with no neurological deficits.
   - 1/30/06 operative note, Dr. B.  ACDF C5-7 with instrumentation.

See Investigation Results below for assessment.
John Mendez, M.D.


**ASSESSMENT**
No.  Based on the additional provided medical records, the original assessment remains unchanged because there remains no documentation of significant measured physical limitations, such as spinal range of motion by inclinometry and/or upper extremity strength deficits by manual muscle testing to support any work restriction recommendations from 6/21/06 forward.
**John Mendez, M.D.**

*Confidential, unpublished property of CIGNA. Do not duplicate or distribute. Use and distribution limited solely to authorized personnel. © Copyright 2007 CIGNA*

From:                              ●━━━━━━━━━━━━━━━━  04/30/2007 14:24    #856 P.001/002 ━━━━━━━●

# DALEY DEBOFSKY & BRYANT

## FACSIMILE TRANSMITTAL SHEET

| TO:<br>Medha Bharadwaj | FROM:<br>Mark D. DeBofsky, Esq. |
|---|---|
| COMPANY:<br>Cigna | DATE:<br>APRIL 30, 2007 |
| FAX NUMBER:<br>860-731-3211 | TOTAL NO. OF PAGES INCLUDING COVER:<br>2 |
| PHONE NUMBER: | |
| Re:<br>Janice Bake | CC: |

☐ URGENT    ☐ FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY    ☐ PLEASE RECYCLE

NOTES/COMMENTS:

This communication may contain privileged and confidential information. It is intended only for the use of the recipient named above. If you are not the intended recipient of this communication, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by collect telephone call and return the original message to us at the address above via United States Postal Service.

55 WEST MONROE SUITE 2440
CHICAGO, ILLINOIS 60603
(312) 372-5200
FAX (312) 372-2778

JANICE BAKE
LINA 0439