**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **JANICE BAKE** ) | |
| ) | |
| **Plaintiff** ) | **Case No.: 07 C 6600** |
| ) | |
| **vs.** ) | **Judge Der-Yeghiayan** |
| ) | |
| **LIFE INSURANCE COMPANY OF** ) | **Magistrate Judge Cox** |
| **NORTH AMERICA** ) | |
| ) | |
| **Defendant.** ) | |

**REPLY IN SUPPORT OF LINA'S MOTION
FOR ENTRY OF PROTECTIVE ORDER**

Defendant, LIFE INSURANCE COMPANY OF NORTH AMERICA ("LINA"), by its attorneys, Daniel K. Ryan and Peter E. Pederson, respectfully submits this Reply in Support of its Motion for Entry of a Protective Order:

## I.    INTRODUCTION

In her opposition memorandum, Bake has not identified a legal basis that entitles her to depose Dr. Avrom Simon or to conduct other discovery beyond the administrative record, which consists of the evidence before LINA when it denied Bake's claim for long-term disability benefits under the ERISA plan ("Plan") established by her former employer, Corus Bankshares, Inc. ("Corus"). ERISA's deferential standard of review applies to this case because the Group Insurance Plan (Ex. B to LINA's motion) grants LINA discretion to decide claims. Under the deferential standard, a claimant may obtain extra-record discovery only if she shows a specific instance of misconduct or a serious conflict of interest and that discovery will likely reveal a procedural irregularity. Bake has not made and cannot make this showing.

Bake argues that the deferential standard does not apply because of alleged defects in the Group Insurance Plan. Her arguments in this regard are factually and legally wrong. However,

6297668v1 884636

even if the Group Insurance Plan does not control and the Court conducts *de novo* review, the

Court should still enter a protective order.  Under the *de novo* standard, ERISA claimants do not

have an absolute right to conduct discovery outside the administrative record.  Rather, such

discovery is left to the discretion of the Court.  Here, the factors guiding the exercise of this

discretion mandate against permitting extra-record discovery because Dr. Simon's deposition is

not necessary for the Court to reach an informed and independent judgment about Bake's claim.

## II.     LEGAL ARGUMENT

### A.     This action is subject to the deferential, or "arbitrary and capricious," standard of review.

The standard of judicial review in an action seeking to recover benefits under ERISA's

civil enforcement provision, 29 U.S.C. § 1132(a)(1)(B), depends on the discretion granted to the

plan's fiduciary in the plan documents.  *Semien v. Life Ins. Co. of North America,* 436 F.3d 805,

810 (7th Cir. 2006).  A denial of benefits should be reviewed under a *de novo* standard unless the

plan grants the claims fiduciary discretionary authority.  *Id.* (quoting *Firestone Tire & Rubber

Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  But if the plan documents grant the claim administrator

discretionary authority, a court reviews a denial of benefits under the deferential or "arbitrary and

capricious" standard of review.   *Perlman v. Swiss Bank Corp. Comprehensive Disability

Protection Plan*, 195 F.3d 975, 980 (7th Cir. 1999).  To lower the standard of review from *de

novo* to arbitrary and capricious, the plan document should state that it grants discretionary

authority to the claim administrator.  *Semien,* 436 F.3d at 810.  The Group Insurance Plan clearly

meets this standard, as it states:

> The Insurance Company shall have the authority, in its discretion, to interpret the
> terms of the Plan, to decide questions of eligibility for coverage or benefits under
> the Plan, and to make any related findings of fact. (Motion Ex. B p. 15).

Bake argues that the Group Insurance Plan does not trigger deferential review because it was not produced until her counsel subpoenaed Dr. Simon.  (Resp. p. 1-2).  This argument betrays a misunderstanding of LINA's role in this Plan.  Corus, Bake's former employer, established the Plan pursuant to ERISA.  Corus is designated as the Plan administrator in the Group Insurance Plan.  (Motion Ex. B p. 14).  LINA insures disability benefits under the Plan and acts as a claims fiduciary pursuant to the Group Policy it issued to Corus.  (Ex. A to Cplt.; Motion, Ex. B).  As the claims fiduciary, LINA's disclosure obligations are limited to the documents identified at 29 C.F.R. § 2560.503-1(g)(1)(v) and (h)(2)(iii), which does not cover all documents governing a plan, but only those documents relied upon or received in connection with a benefit determination.  LINA complied with the regulation by providing Bake's counsel, before suit, the Group Policy and the administrative record.  That LINA did not produce the Group Insurance Plan earlier does not bar the document from being considered in determining the standard of review.

Bake argues that the Illinois Administrative Code, 50 Ill.Admin.Code § 2001.3, bars provisions in group insurance policies that grant insurers discretionary authority.  However, the Group Insurance Plan is dated "01/2004."  The Group Policy took effect January 1, 2003.  (Motion Ex. B, last page; Group Policy, Ex. A to Cplt. p. 1).    § 2001.3 of the Illinois Administrative Code took effect on July 1, 2005, after the effective date of the Plan documents.

Bake claims that the Group Policy and Group Insurance Plan renewed each January 1 after the original effective date, which gave rise to a new contract of insurance that became subject to § 2001.3 on January 1, 2006.  However, neither the Group Insurance Plan nor the Group Policy states that the Group Policy renews each January 1 and terminates each December 31.  The documents and their terms remained in effect until Bake's alleged disability in 2006.

6297668v1 884636

Nothing in the regulation suggests it applies retroactively to policies of insurance already in effect; the regulation is inapplicable. Last, Bake's argument misses the mark because Illinois law provides that, when a policy of insurance does renew, the terms and conditions of the original policy become part of the renewal contract of insurance. *Burmac Metal Finishing Co. v. West Bend Mut. Ins. Co.*, 356 Ill.App.3d 471, 825 N.E.2d 1246, 1255 (2nd Dist. 2005). Thus, any purported renewal of the Group Policy would not change its terms.

Bake argues that ERISA's deemer clause, 29 U.S.C. § 1144(b)(2)(B), excludes the Illinois regulation from the scope of ERISA's preemption clause, which states that ERISA supersedes all state laws insofar as they relate to any "employee benefit plan." 29 U.S.C. § 1144(a). This argument is incorrect. In *Aetna Health Inc. v. Davila,* 542 U.S. 200, 124 S.Ct. 2488 (U.S. 2004), the Supreme Court found that § 1144(a) preempted a Texas statute that made managed care entities liable for their failure to use ordinary care in administering claims for benefits under ERISA plans. The statute could never be applied without reference to an ERISA plan's terms, and it therefore related to ERISA plans and was preempted. Similarly, the regulation here, when applied to the authority of a claim administrator under an ERISA plan, cannot be applied without changing the manner in which a claim administrator's application of the plan terms is judicially reviewed. The regulation is therefore preempted under § 1144(a).

This case is analogous to *Shyman v. Unum Life Ins. Co.*, 427 F.3d 452 (7th Cir. 2005), where the "package" of plan documents consisted of a group policy, a summary plan description, and a certificate of insurance. The group policy and SPD did not grant the insurance company discretion, but the certificate of insurance did. The court held that the grant of discretion in the certificate of insurance triggered the deferential standard of review because the plan documents stated "the certificate of insurance is part of the policy, unless it contradicts some other clause-

4

and Shyman does not contend that the discretion-granting language contradicts either the summary plan description or any clause of any other document. It is unimportant that one document is captioned "certificate" and another bears the legend "policy;" if the discretion-granting language can be on any page of a multi-page plan (and it can), then the fact that this page bears its own caption is irrelevant." *Id.* at 455.

Here, the seventh page of the Group Insurance Plan bears the caption Group Insurance Certificate. (Ex. B to Motion p. 7). The Group Insurance Plan at page number 14 states that the Supplemental Information section and the Certificate together make up the SPD for the Plan. Under *Shyman*, the discretion granted to LINA in the Group Insurance Plan triggers application of deferential review. 427 F.3d at 455; *Ruiz v. Continental Cas. Co.,* 400 F.3d 986, 991 (7th Cir. 2005).

In a post-*Shyman* case, *Sperandeo v. Lorillard Tobacco Co.,* 460 F.3d 866 (7th Cir. 2006), the court declined to give effect to discretion-granting language in a certificate of insurance because the certificate stated that it was not the policy of insurance and neither the policy nor the certificate incorporated the certificate into the policy. On this ground, the court distinguished *Sperandeo* from *Shyman.* 460 F.3d at 871-21 n. 4. That distinction, however, does not apply in this case, because the Group Policy here incorporates the terms of the Group Insurance Plan. The Group Policy states that "A certificate of insurance will be delivered to the Employer for delivery to the Insureds. Each certificate will list the benefits, conditions and limits of the Policy. It will state to whom benefits will be paid." (Ex. A to Cplt., p. 16). Therefore, this case is controlled by *Shyman*, rather than *Sperandeo*, and the deferential standard of review applies.

    **B.**    **Under the deferential standard, discovery is prohibited unless Bake shows a specific instance of misconduct or conflict of interest and that discovery is likely to reveal a procedural irregularity.**

6297668v1 884636

In *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan,* 195 F.3d 975, 981-82 (7th Cir. 1999), the plaintiff sued under ERISA alleging that UNUM Life Insurance Company, the insurer of her employer-sponsored disability plan, wrongfully denied her claim for benefits.   The district court allowed Perlman "to explore at length by depositions and interrogatories" "the thought processes of UNUM's staff, the training of those who considered Perlman's claim, and in general who said what to whom within UNUM." *Id.*  The Seventh Circuit held that the district court erred in permitting discovery.  When the deferential standard of review applies and the claim administrator gave the benefit application a genuine evaluation, "judicial review is limited to the evidence that was submitted in support of the application for benefits, and the mental processes of plan's administrator are not legitimate grounds for of inquiry." *Id.*  Accord *Trombetta v. Cragin Federal Bank for Sav. Employee Stock Ownership Plan*, 102 F.3d 1435, 1438 n.1 (7th Cir. 1996) (district judge properly denied ERISA claimants' request for discovery since plan's trustees had discretionary authority).

*Semien v. Life Ins. Co. of North America,* 436 F.3d 805, 815 (7th Cir. 2006), affirmed the validity of limits that *Perlman* places on discovery.  There, the plaintiff alleged that LINA and the ERISA plan established by her employer improperly terminated her long-term disability benefits.  In the district court, Semien sought discovery regarding compensation LINA paid to the two independent doctors it consulted in deciding Semien's administrative appeal and the frequency with which they consulted with LINA.  The Seventh Circuit affirmed the district court's denial of this discovery.  The court stated that discovery, which is disfavored in the ERISA context, should be allowed only in the "exceptional circumstance" where a claimant shows two factors: (1) a specific conflict of interest or instance of misconduct; and (2) there is good cause to believe limited discovery would reveal a procedural defect in the administrator's

6

determination. *Semien,* 436 F.3d at 815. This "standard essentially precludes discovery without an affidavit or factual allegation." *Id.* To obtain discovery, the claimant must adduce reason "to believe that this conflict of interest has solidified into conscious, concrete policies, procedures, and practices to promote the company's financial welfare at the expense of a full and fair evaluation of the plaintiff's claim."

Based on *Semien* and *Perlman,* judges in the Seventh Circuit have denied discovery of the sort Bake is seeking. In *Broeski v. Provident Life and Acc. Ins. Co.,* 2007 WL 1704012 at *3-4 (N.D. Ill. 2007), a claimant seeking disability benefits under ERISA moved to compel responses to discovery concerning a doctor who opined on her functional limitations at the request of her benefit plan's insurer. The plaintiff argued that the doctor was biased because he derived income from providing disability opinions to insurance companies. The court denied the motion because, if an allegation of bias were sufficient to open the doors to discovery in ERISA cases, discovery would be the norm rather than the disfavored exception. *Id.*

In *Smith v. Accenture U.S. Group Long Term Disability Ins. Plan,* 2006 WL 2792695 at *2 (N.D. Ill. 2006), the claimant alleged that an insurance company wrongfully terminated her disability benefits under an ERISA plan. She sought discovery regarding the relationship between the insurer and outside doctors it consulted. The plaintiff argued that the compensation the doctors received for providing disability assessments made them biased and that one doctor consciously disregarded medical evidence to arrive at a no-disability finding. The court held these allegations insufficient to authorize discovery. "Otherwise, discovery about the relationship between the plan administrator and a consulting physician would be the rule." *Id.*

In *Rubber Shop v. Benicorp Ins. Co.,* 238 F.R.D. 618 (N.D. Ind. 2006) (affirmed by the district judge at 2006 WL 3833323), the claimant alleged that the insurer of his healthcare plan

6297668v1 884636

denied coverage for his open heart surgery on the basis that he was not an employee of the plan sponsor, although the insurer had allegedly represented that he would be treated as an employee when he purchased the policy. The claimant sought discovery about the persons in involved in the denial of his claim, personal information of high ranking officials at the company, the company's procedures, and administrative guides for handling claims. *Id.* at 620. The insurer moved for a protective order. To show misconduct, the claimant argued that the insurer had improperly withheld 400 pages of the administrative record when he requested it before filing his administrative appeal and that the insured conducted a biased investigation into whether he was an employee. The court found that these allegations did not satisfy the *Semien* standard for permitting discovery. *Id.*

The application of this case law is clear. Discovery beyond the administrative record is allowed only if the plaintiff meets the high bar of showing specific misconduct or a conflict of interest and that discovery is likely to reveal a procedural error in the plan fiduciary's review of the claim. Here, LINA thoroughly evaluated Bake's claim. It compiled 772 pages of records related to her medical conditions and occupational duties. It finally denied the claim only after it consulted with an in-house nurse case manager, Donna Simmons, RN (Motion Ex. A 682); its associate medical director, Dr. Mendez (Ex. A 437-38); and the independent physician, Dr. Simon, who found that the evidence discredited Bake's claim that she could not engage in sedentary work. (Ex. A 93-97). Because Bake has not and cannot meet the *Semien* standard for obtaining discovery, discovery should be limited to the administrative record.

**C.    Even if, *arguendo*, the standard of review is *de novo*, discovery should be limited to the administrative record because the record alone will allow the Court to reach an independent judgment about Bake's claim for benefits.**

Bake argues that, under *Diaz v. Prudential Life Ins. Co.*, 499 F.3d 640 (7th Cir. 2007), courts no longer determine a claimant's entitlement to benefits based on the administrative

record when the *de novo* standard applies.  Instead, she seems to argue that courts should conduct *de novo* review of benefit denial based on the administrative record before the plan as well as any new evidence the claimant elects to submit.  *Diaz* does not support this contention.

*Diaz* held that, when a district court considers a motion for summary judgment in a *de novo* case, it may not resolve disputed issues of material fact and it is irrelevant whether the claims fiduciary complied with ERISA's mandate to provide claims with full and fair review.  *Id.* at 643 (citing *Patton v. MFS/Sun Life Financial Distributors, Inc.*, 480 F.3d 478, 490-91 (7th Cir. 2007)).  Rather, a court engaged in *de novo* review must reach "an independent decision on both the legal and factual issues that form the basis of the claim."  *Id.*

*Diaz* does not address the scope of discovery or evidence in ERISA.  That subject is addressed in *Patton*, which is cited in *Diaz.*  As set forth in LINA's opening brief, *Patton* holds the district courts have discretion to "limit the evidence to the record before the plan administrator, or . . . [to] permit the introduction of additional evidence necessary to enable it to make an informed and independent judgment."  Courts should exercise this discretion primarily based on whether new evidence is "necessary to an informed and independent judgment on the parties' claims and defenses, which will obviously depend on the nature of the claims and whether the administrative record was relatively undeveloped with respect to those claims."  *Id.* at 491 (internal citations and quotations omitted).  The *Patton* court concluded that a district court should not "automatically admit new evidence. … The record calls for additional evidence only where the benefits of increased accuracy exceed the costs, a balance familiar to the district court."  *Id.* at 492 (emphasis added).

The facts of *Patton* illustrate the type of circumstances that justify discovery in a de novo ERISA case. The claimant, Patton, sued under ERISA to recover disability benefits.   His

orthopedic surgeon, Dr. Ambrose, sent the claim administrator contradictory letters regarding whether Patton's knee injury prevented him from working as a truck driver. In a March 9, 2004 form, Dr. Ambrose stated that Patton had been released to work without restrictions on May 7, 2003. 480 F.3d at 482. In a May 12, 2004 letter, Dr. Ambrose stated that severe arthritis permanently prevented Patton from using the clutch on tractor trailer rigs, rendering him disabled. *Id*. The administrative record did not reveal which of these diametrically opposed assessments reflected Dr. Ambrose's actual opinion.

The circuit court held that Patton should be allowed to depose Dr. Ambrose because the deposition would result in an "unusually high payoff in increased accuracy" since it resolved a case-dispositive fact issue. Without a clarification from Dr. Ambrose, the district court had no intelligent way of determining which of Dr. Ambrose's contradictory statements represented his medical opinion. *Id*. at 492-93. In support of this result, the court analogized the case to *Luby v. Teamsters Health, Welfare & Pension Trust*, 944 F.2d 1176, 1185 (3d Cir. 1991), which involved a dispute over the authenticity of a plan participant's signature on two beneficiary designations. The only evidence of what the participant's signature looked like was the differently styled signatures appearing on the two forms. The district court properly admitted other samples of the participant's signature. Otherwise "there was simply no evidentiary record for the district court to review". *Id*.

Here, unlike in *Patton* and *Luby*, the administrative record does not leave unresolved a case-dispositive issue, such as the opinion of Bake's treating physicians concerning the extent of her abilities or the authenticity of Bake's signature. Bake does not seek the depositions to clarify an ambiguity in the administrative record that would prevent the Court from intelligently evaluating her claim in the absence of discovery. On the contrary, the 772 page record will

10

enable the Court to reach an "informed and independent" judgment regarding Bake's eligibility for benefits without Dr. Simon's deposition. The record is not "relatively undeveloped" with respect to question of Bake's training, education, job requirements, medical conditions or functional ability. There are hundreds of pages of medical records that analyze those subjects at length. By reviewing the underlying medical evidence, and comparing it with the analysis of Dr. Simon, the Court can reach an informed judgment about whether to credit Dr. Simon's opinion and whether Bake qualifies for disability benefits under the Plan.

In two recent cases, judges in this district recognized that limits on evidence and discovery continue to apply in ERISA cases subject to *de novo* review. In *Marantz v. Permanente Medical Group Long Term Disability Plan,* 2008 WL 516712 (N.D. Ill. 2008), Judge Moran granted a motion to strike extra-record evidence submitted by the plaintiff in support of her motion for summary judgment

In sum, *Diaz* does not give ERISA plaintiffs in cases subject to de novo review a right to conduct extra-record discovery. *Diaz* identifies the issues that a Court must resolve when it decides an ERISA claim under the *de novo* standard. *Patton* identifies the factors that guide a district court's exercise of its discretion to permit or deny extra-record discovery. Under the *Patton* factors, Bake should not be allowed to depose Dr. Simon because, as shown above, his deposition is not necessary for this Court to reach an informed and independent judgment about Bake's eligibility for benefits. Bake's subpoena to Dr. Simon accordingly should be quashed.

## III.    CONCLUSION

For all the above reasons, defendant LIFE INSURANCE COMPANY OF NORTH AMERICA respectfully requests that this Honorable Court enter a protective order quashing plaintiff Janice Bake's subpoena to Dr. Avrom Simon and limiting discovery to the administrative record.

6297668v1 884636

Respectfully submitted:

LIFE INSURANCE COMPANY OF NORTH
AMERICA

Daniel K. Ryan
Peter E. Pederson
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street, Suite 300
Chicago, Illinois  60601
(312) 704-3000
**Fax:**  (312) 704-3001
dryan@hinshawlaw.com
ppederson@hinshawlaw.com

By:  /s/ Daniel K. Ryan_____
One of its Attorneys


### CERTIFICATE OF SERVICE

     I, the undersigned attorney, certify that, on March 25, 2008, I e-filed this document using the Court's CM/ECF filing system, which will make a copy available to counsel of record identified below.

                      s/ Peter E. Pederson_____

### SERVICE LIST

Mark D. DeBofsky, Esq.
Daley, DeBofsky & Bryant
55 W. Monroe St., Suite 2440
Chicago, Illinois 60603

6297668v1 884636