**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JANICE BAKE** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **vs.** | ) | **Case No.: 07 C 6600** |
| | ) | |
| **LIFE INSURANCE COMPANY OF** | ) | **Judge Der-Yeghiayan** |
| **NORTH AMERICA** | ) | |
| | ) | **Magistrate Judge Cox** |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
LINA'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendant, LIFE INSURANCE COMPANY OF NORTH AMERICA ("LINA"), by its counsel, Daniel K. Ryan and Peter E. Pederson, respectfully submits this Memorandum of Law in Support of its Cross-Motion for Summary Judgment:

## I.    INTRODUCTION

Plaintiff, Janice Bake, has filed suit under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), challenging LINA's finding that she does not qualify for long-term disability ("LTD") benefits under a benefit plan ("Plan") established by Corus Bankshares, Inc. ("Corus"), her former employer.  LINA insures LTD benefits under the Plan pursuant to a group policy ("Policy") it issued to Corus.  The Policy provides that LTD benefits are payable for the first 24 months after a 90 day waiting period if the employee, because of injury or sickness, cannot perform the material duties of her original occupation.  Bake bears the burden of proof in showing that she satisfies this standard.  The Court should enter summary judgment against Bake because she does not have evidence sufficient to raise a factual issue as to whether she is incapable of performing her original occupation.

Bake's orthopedic surgeon, Christopher Bergin, MD, conceded that the condition that led

Bake to quit her job and apply for LTD benefits, cervical radiculopathy, did not in fact prevent her from working. He contended that a different ailment, thoracic spondylosis, caused the disability, but he did not explain this conclusion or reconcile it with MRIs showing that Bake's thoracic spondylosis was moderate. In contrast to Dr. Bergin, Bake's rheumatologist, Erin Arnold, MD, and neurosurgeon, George Bovis, MD, did not place restrictions on Bake's ability to work. Further, Bake's occupation was sedentary, which is the least physically demanding form of work. Avrom Simon, MD, an independent physician LINA consulted with, opined that, if Bake was capable of less than sedentary activity, she would experience muscular deconditioning and atrophy due to immobility. Bake's physicians documented that she had no atrophy and that her motor strength was normal. The evidence as a whole would not allow a trier of fact to reasonably find that Bake is unable to perform her sedentary occupation. Summary judgment should therefore be entered against Bake and in favor of LINA.

In the alternative, if the Court finds that Bake has presented evidence sufficient to create an issue of fact as to whether she is disabled within the meaning of the Policy, the Court should deny the motions for summary judgment and set the case for a bench trial. Dr. Bergin, Bake's orthopedist, and Dr. Simon, the independent doctor LINA consulted, gave conflicting opinions about whether Bake could perform her occupation. Dr. Simon provided a detailed explanation based on Bake's condition and treatment course for his finding that Bake can perform sedentary occupations. If the Court finds that Dr. Bergin's opinion is probative, the conflicting medical opinions must be resolved in a bench trial.

## II.    MATERIAL FACTS

### A.    Bake's Claim for LTD Benefits

In January 2006, Bake was employed by Corus as First Vice President, Operations Analysis. (LINA's Local Rule 56.1 Statement of Material Facts ("SMF") ¶ 8). As a benefit of

6320646v1 884636

her employment, she participated in the Plan and had coverage under the Policy.  (SMF ¶ 2).
The Policy defines "disability" and "disabled" as follows:

> An employee is Disabled if, because of Injury or Sickness,
>
> 1.  he or she is unable to perform all the material duties of his or her
>     regular occupation, or solely due to Injury or Sickness, he or she is
>     unable to earn more than 60% of his or her Indexed Covered
>     Earnings; and
>
> 2.  after Disability Benefits have been payable for 24 months, he or
>     she is unable to perform all the material duties of any occupation
>     for which he or she may reasonably become qualified based on
>     education, training or experience.  (SMF ¶ 5).

For several years, Bake had had cervical and thoracic spondylosis, which is a
degeneration of the joints between the vertebra of the spine.  As of January 2006, the cervical
spondylosis was resulting in cervical radiculopathy, a condition in which a pinched nerve in the
neck caused pain to radiate to Bake's upper extremities.  On January 30, 2006, Dr. Bergin, the
orthopedist, and Dr. Bovis, the neurosurgeon, performed a cervical diskectomy, decompression,
and anterior fusion at C5-6 and C6-7 to alleviate the radiculopathy.  (SMF ¶ 9).

At a post-surgical follow-up on February 21, 2006, Dr. Bovis stated that the surgery had
resulted in a complete relief of Bake's pain.  (SMF ¶ 10).  She had no complaints other than an
episode of chest pain and paresthesias in her hands, which were improving.  On the same day,
Dr. Bergin wrote that Bake's right arm felt markedly better while she still had numbness in the
left.  On motor strength tests, Bake's muscle groups in the upper and lower extremities were 5/5,
meaning that she showed no sign of disuse atrophy. (SMF ¶ 10).

Bake returned to part time work at Corus and drew her full salary.  However, on June 21,
2006, Bake stopped working.  In August 2006, she sent LINA a claim for LTD benefits under the
Plan.  (SMF ¶ 11). To determine whether Bake met the Plan's definition of disability, LINA

3

obtained her job description. The physical requirements of the occupation consisted of sitting and standing long periods of time, walking as necessary, creating and analyzing documents, and operating office and computer equipment. The Dictionary of Occupational Titles ("DOT") classified the occupation as sedentary. (SMF ¶ 8, 12).

LINA sent Dr. Bovis and Dr. Bergin several requests for their records. (SMF ¶ 12). In an August 22, 2006 chart note, Dr. Bergin reported that: (1) Bake's diffuse pain and thoracic pain had improved. She had mild pain radiating to her right leg and calf. (2) X-rays showed consolidating fusion at C5-C7 with no loosening of implants. There was no change in her thoracic spine. (3) Bake had a normal heel-to-toe gait and a normal neurological exam. She showed no signs of focal neurological deficits. (4) Although her pain had been managed, Dr. Bergin asserted that she might be permanently unable to perform her job duties. (SMF ¶ 13). In a September 12, 2006 claim form, Dr. Bergin listed Bake's diagnoses as cervical radiculopathy with myelopathy (damage to the spinal cord) and thoracic kyphosis (curvature of the middle segment of the spine). When the form asked what factors affected Bake's return to work, Dr. Bergin wrote, "unable to look forward more than 30 minutes at a time, unable to use computer and keyboard, needs to change positions frequently, ulnar neuropathy [dysfunction of the nerve that runs under the ulna bone]." (SMF ¶ 14).

On September 13, 2006, Bake completed an activities questionnaire. She reported that every day of the week she cooked for 45 minutes to an hour, cleaned for five to 15 minutes, read up to an hour, and watched television for two to four hours. She shopped twice a week for a couple of hours. She could drive for 20 miles or so. For recreation, she trained her dog for obedience and for a service dog certification. She went on walks of one half block to three blocks up to three times per day. She did her own personal hygiene. She participated in physical

4

therapy three to four times per week. (SMF ¶ 15-16).

LINA requested the records of Bake's rheumatologist, Erin Arnold, MD.  In an October 16, 2006 medical evaluation, Dr. Arnold did not list any restrictions or limitations on Bake's ability to work.  Dr. Arnold wrote "N/A" [not applicable] next to the questions: "What are the specific restrictions that you placed on your patient?" "What are the additional factors impacting return to work?" In a September 27, 2006 report, Dr. Arnold stated that Bake was working aggressively with physical therapy, had been doing well, and appeared well.  (SMF ¶ 19).

On October 16, 2006, LINA's nurse case manager, Donna Simmons, RN, analyzed the medical evidence and wrote a report on Bake's condition.  Nurse Simmons noted that, as of August 2006, Bake's thoracic pain was improved, the radiculopathy to the right leg was mild, the SLR was negative, and there was no EMG/NCV (electromyography and nerve conduction velocity) testing that indicated upper extremity deficits that precluded Bake from working. Further, Bake's lumbar kyphosis as of April 2006 was no worse than it was in November 2005. Nurse Simmons concluded that the evidence did not show restrictions or limitations that precluded Bake from performing her occupation.  (SMF ¶ 20-21).  In a letter dated November 8, 2006, LINA's claim manager, Michelle Miller, summarized Bake's medical history.  Miller denied Bake's claim for LTD benefits on the ground that the evidence did not show restrictions or limitations that prevented Bake from performing her sedentary occupation at Corus.  (SMF ¶ 23).

## B.    Bake's First Appeal

By letter dated April 5, 2007, Bake's counsel submitted a formal appeal of the denial of her claim along with additional medical records.  Physical therapy records showed that Bake had good tolerance of therapy and her condition was improving.  She reported doing increased work around the house.  (SMF ¶ 27, 39, 46(l)).  In an October 30, 2006 note, Dr. Arnold stated that

6320646v1 884636

Bake had good range of motion in the cervical spine, that she got up and down from a seated position without difficulty, and that she ambulated without difficulty. (SMF ¶ 33-35). In a report dated January 17, 2007, Dr. Arnold stated that Bake had good grip strength in both hands. At the quadriceps, Bake's muscle strength was 5/5. In a February 19, 2007 note, Dr. Arnold assessed that Bake had excellent bilateral grip strength and good strength levels at her biceps and triceps. Dr. Arnold referred Bake to Dr. Craig Williams, who reported that Bake had a normal range of motion in the wrists and digits bilaterally. He documented no atrophy or reduction in strength. (SMF ¶ 34-35).

On January 12, 2007, Dr. Bergin ordered MRIs of Bake's cervical and thoracic spine. (SMF ¶ 30-32). The MRI of the cervical spine showed normal alignment and intact vertebral heights with normal marrow signal intensity. There was no abnormal enhancement. The degenerative changes in the cervical spine were mild. There was no evidence of focal disc herniation, spinal stenosis or neural foraminal narrowing. The MRI of the thoracic spine showed little change since the April 2006 MRI. The thoracic spine had normal alignment and intact vertebral heights with normal marrow signal intensity with the exception of endplate changes. There was no evidence of spinal stenosis or abnormal signal enhancement. Her thoracic spondylosis was moderate. (*Id.*).

Although Dr. Bergin agreed that the thoracic spine was unchanged since the MRI in April 2006 and the MRI showed the spondylosis as moderate, he characterized the spine condition as disabling. (SMF ¶ 31-32). In a May 10, 2007 letter, Dr. Bergin, referring to Bake's arm pain, stated that the ulnar pain was secondary to her cervical spine. Surprisingly, he stated that Bake's cervical spine did **not** preclude her from working. He contended that pain in the thoracic spine, and to a lesser extent in the lumbar spine, limited her from performing her occupation, even

6320646v1 884636

though the thoracic spondylosis was moderate. (40).

To evaluate Bake's appeal, LINA referred the file to Sandra Schimizzi, an occupational therapist, and its associate medical director, John Mendez, MD. In an April 23, 2007 report, Schimizzi analyzed Bake's occupation and concluded it was properly classified as sedentary based on the Dictionary of Occupational Titles. (SMF ¶ 36). In a May 1, 2007 report, Dr. Mendez noted that Dr. Arnold reported that Bake had degenerative arthritis of the cervical and lumbar spine and pain along the anterior shin and iliotibial band. Dr. Arnold had documented no physical limitations. Dr. Bergin's notes documented degenerative changes in the thoracic spine but also reflected that Bake had a normal gait, normal neurological exam, and no neurological deficits. Dr. Mendez concluded that the records did not document "significant measured physical limitations, such as spinal range of motion by inclinometry and/or upper extremity strength deficits by manual muscle testing." (SMF ¶ 37-38).

In a May 15, 2007 addendum to the original report, Dr. Mendez analyzed records Bake's counsel had submitted after his original report. He concluded they did not document significant physical limitations relative to the cervical, thoracic or lumbosacral spine that would preclude Bake from performing sedentary work. (SMF ¶ 41). On May 25, 2007, Medha Bharadwaj, LINA's Appeal Claim Manager, reviewed all of Bake's records and concluded that they did not establish a condition that precluded Bake from performing her sedentary occupation. (SMF ¶ 42).

### C.    Bake's Second Administrative Appeal

On August 27, 2007, Bake's counsel submitted a second appeal. He included a June 21, 2007 letter in which the Social Security Administration ("SSA") overturned its initial finding, on December 29, 2006, that Bake was not disabled and not entitled to Social Security Disability Insurance ("SSDI") benefits. (SMF ¶ 43-44). Counsel also submitted a report by Paul

6320646v1 884636

McFarlane, MD, who examined Bake on behalf of the SSA.  Dr. McFarlane reported, among other things, that: (1) Bake was alert, oriented, cooperative and appropriately dressed.  (2) She showed no evidence of muscle wasting or atrophy.  Although she self-limited on strength tests and did not put forward maximal effort, she demonstrated motor strength of 4/5 in the upper and lower extremities. (3) She moved from sitting to walking and ambulated with some hesitation and reports of thoracic spine pain.  (4) Her neurological exam, gait, and range of motion in all joints were normal.  (*Id.*).

To evaluate the appeal, LINA asked Avrom Simon, MD, to review Bake's medical records and analyze whether her conditions resulted in limitations that would prevent her from performing her sedentary occupation.  (SMF ¶ 45).  Dr. Simon prepared a detailed history of Bake's medical history and treatments, noting the following, among other things:

- In August 2003, Bake presented with neck and arm pain.  EMG/NCV testing showed carpal tunnel syndrome.  An MRI showed spondylosis of the cervical spine.

- In January 2005, an MRI and medical report documented thoracic spondylosis.

- In January 2006, she underwent surgery for fusion of discs in the cervical spine.  Her healing post-surgery was good.

- After Bake presented with complaints of thoracic pain on April 25, 2006, an MRI showed moderate thoracic spondylosis and potential discitis (infection of the spine). Biopsies ruled out discitis.

- On July 27, 2006, Dr. Bovis documented that Bake's exam was normal.

- On August 22, 2006, Dr. Bergin noted that Bake's pain was managed, but he nonetheless opined that she was disabled.

- Physical therapy notes on August 25, 2006 documented that Bake was able to do more around the house than she could at the onset of therapy.

- In December 2006, Dr. McFarlane assessed that Bake had no evidence of atrophy and that she made a sub-maximal effort in motor muscle testing.

- On December 18, 2006, Dr. Arnold reported that Bake's neck pain had improved, she had no pain with forward flexion or extension of the lumbar spine.

6320646v1 884636

- On January 17, 2007, Dr. Arnold found that Bake had excellent grip strength bilaterally and "good strength at her biceps and triceps."

- MRIs in January 2007 showed spondylosis, with no change since May 2006.

- On February 27, 2007, Bake told her physical therapists that she was performing increased activities of daily living, was using her arms overhead to get dishes out of the cabinet, and had returned to cooking.

- In a July 24, 2007 report, Howard S. Konowitz, MD, documented a normal manual muscle testing and a normal gait. (SMF ¶ 46).

Dr. Simon attempted to discuss Bake's conditions with Dr. Arnold and Dr. Bergin, but neither returned his calls. (SMF ¶ 47). Dr. Simon concluded that the objective medical data did not show restrictions or limitations that preclude Bake from performing her sedentary occupation. In explaining this conclusion, Dr. Simon noted that: (1) Bake had had pain and spine problems since 2002. She had performed her sedentary occupation at Corus notwithstanding the conditions. The medical records did not reveal any change in her condition that precluded her from working as of June 2006. (2) The medical reports made after her last day of work showed no "evidence of deconditioning or atrophy, as would be expected" in a patient engaging in less than sedentary activities. Rather than finding atrophy and deconditioning, her doctors documented that she had no atrophy and that she had normal levels of strength. The absence of deconditioning and atrophy demonstrated that Bake retained the capacity to perform sedentary work. (3) Bake had a normal neurological exam and normal gait. (4) Bake's ability to perform overhead tasks, cook, drive, go to doctor's appointments, and engage in physical therapy demonstrated that she was capable of performing sedentary work. (SMF ¶ 48).

Dr. Simon concluded that, notwithstanding her musculo-skeletal conditions, Bake could perform her sedentary occupation, provided she was given an ergonomically correct work station and could take a 5 minute stretch break every hour. On October 24, 2007, LINA's appeal claim

analyst, Noemi Martinez-Landis, denied the appeal based on Dr. Simon's report.  (SMF ¶ 49-50).
This lawsuit followed.

### III.     ARGUMENT

**A.     Principles Applicable to Summary Judgment in ERISA Cases**

Summary judgment is proper when "the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party is entitled to judgment as a matter
of law."  Fed.R.Civ.P. 56(c).  When parties file cross-motions for summary judgment, the Court
"looks to the burden of proof that each party would bear on an issue at trial, and then requires
that party to go beyond the pleadings and affirmatively establish a genuine issue of material
fact."  *Skibbe v. Metropolitan Life Ins. Co.,* 2007 WL 2874035 (N.D. Ill. 2007).  Summary
judgment must be entered in the defendant's favor if the plaintiff lacks evidence to support any
essential element of her claim.  *Navarro v. Fuji Heavy Industries, Ltd.,* 117 F.3d 1027, 1030 (7th
Cir. 1997).

**B.     Bake cannot create an issue of fact as to whether she meets the Policy's
definition of disability given the evidence that she can perform sedentary
occupations.**

In its opinion denying LINA's motion for a protective order, the Court ruled that the
Group Insurance Plan's grant of discretionary authority to LINA does not trigger deferential
review because the Group Insurance Plan is not incorporated into the Policy.  The Court thus
held that the *de novo* standard of review applies to Bake's claim for benefits under ERISA's civil
enforcement provision, § 1132(a)(1)(B).  (Docket # 21).  In an ERISA case subject to *de novo*
review, the plaintiff bears the burden of showing that she satisfies all the terms enumerated in the
Plan for the payment of benefits.  *Tolle v. Carroll Touch,* 23 F.3d 174, 179 (7th Cir.1994).  For
several reasons, a finder of fact could not reasonably conclude from Bake's evidence that she is

6320646v1 884636

unable to perform her sedentary occupation at Corus and that she therefore meets the Policy's definition of disability. Her claim therefore fails as a matter of law.

Bake's level of activities and physical therapy demonstrate that she has the capacity to work. As of February 2007, Bake was performing increased activities of daily living, was using her hands overhead to put dishes into a cabinet, and was cooking again. In the activities questionnaire, Bake reported that, every day of the week, she cooked, cleaned, read, and watched television. She shopped regularly and could drive for 20 miles. She did obedience training with her dog. Bake's physical therapists reported that she had good tolerance of the therapy and her condition was improving throughout 2006. (SMF ¶ 46, 48, 19, 38).

This conclusion that Bake can perform her sedentary occupation finds support in the medical assessments of the rheumatologist, Dr. Arnold, and the neurosurgeon, Dr. Bovis. When Dr. Arnold completed a medical evaluation at LINA's request, Dr. Arnold did not list any restrictions on Bake's ability to perform her occupation. Dr. Arnold wrote "N/A" next to the questions: "What are the specific restrictions that you placed on your patient?" "What are the additional factors impacting return to work?" Dr. Arnold consistently assessed Bake as having normal strength levels and a normal neurological exam. On October 16, 2006, Dr. Arnold noted that Bake ambulated and got up and down without difficulty. In a February 2007 note, Dr. Arnold rated as normal her strength in the upper extremities and quadriceps. (SMF ¶ 19, 33-35).

Dr. Bovis's observations are to similar effect. In February 2006, Dr. Bovis stated that the surgery had resulted in complete relief of Bake's pain. She had no complaints other than an episode of chest pain and paresthesias in her hands, which were improving. In late July 2006, Dr. Bovis stated that Bake had no weakness or other complaints. She had a normal motor examination and was entirely neurologically intact. In a September 7, 2006 report, Dr. Bovis

11

stated that Bake's only complaint was ulnar nerve distribution and that this was unchanged from before the surgery. Dr. Bovis was pleased with her medical course as Bake had "shown complete healing after her anterior cervical discectomy and fusion." Dr. Bovis never noted restrictions on Bake's ability to perform her occupation. (SMF ¶ 24-26).

Dr. Simon, the independent physician, identified a wealth of evidence that indicated that Bake's medical condition did not prevent her from performing her sedentary occupation. First, Bake had suffered from spine conditions since 2002. She had performed her sedentary occupation at Corus notwithstanding the conditions. The medical records did not reveal how her condition changed to preclude her from working as of June 2006. Second, the medical reports made after her last day of work did not document a decompensation in her status, as one would expect to find in a patient engaging in less than sedentary activities. Rather than finding atrophy and deconditioning, her doctors documented that she had no atrophy and she had normal levels of strength. Third, Bake's ability to perform overhead tasks, drive, go to doctor's appointments, and engage in physical therapy demonstrated that she was capable of performing sedentary work. (SMF ¶¶ 46-48).

The Seventh Circuit has held that, by reviewing a patient's medical records, doctors "are fully able to evaluate medical information, balance the objective data against the subjective opinions of the treating physicians, and render an expert opinion without direct consultation." That a medical expert has not examined the patient does not undermine the doctor's conclusions or lessen the weight they should be given. *Davis v. Unum Life Ins. Co. of America*, 444 F.3d 569, 577 (7th Cir. 2006) (district court erred by faulting disability insurer for relying on medical experts who conducted file review rather than direct examination).

Bake cannot create a fact issue on the basis of Dr. Bergin's report. Bake initially quit

6320646v1 884636

working and filed a claim for benefits under the Plan on the basis that cervical radiculopathy prevented her from performing her occupation. Her orthopedist, Dr. Bergin, later conceded that cervical radiculopathy did not in fact prevent her from working. Instead, he claimed that her disability resulted from thoracic spondylosis. (SMF ¶ 32, 40). However, her thoracic spondylosis, according to MRIs in April 2006 and January 2007, was moderate. (SMF ¶ 31). She had this condition since at least January 2005. (SMF ¶ 9). Dr. Bergin did not explain how or why longstanding and moderate spondylosis of the thoracic spine precluded Bake from working beginning in June 2006. Medical opinions that fail to explain the basis for their conclusions cannot by themselves create a genuine issue of material fact. *Bragdon v. Abbott,* 524 U.S. 624, 653 (1998); *Vollmert v. Wis. Dep't of Transp.,* 197 F.3d 293, 298 (7th Cir. 1999); *Weigel v. Target Stores,* 122 F.3d 461, 468-69 (7th Cir.1997). Dr. Bergin's opinion therefore is insufficient to allow a reasonable the trier of fact to find that Bake cannot perform her original occupation.

Last, as noted by Dr. Simon, that Bake showed no sign of disuse atrophy or muscular deconditioning discredits the claim that her spinal condition precludes her from performing sedentary work. The U.S. Department of Labor defines sedentary work as exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. *Diaz,* 499 F.3d at 645. If Bake were actually restricted to less than a sedentary level of activity, she would experience muscular deconditioning and atrophy due to immobility. (SMF ¶ 48). However, her doctors never noted deconditioning or atrophy. The absence of atrophy and muscular deconditioning refutes the contention that she cannot perform sedentary work.

13

A trier of fact could not reasonably conclude from this record that Bake is unable to perform sedentary work due to her spine condition. Dr. Bergin failed to explain his opinion that moderate thoracic spondylosis, which Bake had had long before she stopped working, would limited her to less than sedentary activity. Drs. Arnold and Bovis placed no restrictions on Bake's ability to work. Bake did not have atrophy or muscular deconditioning. Summary judgment accordingly should be entered against Bake.

**B.    In the alternative, if the Court finds that Dr. Bergin's report creates an issue of fact as to whether a spinal condition precludes Bake from doing sedentary work, the Court should deny both cross-motions and hold a bench trial.**

If, *arguendo,* Dr. Bergin's report creates an issue of fact concerning whether Bake meets the disability definition (which LINA denies), the case should be set for trial to resolve the conflict between Dr. Bergin's report and that of Dr. Simon. Dr. Simon gave a cogent explanation for his disagreement with Dr. Bergin's conclusion that Bake was incapable of sedentary work. As stated, Dr. Simon based his opinion on the following facts: First, Bake had suffered from spine conditions since 2002, but medical records did not reveal how her condition changed to preclude her from working as of June 2006. Second, the medical reports made after her last day of work did not document a decompensation in her status, as one would expect to find in a patient engaging in less than sedentary activities. Rather than finding atrophy and deconditioning, her doctors documented that she had no atrophy and she had normal levels of strength. Third, Bake's ability to perform overhead tasks, drive, go to doctor's appointments, and engage in physical therapy demonstrated that she was capable of performing sedentary work. (SMF ¶ 46-48).

Thus, even if Dr. Bergin's report is found to be probative on the issue of whether Bake is unable to perform sedentary work, a conflict would exist between Dr. Bergin's report and that of

6320646v1 884636

Dr. Simon.  This conflict could only be resolved at trial, not on motions under Rule 56.  *See Diaz v. Prudential Ins. Co. of America,* 499 F.3d 640, 641, 643 (7th Cir. 2007) (conflict in medical reports in ERISA case subject to de novo review had to be resolved at trial); *Patton v. MFS/Sun Life Financial Distributors, Inc.*, 480 F.3d 478, 484 n. 3 (7th Cir. 2007) (ambiguity in doctor's medical reports could only be resolved at trial, not on summary judgment); *Marantz v. Permanente Medical Group, Inc. Long Term Disability Plan,* 2008 WL 516712, *4 (N.D. Ill. 2008) (conflict in medical opinions had to be resolved at trial); *Coles v. LaSalle Partners Inc. Disability Plan,* 287 F.Supp.2d 896, 904 (N.D. Ill. 2003) ("battle of experts" required denial of motions for summary judgment).  Accordingly, if the Court finds that Dr. Bovis's report is probative, notwithstanding that he failed to explain his conclusion or reconcile it to the fact that Bake's thoracic spondylosis was moderate, the Court should set the case for a bench trial.

## IV.    CONCLUSION

WHEREFORE, LIFE INSURANCE COMPANY OF NORTH AMERICA respectfully requests that the Court enter summary judgment in its favor and against JANICE BAKE.

Respectfully submitted:

LIFE INSURANCE COMPANY OF NORTH AMERICA

Daniel K. Ryan
Peter E. Pederson
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street - S. 300
Chicago, Illinois 60601
(312) 704-3000
**Fax:** (312) 704-3001

By: ___/s/ Peter E. Pederson_____
        One of its Attorneys

15

6320646v1 884636

## CERTIFICATE OF SERVICE

I, the undersigned attorney, certify that on May 23, 2008, I e-filed this document using the Court's CM/ECF filing system, which will make a copy available to counsel of record identified below.

s/ Peter E. Pederson

## SERVICE LIST

Mark D. DeBofsky, Esq.
Daley, DeBofsky & Bryant
55 W. Monroe St., Suite 2440
Chicago, Illinois 60603

6320646v1 884636