IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **JANICE BAKE** | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| vs. | ) Case No.: 07 C 6600 |
| | ) |
| **LIFE INSURANCE COMPANY OF NORTH AMERICA** | ) Judge Der-Yeghiayan |
| | ) |
| | ) Magistrate Judge Cox |
| **Defendant.** | ) |
| | ) |

**LINA'S LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS**

Defendant, LIFE INSURANCE COMPANY OF NORTH AMERICA ("LINA"), by its counsel, Daniel K. Ryan and Peter E. Pederson, submits this Local Rule 56.1 Statement of Material Facts in support of its Cross-Motion for Summary Judgment:

**I.    Parties, Jurisdiction and Venue**

1.    Plaintiff, Janice Bake ("Bake"), is a former employee of Corus Bankshares, Inc. ("Corus").  (Administrative Record at 740).[1]

2.    Bake participated in an employee welfare benefit plan ("the Plan") that Corus established to provide employees with long-term disability ("LTD") benefits. (736).

3.    LINA insures LTD benefits under the Plan pursuant to Group Policy No. LK-960120 ("Policy").  (740-41).

4.    The Court has jurisdiction of this case under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(e), as well as 28 U.S.C. § 1331, because the Plan constitutes an "employee welfare benefit plan" within the meaning of 29 U.S.C. § 1002(1)(A).

---

[1] The administrative record includes all documents received, generated or considered by LINA in connection with Bake's claim.  The record is cited by page number only, with the prefix and leading zeros omitted.  A copy of the record will be provided to the Court.

**II.    Relevant Provisions of the Policy**

5.   The Policy defines "disability" and "disabled" as follows:

An employee is Disabled if, because of Injury or Sickness,

1.   he or she is unable to perform all the material duties of his or her regular occupation, or solely due to Injury or Sickness, he or she is unable to earn more than 60% of his or her Indexed Covered Earnings; and

2.   after Disability Benefits have been payable for 24 months, he or she is unable to perform all the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience. (373).

6.   Before LTD benefits become payable, a participant must continuously meet the Policy's definition of "disability" for 90 days, a period referred to as the Benefit Waiting Period. (373).

7.   The monthly LTD benefit is the lesser of 60% of the employee's monthly Covered Earnings or the maximum benefit ($10,000), less Other Income Benefits paid or payable to her. (373).

**III.    Bake's Claim for LTD Benefits**

8.   As of January 2006, Bake was employed by Corus as First Vice President, Operations Analysis. (721-22, 741). The physical requirements of this occupation were limited to sitting and standing long periods of time, walking as necessary, creating and analyzing documents, and operating office and computer equipment. (*Id.*). The Dictionary of Occupational Titles ("DOT") classifies the occupation as sedentary. (719).

9.   For several years, Bake had had cervical and thoracic spondylosis, which is a degeneration of the joints between the vertebra of the spine. (350, 352). As of January 2006, the

6319904v1 884636

cervical spondylosis was resulting in cervical radiculopathy, a condition in which a pinched nerve in the neck caused pain to radiate to Bake's upper extremities. (154, 156, 501). On January 30, 2006, Dr. Bergin, the orthopedist, and Dr. Bovis, the neurosurgeon, performed a cervical diskectomy, decompression, and anterior fusion at C5-6 and C6-7 to alleviate the radiculopathy. (154-58, 501).

10. On February 21, 2006, Dr. Bergin noted that Bake's right arm felt markedly better while she still had numbness in the left. Her muscle groups in the upper and lower extremities were 5/5, meaning that she showed no sign of disuse atrophy. (701-704). The same day, Dr. Bovis stated that Bake had had complete relief of her pain and had no complaints other than an episode of chest pain and paresthesias in her hands, which were improving. (517).

11. Bake returned to part time work at Corus and drew her full salary. (729, 734). However, on June 21, 2006, Bake stopped working. (741).

12. In August 2006, Bake sent LINA a claim for LTD benefits under the Plan. (740). To determine whether Bake met the Plan's definition of disability, LINA sent Dr. Bovis and Dr. Bergin several requests for their records. (726, 728, 711, 715).

13. Dr. Bergin produced his records around September 20, 2006. (Date stamps, 699-710). In an August 22, 2006 chart note, Dr. Bergin reported that: (a) Bake's diffuse pain and thoracic pain had improved. She had mild pain radiating to her right leg and calf. (710). (b) X-rays showed consolidating fusion at C5-C7 with no loosening of implants. There was no change in her thoracic spine. (710). (c) Bake had a normal heel-to-toe gait and a normal neurological exam. She showed no signs of focal neurological deficits. (710). (d) While noting that Bake's pain was being managed, Dr. Bergin asserted that she might be permanently unable to perform her job duties. He did not specify the cause of the alleged disability. (710).

6319904v1 884636

14.     In a September 12, 2006 claim form, Dr. Bergin listed Bake's primary diagnoses as cervical radiculopathy with myelopathy (damage to the spinal cord) and thoracic kyphosis (curvature of the middle segment of the spine). (700).  When the form asked what specific factors were affecting the patient's return to work, Dr. Bergin wrote "unable to look forward more than one half hour at a time, unable to use computer and keyboard, needs to change positions frequently, ulnar neuropathy [dysfunction of the nerve that runs under the ulna bone]." (700).  He stated that Bake could not perform her job duties. (700).

15.     On September 13, 2006, Bake completed an activities questionnaire. (673).  She reported that she typically woke up between 5:00 and 6:00 a.m. and went to bed between 11:30 p.m. and 12:00 a.m.  Every day of the week, she cooked for 45 minutes to an hour, cleaned for five to 15 minutes, read for up to an hour, and watched television for two to four hours.  She shopped twice a week for a couple of hours and engaged in other activities two to four hours per day five days a week. (673).

16.     Bake reported that she could drive for "20 or so" miles.  She sometimes used a cane.  For recreation, she trained her dog for obedience and for a service dog certification. (673).  She went on walks of one half block to three blocks up to three times per day. (673).  She did her own personal hygiene. (*Id.*).  She participated in physical therapy three to four times per week. (674).

17.     On October 12, 2006, Sherry Moyer, RN, analyzed Bake's records.  Nurse Moyer concluded that, as of August 22, 2006, the records did not document functional deficits that precluded Bake's from returning to her sedentary occupation.  Nurse Moyer noted that Bake's right leg pain was mild, the thoracic pain had improved under Relafen (also referred to as

4

Nabumetone), and x-rays showed solid fusion of the cervical discs. (697 citing Dr. Bergin's note at 710).

18. Nurse Moyer recommended that the case manager obtain the assessment of Bake's rheumatologist, Erin Arnold, MD, before rendering a decision. (697).

19. On October 16, 2006, Dr. Arnold sent LINA a medical evaluation form. Dr. Arnold did not list any restrictions or limitations on Bake's ability to work. Dr. Arnold wrote "N/A" [not applicable] next to the questions: "What are the specific restrictions that you placed on your patient?" "What are the additional factors impacting return to work?" (685). The fax included a September 27, 2006 report in which Dr. Arnold noted that Bake had been working aggressively with physical therapy, had been doing well, and appeared well. (687).

20. On October 16, 2006, LINA's nurse case manager, Donna Simmons, RN, analyzed the medical evidence and wrote a report on Bake's condition. (681-82). Nurse Simmons noted that, as of August 2006, Bake's thoracic pain was improved, the radiculopathy to the right leg was mild, the SLR was negative, and there was no EMG/NCV (electromyography and nerve conduction velocity) testing that indicated upper extremity deficits secondary to radiculopathy. (681-82, citing Dr. Bergin's report at 710).

21. Further, Bake's lumbar kyphosis as of April 2006 was no worse than it was in November 2005. (682 citing Dr. Bergin's report at 705). Nurse Simmons concluded that the evidence did not show restrictions or limitations that precluded Bake from performing her occupation. (682).

22. On November 3, 2006, LINA received records from Arminio Surucci, MD. (524-541). Nurse Simmons noted that the records did not include evidence, such as electromyography

and nerve conduction velocity tests (EMG/NCV), showing impairments that would preclude sedentary work. (521-22, citing 524-541).

23. In a letter dated November 8, 2006, LINA's claim manager, Michelle Miller, summarized Bake's medical history in detail. Miller denied Bake's claim for LTD benefits on the ground that the evidence did not show restrictions or limitations that prevented Bake from performing her sedentary occupation at Corus, and she therefore did not meet the Policy's definition of disability. (518-19).

24. After deciding the appeal, LINA received the records of Dr. Bovis, who had performed the diskectomy with Dr. Bergin. (495-517). Dr. Bovis's July 27, 2006 report stated that Bake had occasional right medial arm numbness and tingling. She had no weakness or other complaints. She was "entirely neurologically intact" and had a normal motor examination. (496).

25. In a September 7, 2006 report, Dr. Bovis stated that Bake's only complaint was ulnar nerve distribution and that this was unchanged from before the surgery. (495).

26. An MRI of Bake's brain and cervical spine were normal. The MRI showed no evidence of compression of the spinal cord. Dr. Bovis was quite pleased with her medical course as she had "shown complete healing after her anterior cervical diskectomy and fusion." (495).

**IV. Bake's First Administrative Appeal**

27. By letter dated February 21, 2007, Bake's counsel notified LINA that he intended to appeal the denial of benefits. (481-82). With the letter, Bake's counsel submitted an October 24, 2006 report in which Igor Rechitsky, MD listed Bake's diagnosis as left carpal tunnel syndrome. (484-86). Dr. Rechitsky stated that nerve conduction studies documented interval worsening across the left wrist and very stable left ulnar neuropathy. However, Bake did not

6

have brachial plexopathy (loss of movement or sensation in the arms), atrophies (loss of muscle mass due to immobility), or fasciculations (muscle twitching). Her motor examination was normal. (484).

28. Nurse Simmons and the case manager noted that Dr. Rechitsky had not found brachial sensory deficit, atrophies or fasciculations or otherwise documented restrictions that precluded sedentary work. (647, 650 citing 484).

29. By letter dated April 5, 2007, Bake's counsel submitted new medical records and formally appealed the denial of her claim. (574-581). Counsel contended that Bake could not perform her occupation due to degenerative disc disease, lumbar and thoracic pain, carpal tunnel syndrome, and unidentified neurological problems. (574-581).

30. In a January 12, 2007 chart entry, Dr. Bergin ordered MRIs of Bake's cervical and thoracic spine. (611). The MRI of the cervical spine showed normal alignment and intact vertebral heights with normal marrow signal intensity. There was no abnormal enhancement. (631). The degenerative changes in the cervical spine were mild. There was no evidence of focal disc herniation, spinal stenosis or neural foraminal narrowing. (632).

31. The MRI of the thoracic spine showed normal alignment and intact vertebral heights with normal marrow signal intensity with the exception of endplate changes. Her thoracic spondylosis was moderate. There was no evidence of spinal stenosis or abnormal signal enhancement. (631-32). The MRI showed little change in the thoracic spine since the April 2006 MRI. (631, 345).

32. Dr. Bergin agreed that the thoracic spine was unchanged since the MRI in April 2006. (610, 345). He nonetheless characterized the spine condition as disabling. (610).

6319904v1 884636

33. In an October 30, 2006 note included with the appeal, Dr. Arnold stated that Bake had good range of motion in the cervical spine, that she got up and down from a seated position without difficulty, and that she ambulated without difficulty. (624).

34. In a report dated January 17, 2007, Dr. Arnold stated that Bake had good grip strength in both hands. At the quadriceps, Bake's muscle strength was 5/5. (609). In a February 19, 2007 note, Dr. Arnold assessed that Bake had excellent bilateral grip strength and good strength levels at her biceps and triceps. There was no significant lateral epicondyle pain. (612). Dr. Arnold referred Bake to Craig S. Williams, MD for a surgical evaluation relative to her complaints of arm pain. (608).

35. In his February 28, 2007 report, Dr. Williams, reported that Bake had a normal range of motion in the wrists and digits bilaterally. He documented no atrophy or reduction in strength caused by carpal tunnel syndrome. (606). He stated that the testing Dr. Rechitsky conducted in October 2006 indicated mild carpal tunnel syndrome. (606 citing 484-86).

36. To evaluate Bake's appeal, LINA first re-assessed the physical demands of Bake's occupation. On April 23, 2007, Sandra Schimizzi, MED, LPC, CRC, analyzed Bake's job and concluded it was properly classified as sedentary based on the Dictionary of Occupational Titles. (428-29).

37. LINA asked its associate medical director, John Mendez, MD, to analyze the medical records and report on whether Bake's condition prevented her from performing her prior occupation. (438). In a May 1, 2007 report, Dr. Mendez noted that Dr. Arnold reported that Bake had degenerative arthritis of the cervical and lumbar spine and pain along the anterior shin and iliotibial band. Dr. Arnold had not documented physical limitations. Dr. Bergin's notes

documented degenerative changes in the thoracic spine but Bake had a normal gait, normal neurological exam, and no neurological deficits. (438).

38. Dr. Mendez concluded that the records did not document "significant measured physical limitations, such as spinal range of motion by inclinometry and/or upper extremity strength deficits by manual muscle testing." (438).

39. After Dr. Mendez prepared the report, Bake's counsel submitted additional records. (440, 445). Bake's physical therapists reported that Bake had good tolerance of the therapy and her condition was improving. (445-478).

40. In a May 10, 2007 letter, Dr. Bergin stated that Bake's ulnar pain was secondary to her cervical spine, and that her cervical spine did not preclude her from working. He contended that pain in the thoracic spine, and to a lesser extent in the lumbar spine, limited her from performing her job. (443). Dr. Bergin stated that Bake had had severe thoracic spine pain for several years. (444). While Dr. Bergin contended that the thoracic condition was disabling, he stated it did not justify surgery. (444, 103).

41. On May 15, 2007, Dr. Mendez analyzed the records that had been received since his earlier analysis. In his report, Dr. Mendez stated that the records did not document significant physical limitations relative to the cervical, thoracic or lumbosacral spine. (437).

42. On May 25, 2007, Appeal Claim Manager Medha Bharadwaj denied the appeal based on Dr. Mendez's analysis. (434-36). Bharadwaj noted that the medical evidence did not document significant measured physical limitations that would preclude Bake from performing her prior occupation. (435).

**V.     Bake's Second Administrative Appeal**

9

43. On August 27, 2007, Bake's counsel submitted a second appeal. (105-110). He submitted a June 21, 2007 letter in which the Social Security Administration ("SSA") overturned its initial finding, on December 29, 2006, that Bake was not disabled or entitled to benefits. The SSA determined that Bake became disabled under SSA criteria on June 21, 2006. (114).

44. Counsel also submitted a report (356-59) by Paul McFarlane, MD, who examined Bake on behalf of the SSA and found that: (a) Bake was alert, oriented, cooperative and appropriately dressed. (359). (b) She showed no evidence of muscle wasting or atrophy. Although she self-limited on strength tests and did not put forward maximal effort, she demonstrated motor strength of 4/5 in the upper and lower extremities. (358). (c) She moved from sitting to walking and ambulated with some hesitation and reports of thoracic spine pain. (357). (d) Her neurological exam, gait, and range of motion in all joints were normal. (358).

45. To evaluate the appeal, LINA asked Avrom Simon, MD, MPH, CPE, to review Bake's medical records and analyze whether her conditions resulted in restrictions and limitations that would prevent her from performing her sedentary occupation. (100).

46. Dr. Simon prepared a detailed history of Bake's medical history and treatments, noting the following, among other things: (93-97).

    a. In August 2003, Bake presented with neck and arm pain. EMG/NCV testing showed carpal tunnel syndrome. (citing 341-44). An MRI showed spondylosis of the cervical spine. (93 citing 352.)

    b. In January 2005, an MRI of the thoracic and lumbar spine showed herniation of a disc in the lumbar vertebrae. (93 citing 349). The January 2005 report documented thoracic spondylosis. (350).

    c. In January 2006, she underwent surgery for fusion of discs in the cervical spine. Her healing post-surgery was good. (93 citing 628-30).

    d. After Bake presented with complaints of thoracic pain on April 25, 2006, an MRI showed moderate thoracic spondylosis and potential discitis (infection of the spine). (94 citing MRI report at 345). Biopsies ruled out discitis. (94 citing 278, 284-85).

    e.    On July 27, 2006, Dr. Bovis (the neurosurgeon) documented that Bake had a normal exam. (94 citing 496).

    f.    On August 22, 2006, Dr. Bergin noted that Bake's pain was managed, but he nonetheless opined that she was disabled. (94 citing 710).

    g.    Physical therapy notes on August 25, 2006 documented that Bake was able to do more around the house than she could at the onset of therapy. (94 citing 391).

    h.    In December 2006, Dr. McFarlane assessed that Bake had no evidence of atrophy and that she made a sub-maximal effort in motor muscle testing. (94 citing 357-59).

    i.    On December 18, 2006, Dr. Arnold found that Bake's neck pain had improved.  She had no pain with forward flexion or extension of the lumbar spine.  She had no pain with range of motion in the knees.  (94 citing 252).

    j.    On January 17, 2007, Dr. Arnold found that Bake had excellent grip strength bilaterally, "good strength at her biceps and triceps," and no lateral epicondylar tenderness. (94 citing 612).

    k.    MRIs in January 2007 showed spondylosis, with no change since the May 2006 MRIs. (94 citing 631-32).

    l.    On February 27, 2007, Bake told her physical therapists that she was performing increased activities of daily living ("ADL"), was using her arms overhead to get dishes out of the cabinet, and had returned to cooking. (95 citing 464).

    m.    In a July 24, 2007 report, Howard S. Konowitz, MD, documented a normal manual muscle testing and a normal gait. (95 citing 112).

47.    Dr. Simon attempted to discuss Bake's conditions with Dr. Arnold and Dr. Bergin, but neither returned his calls. (95).

48.    Dr. Simon concluded that the objective medical data did not show restrictions or limitations that preclude Bake from performing her sedentary occupation. (95). In explaining this conclusion, Dr. Simon noted the following:

    a.    Bake had had pain and spine problems since 2002. She had performed her sedentary occupation at Corus notwithstanding the conditions. The medical records did not reveal any change in her condition that precluded her from working as of June 2006.

11

    b.    The medical reports made after her last day of work showed no "evidence of deconditioning or atrophy, as would be expected" in a patient engaging in less than sedentary activities. Rather than finding atrophy and deconditioning, her doctors documented that she had no atrophy and that she had normal levels of strength. The absence of deconditioning and atrophy demonstrated that Bake retained the capacity to perform sedentary work.

    c.    Bake had a normal neurological exam and normal gait.

    d.    Bake's ability to perform overhead tasks, cook, drive, go to doctor's appointments, and engage in physical therapy demonstrated that she was capable of performing sedentary work. (95-96).

49. Dr. Simon concluded that the medical evidence did not establish restrictions or limitations that would preclude Bake from performing sedentary work, provided she was given an ergonomically correct work station and could take a 5 minute stretch break every hour. (96).

50. On October 24, 2007, LINA's appeal claim analyst, Noemi Martinez-Landis, denied the appeal based on Dr. Simon's report. (90-92).

Respectfully submitted:

LIFE INSURANCE COMPANY OF NORTH AMERICA

Daniel K. Ryan
Peter E. Pederson
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street - S. 300
Chicago, Illinois 60601
(312) 704-3000
**Fax:** (312) 704-3001

By: /s/ Peter E. Pederson
       One of its Attorneys

**CERTIFICATE OF SERVICE**

I, the undersigned attorney, certify that on May 23, 2008, I e-filed this document using the Court's CM/ECF filing system, which will make a copy available to counsel of record identified below.

s/ Peter E. Pederson

**SERVICE LIST**

Mark D. DeBofsky, Esq.
Daley, DeBofsky & Bryant

12

55 W. Monroe St., Suite 2440
Chicago, Illinois 60603

13