IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANICE BAKE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 07 C 6600 |
| ) | Judge Der-Yeghiayan |
| ) | Magistrate Judge Cox |
| LIFE INSURANCE COMPANY ) | |
| OF NORTH AMERICA, ) | |
| ) | |
| Defendant. ) | |

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

*Introduction*

Contrary to the stringent requirements of Fed. R. Civ. P. 56(c), the motion for summary judgment filed by Defendant, Life Insurance Company of North America (LINA), utterly fails to show "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The Seventh Circuit's ruling in *Diaz v. Prudential Ins. Co. of America,* 499 F.3d 640 (7th Cir. 2007), is all but completely dispositive of whether LINA can obtain summary judgment in this case. *Diaz* made it clear that the summary judgment paradigm under the ERISA *de novo* standard requires the court to independently evaluate all of the evidence; and that any conflicts will preclude entry of summary judgment.

Here, an abundance of evidence supports Janice Bake's claim that she cannot perform the duties of her occupation due to degenerative arthritis at every level of her spine, carpal tunnel syndrome, balance problems, and diabetes, and is thus entitled to benefits from LINA. Moreover, the Social Security Administration found on the same evidentiary record as the one before this Court that Bake is unable to engage in "any substantial gainful activity," an even

more stringent standard of disability than the one at issue here.  42 U.S.C. § 423(d)(1)(A) (definition of "disabled").  Although Defendant has presented a skewed view of the evidence, the greater weight of the evidence supports Bake's claim and thus undeniably creates a genuine issue of fact.  Therefore, Defendant's motion for summary judgment must be denied.[1]

*Facts*

Defendant's Rule 56.1 statement of facts omits crucial evidence vital to the Court's determination in this matter.  Bake therefore offers a brief review of additional facts in this case showing that, as in *Diaz,* Defendant's evidentiary recitation does not exist in a vacuum.

Bake, age 59, was employed by Corus Bank for over 30 years, and as of June 2006 held the position of First Vice President-Operations Analyst.  (674, 721).[2]  Bake's position required her to manage the operations department, develop and implement operating systems, hire and manage competent staff, keep abreast of relevant legislation and technological advances, and work with various government agencies.  (722-23).  Although the occupation is classified as "sedentary" by the U.S. Government's Dictionary of Occupational Titles (DOT), the non-physical requirements are substantial and require the ability to coordinate complicated activities and manage people and prepare and analyze reports.  The occupation also requires a bank vice president to sit and/or stand for long periods of time, work varied hours/days, and travel on the

---

[1] Plaintiff previously argued that Defendant's motion was doomed to fail (Document 26) and suggested that if Defendant agreed to a "trial on the papers" with a stipulation as to the admissibility of the contents of the record, that the case could be resolved in such a manner.  However, Defendant refused that offer in open court on June 5, 2008 and insisted on proceeding with the summary judgment motion.  Since the claim record's admissibility is not stipulated, there is a question as to whether Defendant has even presented admissible evidence in support of its motion, as required by Fed. R. Civ. P. 56(e)(1), since, for the purpose of this motion, Plaintiff objects to the hearsay evidence contained in the claim record.

[2] The referenced page numbers are to the claim record submitted by Defendant.  To the extent the Court overrules Plaintiff's hearsay objection to the claim record, Plaintiff relies on the cited facts in opposition to summary judgment.

local and national level.  (428-29, 718-22).

Pursuant to her employment at Corus, Bake was covered under a group long-term disability insurance policy issued by Defendant (Group Policy No. LK-960120) (740-41) which defines disability as follows:

An employee is Disabled if, because of Injury or Sickness,

1. he or she is unable to perform all the material duties of his or her regular occupation, or solely due to Injury or Sickness, he or she is unable to earn more than 60% of his or her Indexed Covered Earnings; and

2. after Disability Benefits have been payable for 24 months, he or she is unable to perform all the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, he or she is unable to earn more than 60% of his or her Indexed Covered Earnings.  (373).

Bake applied for LTD benefits under Defendant's policy after she was unsuccessful in her efforts to return to work after undergoing a spinal fusion in early 2006, and her condition eventually forced her to cease working altogether in June 2006.  (740).

In support of her claim for benefits, Bake submitted a report describing how she experienced numbness and partial loss of feeling in her hands, fingers, and arms that limited her functional ability.  (673).  She also noted she cannot sit for long because her legs and feet tingle.  (*Id*.)  She reported that pain and loss of balance caused her to drop things and prevent lifting and bending.  (*Id.*)  Bake also advised LINA that sitting causes muscle spasms to her shoulder and neck, and that she was seldom able to use a computer due to neck pain and stiffness.  (*Id*.) Bake's treating orthopedist, Dr. Christopher Bergin, supported Bake's claims and certified her disabling impairments on a form provided by LINA, noting not only pain in the cervical spine but also \worsening problems in the thoracic and lumbar regions as well.  (700-10).

Despite her physicians' reports, Defendant denied Bake's claim for LTD benefits in a letter dated November 8, 2006, relying on the reports of nurse file reviewers. (518-19, 681-82, 697). The nurses' reports referred only to the normal course of healing following spine surgery, but did not mention Bake's ongoing pain reports nor her worsening thoracic and lumbar pain and problems using her arms and hands. (*Id.*). Bake appealed Defendant's denial of benefits and submitted additional medical evidence to support her claim on February 21, 2007, April 5, 2007, and April 10, 2007. (422, 481-82, 574-81). She included reports from a neurologist, Dr. Igor Rechitsky, who diagnosed Bake with severe carpal tunnel syndrome (484-86) and recommended surgery (257).

Bake also provided LINA with additional evidence demonstrating worsening pain in all areas of her spine. This included updated MRI results, which Dr. Bergin interpreted as showing that "all the discs in her spine have some degree of degeneration." (610). Dr. Bergin also filled out a Residual Functional Capacity Questionnaire (RFC) on March 30, 2007 identifying Bake's chronic pain due to cervical myelopathy and thoracic/lumbar spondylosis and opining that such pain would constantly interfere with her attention and concentration in a typical workday, that she could not sit or stand for more than 20 minutes at a time without taking a break, and that she had significant limitations with reaching, handling, and fingering. (Bergin RFC at 1-2, 4). In a May 10, 2007 letter, Dr. Bergin clarified that while Bake's cervical spine alone would not necessarily preclude work, it was nonetheless a "contributing factor" to her inability to work along with thoracic degenerative disk disease, lumbar degenerative disk disease, and ulnar and median nerve distributions. (443-44). Dr. Bergin specifically noted Bake's thoracic condition would likely require future surgical intervention and precluded even sedentary work. (*Id.*)

4

Despite this additional evidence, on May 25, 2007, Defendant upheld its denial of Bake's claim, stating the medical evidence did not document significant measured physical limitations that would preclude Bake from performing her prior occupation. (434-36).

On August 27, 2007, Bake appealed Defendant's decision a second time. (105-110). Bake submitted a Social Security Administration award of disability benefits (114) along with the entire administrative claim file which included an independent evaluation performed for the SSA by Dr. Paul McFarlane, who noted Bake had multiple problems including cervical pain associated with numbness and tingling and decreased cervical range of motion, thoracic spine pain and diminished range of motion in the lumbar spine, and balance problems, among other things. (358-59). Bake also included a July 24, 2007 pain evaluation by Dr. Howard Konowitz corroborating the severity of her multiple pain sources. (111-113).

Nonetheless, Defendant again upheld its decision to deny Bake benefits in a letter dated October 24, 2007. (90-92). Defendant based its decision on a report it requested from Dr. Avrom Simon, a non-practicing physician in Chicago who reviewed Bake's file rather than examining her. (93-96). After receiving LINA's final decision, Bake filed suit.

*Argument*

I. **Standard of Review**

    A. **ERISA Standard of Review**

The Court has already determined that the *de novo* standard applies. *See,* Document No. 21, April 4, 2008. Defendant has thus conceded the *de novo* standard of adjudication applies to this case. (Def.'s MSJ at 10). Under the *de novo* standard, the court does not "review" the administrator's decision per se, but rather looks to the terms of the policy and conducts an independent evaluation of all the evidence to determine whether the claimant was entitled to

benefits under the policy. *Diaz v. Prudential Insur. Co. of America*, 499 F.3d 640, 643 (7th Cir. 2007). The court's evaluation is made "fully independent of the plan administrator's findings and reasoning." *Patton v. MFS/Sun Life*, 480 F.3d 478, 486 (7th Cir. 2007).

### B. Summary Judgment

In ERISA benefit cases, summary judgment is appropriate only if no reasonable factfinder could conclude the claimant was unable to perform the duties of her occupation. *See, e.g., Diaz*, 499 F.3d at 643; *Patton,* 480 F.3d at 486; *Marantz v. Permanente Med. Group*, 2008 U.S. Dist. LEXIS 13956, *14 (N.D. Ill. Feb. 21, 2008). Because the court's role under the *de novo* standard is to determine afresh a claimant's eligibility for benefits, an insurance company can prevail on summary judgment "only if [the claimant] failed to submit evidence" supporting eligibility. *Diaz*, 499 F.3d at 645. Here, there can be no doubt that Bake submitted a virtual mountain of evidence supporting eligibility for LTD benefits; therefore, summary judgment for Defendant must be denied.

### II. The Evidence Shows Bake Is Incapable of Performing Her Own Occupation and Therefore Meets the Policy Definition of Disability

#### A. Bake Suffers From Chronic and Intractable Pain that Severely Limits Her Functional Abilities

A reasonable factfinder could and would disagree with Defendant's contention that benefits were denied due to Bake's failure to submit adequate evidence supporting her claim for LTD benefits. (Def.'s MSJ Memo at 10-11). Rather, as the claim record and Defendant's brief show, Defendant repeatedly engaged in a "selective review" of the evidence by deliberately disregarding or ignoring Bake's pain, which is validated by objective diagnostic testing (e.g., MRI and EMG), and the unwavering opinion of her treating physician, Dr. Bergin. (*Id.*, 93-96, 437-38, 682, 697) The Seventh Circuit has long recognized the impropriety of engaging in this

6

kind of selective review. *Govindarajan v. FMC Corp.*, 932 F.2d 634, 637 (7th Cir. 1991). In fact, so long as objective medical evidence exists that could reasonably be expected to cause pain, the extent and severity of that pain cannot be disregarded, as LINA has done. *See, Hawkins v. First Union Corp. Long-Term Disability Plan,* 326 F.3d 914, 918-19 (7th Cir. 2003).

The Seventh Circuit went even further in *Diaz v. Prudential Insur. Co. of America*, 499 F.3d 640 (7th Cir. 2007) by ruling that in evaluating summary judgment, the district court was required to consider the entire evidentiary record, including reports of pain and the consistent opinion of a treating physician. In *Diaz*, the plaintiff stopped working at his sedentary occupation as a Computer Programmer due to degenerative disc disease. *Id.* at 641. Like Bake, Diaz underwent a spinal fusion; however, he continued to experience debilitating severe pain. *Id.* at 642. When Diaz sought disability benefits, the insurer denied the claim, asserting it was not adequately supported by objective measures. After the district court upheld Prudential's finding on summary judgment, the Seventh Circuit overturned that determination after finding the policy, just like as the policy here, contained no requirement of "objective" proof submission. *Id.* The court then considered whether the evidence presented was sufficient to defeat summary judgment, looking to three specific categories of evidence: the plaintiff's own testimony and behavior, including his long history of treatment, the opinions and assessments of doctors and physical therapists who had evaluated him, and the results of diagnostic testing. *Id.* at 642. The existence of such evidence, along with a Social Security disability award, was found to be more than enough to overturn the district court's grant of summary judgment. *Id.* at 647.

Similarly, Bake submitted evidence in all of the categories identified in the *Diaz* ruling. Bake recounted firsthand to Defendant her severe pain, numbness, tingling, and impaired balance. (673-75). Ongoing reports of persistence of the same or worsening symptoms (111,

7

238, 356-59, 488, 495-99, 700-10) establish that Bake has clearly undergone a "long history of pain treatment" that has included surgery, multiple pain medications, and steroid injections. (139, 263-67, 628-29). Further, Bake's treating physician, Dr. Bergin, submitted medical records reflecting his ongoing treatment of Bake, as well as his certification and functional assessment establishing Bake's disability. (103, 238, 443, 488, 610-11, 700-10, Bergin RFC). Dr. Rechitsky additionally diagnosed worsening carpal tunnel syndrome necessitating surgery. (257, 484). And if there was any further doubt, Dr. McFarlane, the independent examining physician retained as part of the Social Security disability claim, found signs and symptoms corroborating Bake's complaints and documenting markedly impaired reduced range of motion in the cervical, thoracic and lumbar areas of the spine. (358-59). Based on this evidence, the Social Security Administration found Plaintiff disabled from performing any occupation. (114).

However, Defendant simply ignored all of this evidence, as its reviewers' reports and summary judgment memo clearly indicate. (93-95, 437-38, 697, Def.'s MSJ memo at 11-12). Defendant's selective review instead relied upon Bake's initial improvement after cervical spine surgery or records not relevant to Bake's spine condition. (*Id.*) However, the focus on these irrelevant findings is nothing but a "red herring." *See Diaz*, 499 F.3d at 642 (evidence not probative when claimant not "seeking benefits on those bases"). Significantly, Defendant focuses on evidence of improvement in some areas, but disregards Dr. Bergin's finding of arthritic degeneration at every level of the spine, his unequivocal certification of disability, and the unrebutted evidence of worsening bilateral carpal tunnel syndrome. Further, the report from Defendant's reviewing physician, Dr. Simon, a non-practicing physician who never examined Bake, also reveals a selective review and an ultimate conclusion that is sheer nonsense. (94-96). Dr. Simon concluded Bake would be capable of performing sedentary work based on the fact

that she was "getting up in the morning, getting dressed and taking a shower." (96). Clearly, Dr. Simon's report hardly provides the "full and fair review" of Bake's claim mandated by 29 U.S.C. §1133.

It is quite clear that Bake offered a plethora of evidence supporting her claim for LTD benefits. Viewing the facts in a light favorable to Bake, as required by Rule 56, a factfinder could and most likely would find she was entitled to LTD benefits under Defendant's policy. Therefore, Defendant's motion must be denied.

B. **Relevant Vocational Factors Demonstrate Bake Cannot Perform Her Former Occupation**

In addition to its selective review of the medical evidence, Defendant further failed to consider how Bake's limitations would affect her ability to perform "all the material duties" of her occupation. (373). Clearly, an evaluation of whether Bake meets the policy definition of "disabled" requires consideration of whether she is capable of performing *all* of her required job duties. According to *McFarland v. General American Life Insur. Co.,* 149 F.3d 583 (7th Cir. 1998), LINA's evaluation should necessarily have considered whether Bake's limitations prevent her from performing the necessary requirements of a Vice President at Corus – not just the physical, but the cognitive duties as well. *Also see Patton,* 480 F. 3d at 489 (assessment of disability requires consideration of specific job demands); *McKoy v. International Paper Co.,* 488 F.3d 221 (4th Cir. 2007) (plan faulted for failing to assess the plaintiff's non-physical impairment together with his physical impairments). Nor did Defendant consider the need for Bake to use her hands frequently as part of her occupation,[3] which would be impossible due to

---

[3] Social Security Ruling 83-10 (C.E. 1983) makes it clear that "Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions." Social Security concepts are deemed "instructive" in ERISA cases. *Halpin v. W.W. Grainger, Inc.,* 962 F.2d 685, 695 n.11 (7th Cir. 1992)

severe carpal tunnel syndrome. Thus, even assuming *arguendo* that Bake possessed the basic sitting, standing, and lifting abilities necessary to perform sedentary[4] work, that would still not be enough.

Surely, though, LINA had to do more than offer Dr. Simon's opinion that sedentary work capability is demonstrated "merely by getting up in the morning, getting dressed and taking a shower," which certainly underscores his inadequate consideration of what Bake's job duties entailed. (96). Similarly, Defendant's assertion in its brief that Bake was able to cook and clean around the house, and go shopping once or twice a week (Def.'s MSJ Memo at 11), is undermined by its disregard of evidence that Ms. Bake cannot lift pots and pans and drops things regularly. (389, 673). Clearly, the management and travel duties of a bank vice-president require significantly more than simply the inability to dress in the morning, cook, and do the grocery shopping. (428-29, 718-722).

Moreover, the ability to engage in such "sporadic activities" does not translate into the ability to work at a job for eight consecutive hours, five days a week. *Diaz*, 499 F.3d at 648. Rather, courts in this district have held that a claimant who suffers from debilitating pain symptoms is an unreliable worker due to the inconsistency and unpredictability of those symptoms. *See, e.g., Nickola v. CNA Group Life Assur. Co.*, 16219, *32 (N.D. Ill. 2005). In fact, Dr. Bergin certified on a March 30, 2007 Residual Functional Capacity form that chronic pain would constantly interfere with Bake's concentration and attention at work. (Bergin RFC at 2). He noted she would be unable to tolerate even a "low stress" job, much less the demanding

---

[4] SSR 83-10 and the *Dictionary of Occupational Titles* published by the U.S. Department of Labor (Appendix C) define sedentary work as requiring the ability to lift ten pounds occasionally. Moreover, "Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time."

duties of a bank vice president. (*Id.*). Because of the pain in her lumbar, thoracic, and cervical spine, Dr. Bergin also restricted Bake to sitting and standing for no more than 20 minutes before needing to move, and that she could not tolerate sustained flexion of the neck (looking down). (Bergin RFC at 2-3).

The same conclusions are inherent in the Social Security award, which found Bake incapable of working at any job with reasonable continuity. Not only did *Diaz* determine that the award of Social Security disability had to be taken into consideration (499 F.3d at 644), but the Supreme Court recently highlighted the importance of a Social Security determination as a factor in weighing the propriety of an ERISA benefit administrator's denial of disability benefits. *See, MetLife v. Glenn,* No. 06-923, 2008 U.S.LEXIS 5030 (June 19, 2008). Hence, awarding summary judgment to Defendant would contravene the requirements of Rule 56.

### C.  Defendant's File Reviews Were Deficient and Unreliable, and Insufficient to Outweigh the Consistent Opinion of Bake's Treating Physician

Defendant has placed a great deal of emphasis on the report of its non-practicing, non-examining physician consultant, Dr. Simon, in this case. (Def.'s MSJ Memo 12-14). However, Dr. Simon's report does not stand in a vacuum, as *Diaz* points out. A genuine issue of fact is created when Dr. Simon's findings are compared to the opinions rendered by Dr. Bergin, along with the conclusion reached by Social Security. Moreover, Dr. Simon's opinion was so thoroughly undermined by his testimony in his April 29, 2008 deposition that both the reliability and contents of his report are highly questionable.

Defendant cites *Davis v. Unum Life Ins. Co. of America*, 444 F.3d 569, 577 (7th Cir. 2006) for the proposition that an insurer may rely on a reviewing doctor to render an expert opinion without examining the patient. (Def.'s MSJ Memo at 12). Defendant's reliance on *Davis* is entirely misplaced, though, in the context of *de novo* review. In *Davis*, the court

11

analyzed only whether the insurance company acted reasonably under the lenient "arbitrary and capricious" standard of review by relying on a reviewing physician. *Davis*, 444 F.3d at 576. Therefore, the court only considered whether the insurance company's decision had rational support based on the doctor's report. *Id.* Under the *de novo* standard, though, the court must consider not merely whether the reviewing doctor's opinion is a rational basis to deny benefits, but how much weight to give that opinion along with the opinions of the treating physicians and the other evidence of record. *Diaz, supra.* Furthermore, the Supreme Court's *Glenn* decision has invalidated the unusually lenient standard of upholding a claim determination even under the arbitrary and capricious paradigm, therefore rendering Defendant's reliance on *Davis* even further attenuated.

Given the bias and deficiencies of Dr. Simon's opinion apparent from his April 29, 2008 deposition, the weight accorded to his report will likely be substantially lessened. Simon, although allegedly an "independent" consultant, was employed for several years by Intracorp, a subsidiary corporation owned by Defendant and the company who referred him Bake's case. (98-99; Simon Depo. at 5). Dr. Simon conducts approximately eight such file reviews a month for Intracorp, and never examines patients. (Simon Depo. at 9, 24, 77). In fact, Dr. Simon has engaged in no actual patient care or direct examination of patients for several years. (*Id.* at 9). Rather, his work consists entirely of conducting file reviews for insurers and never for claimants. (*Id.* at 19-22). Essentially, Dr. Simon is for hire solely by insurance companies to support their claim determinations. *Id.*

As to his opinion in Bake's case, Dr. Simon conceded to several deficiencies that undermine his entire review. Although his report states he failed to find "objective" evidence of pain restrictions, Dr. Simon admitted that no conclusive test exists to objectively determine

exactly how much pain a person experiences. (*Id.* at 17). Dr. Simon further conceded the most accurate way to determine pain limitations would be to perform a physical examination, the benefits of which include taking an in-person medical history as well as eliciting specific pain responses and testing range of motion. (96; Simon Depo. at 45-47, 59, 87-88). Dr. Simon was also forced to acknowledge that the independent examination of Bake by a Social Security physician showed markedly decreased range of motion in the lumbar and cervical spine. (Simon Depo. At 55-56). However, not only did Dr. Simon reject ample and consistent evidence of Bake's pain restrictions, he further admitted he did not consider whether this would prevent her from performing her specific occupational duties as a bank vice president. (*Id.* at 69-70). Rather, he only considered whether she could perform work in the nebulous "sedentary" capacity, which he equated to the ability to dress and shower. (96). Finally, Dr. Simon admitted he gave no consideration at all to Bake's specific ability to perform her significant non-exertional job requirements requiring significant cognitive abilities. (*Id.* at 67-68). It is obvious that Simon's opinion does nothing to support Defendant's motion for summary judgment in this case; rather, it only raises further issues of fact as to the reliability of his opinion.

Further, Defendant's contention that Dr. Bergin's medical opinion creates no issue of fact in this case is utterly without merit. (Def.'s MSJ Memo at 13). Defendant argues that medical opinions that do not explain a basis for their conclusions cannot create an issue of fact, citing *Bragdon v. Abbott*, 524 U.S. 624, 653 (1998); *Vollmert v. Wis. Dep't of Transp.*, 197 F.3d 293, 298 (7th Cir. 1999); and *Weigel v. Target Stores*, 122 F.3d 461, 468-69 (7th Cir. 1997). However, such is not the case here. Dr. Bergin repeatedly gave more than a sufficient basis for his medical opinion that Bake cannot work, and Defendant's cases are easily distinguishable. In *Vollmert and Weigel*, the courts held that only extremely conclusory "naked conclusions" and

"theoretical speculations" that are entirely unsupported by anything in record would fail to raise an issue of fact. *Vollmert*, 197 F.3d at 298; *Weigel*, 122 F.3d at 469.

Moreover, the Seventh Circuit distinguished those cases in a set of facts remarkably similar to the case at bar in *Patton v. MFS/Sun Life Fin. Distribs.*, 480 F.3d 478, 487-88 (7th Cir. 2007). The court there noted that *any* medical evidence, clinical data, or office notes anywhere in the record is sufficient to support a doctor's opinion and raises a triable issue of fact. *Id.* The doctor's report in *Patton* set forth his "opinion as to Patton's condition, his prognosis and the resulting limitations he faces." *Id.* at 488. Similarly, Dr. Bergin has repeatedly documented a fully rationalized opinion that Bake faces specific disabling limitations based upon diagnoses of cervical radiculopathy, ulnar nerve problems, degenerative disc disease of the thoracic and lumbar spine, and thoracic kyphosis. (443-44, 700, Bergin RFC). Furthermore, Dr. Bergin's opinions are supported by multiple clinical evaluations over several years, chart notes, and objective MRI results. (103, 238, 488, 560, 610-11, 631, 700-10). Therefore, Defendant's attempts to disregard his opinions as conclusory must fail.

### *Conclusion*

WHEREFORE, Plaintiff prays that this Court deny Defendant's Motion for Summary Judgment and award Plaintiff her fees and costs for opposing an entirely baseless motion pursuant to 28 U.S.C. § 1927.

Respectfully Submitted,

/s/ Mark D. DeBofsky
One of the attorneys for the plaintiff

Mark D. DeBofsky
Daley, DeBofsky, & Bryant

14

55 West Monroe, Suite 2440
Chicago, Illinois 60603
(312) 372-5200
FAX (312) 372-2778

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on July 11, 2008, he electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF filing system, which sent notice of such filing to all parties entitled to notice.

/s/ Mark D. DeBofsky
Mark D. DeBofsky

Mark D. DeBofsky
Daley, DeBofsky, & Bryant
55 West Monroe, Suite 2440
Chicago, Illinois 60603
(312) 372-5200
FAX (312) 372-2778