IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **JANICE BAKE** ) | |
| ) | |
| Plaintiff ) | Case No.: 07 C 6600 |
| ) | |
| vs. ) | Judge Der-Yeghiayan |
| ) | |
| **LIFE INSURANCE COMPANY OF** ) | Magistrate Judge Cox |
| **NORTH AMERICA** ) | |
| ) | |
| **Defendant.** ) | |

**REPLY TO PLAINTIFF'S RESPONSE TO
LINA'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendant, LIFE INSURANCE COMPANY OF NORTH AMERICA ("LINA"), by its counsel, Daniel K. Ryan and Peter E. Pederson, respectfully submits this Reply to Plaintiff's Response to LINA's Cross-Motion for Summary Judgment:

**I.     INTRODUCTION**

A reasonable trier of fact could not find that Janice Bake's spinal condition prevents her from performing her former sedentary occupation given that two of her three physicians found no limitations to her functionality and the physician who made a disability finding, Dr. Christopher Bergin, failed to explain his conclusion. Moreover, Bake exhibits no atrophy, and she engages in activities as strenuous as those involved in sedentary work. In her response brief, Bake argues that her self-reported pain and Dr. Bergin's disability finding create a fact issue precluding summary judgment. However, this evidence fails to raise a genuine issue of fact because it is contradicted by the absence of atrophy, Bake's activities, and the vast majority of the medical evidence. Bake cannot, as a matter of law, meet the Group Policy's definition of disability, and summary judgment should therefore be entered in LINA's favor.

## II.    ARGUMENT

**A.    A reasonable trier of fact would not find that Bake is disabled under the Policy because the evidence shows that she retains the ability to perform her sedentary occupation.**

Summary judgment is appropriate when, based on the evidence presented, a reasonable trier of fact could not find in favor of the non-moving party on any essential element of her claim. *Lindemann v. Mobil Oil Corp.,* 141 F.3d 290, 294 (7th Cir. 1998); *Navarro v. Fuji Heavy Industries, Ltd.,* 117 F.3d 1027, 1030 (7th Cir. 1997). To recover long-term disability ("LTD") benefits under the group policy ("Policy") that LINA issued to Corus Bankshares, Inc. ("Corus"), Bake must show that she meets the Policy's definition of disability. Under that definition, Bake is deemed disabled only if, because of injury or disease, she is "unable to perform all the material duties of his or her regular occupation." (Record 373).

In her response to LINA's motion for summary judgment, Bake does not dispute that her position at Corus was sedentary. (*See* Bake's Response to ¶¶ 8, 36 of LINA's Statement of Material ("SMF")). Sedentary work involves mainly sitting, some standing and walking, and occasionally exerting up to ten pounds of force to move things. *Davis v. Unum Life Ins. Co. of America*, 444 F.3d 569, 577 (7th Cir. 2006). Bake's claim can survive summary judgment only if a trier of fact could find, based on this record, that her spine condition is so severe as to prevent her from performing even the minimal activities involved in sedentary work. The evidence does not support such a finding.

The clinical assessments of Bake's rheumatologist, Dr. Erin Arnold, and neurosurgeon, Dr. George Bovis, make clear that Bake retained the capacity to perform the duties of her sedentary occupation. On a form used to assess functionality, Dr. Arnold wrote "N/A" next to the questions: "What are the specific restrictions that you placed on your patient?" "What are the additional factors impacting return to work?" Dr. Arnold consistently reported that Bake

presented with normal strength and a normal neurological exam. (SMF ¶ 19, 33-35). Dr. Bovis stated that the cervical discectomy he performed in January 2006 resulted in complete relief of Bake's pain. He consistently noted that she had a normal motor exam and normal neurological exam. As of September 2006, her only complaint was ulnar nerve distribution that was unchanged from before surgery. (SMF ¶ 24-26). Dr. Arnold and Dr. Bovis documented no atrophy or loss of strength. They did not note any limitations on Bake's capacity to perform her sedentary occupation.

The clinical assessments provided by Dr. Arnold and Dr. Bovis alone would bar a trier of fact from finding that Bake is disabled from sedentary work. These doctors would have noted functional deficits severe enough to preclude sedentary work. That they did not document disabling impairments shows that Bake is not incapable of sedentary work. In her response brief, Bake does not mention either of these physicians.

Consistent with the assessments of Dr. Arnold and Dr. Bovis, Bake engaged in activities as strenuous as sedentary work after she left the workforce. Bake continued to cook, clean, read, and watch television on a daily basis. She shopped regularly and could drive for about 20 miles. She did obedience training with her dog. She had good tolerance of physical therapy, which resulted in improvements in her condition throughout 2006. By February 2007, Bake was performing increased activities of daily living, using her hands overhead to put dishes into a cabinet, and cooking again. (SMF ¶ 46, 48, 19, 38).

Dr. Avrom Simon, who reviewed Bake's medical records, prepared a report that reinforces the conclusion that Bake retained the ability to perform sedentary work. Among other things, he noted that Bake had had spine conditions since 2002, yet the records did not reveal any change in condition that would preclude her from working as of June 2006. After Bake left the

workforce, she did not exhibit the atrophy or muscular decompensation that would occur in a patient engaging in less than sedentary activities. (SMF ¶ 48). Rather, the records documented full motor strength and the absence of atrophy, which shows that Bake's spine condition had not limited her to less than sedentary work.

Bake argues that Dr. Simon's analysis is defective because there is no objective measurement of how much pain someone is experiencing. (Resp. p. 12-13). This argument is misdirected. Bake has not argued that pain is what is preventing her from performing sedentary activities. (*See e.g.* Record 700, 673). When Dr. Howard S. Konowitz examined Bake, she was taking one pain medication, Ultracet, which is for moderate to acute pain.[1] (Record 111). When Bake described in her own words why she could not work, she did not mention pain until the fourth item. She claimed that pain prevented bending and affected her use of the phone; she did not contend that pain itself prevented the performance of sedentary activities. (Record 673). That Bake's pain did not preclude sedentary work is further evidenced by the fact that she has no atrophy or deconditioning. (SMF ¶ 48).

Bake mistakenly argues that Dr. Simon cannot assess her functional capacities unless he examines her. By reviewing a patient's medical records, consulting doctors "are fully able to evaluate medical information, balance the objective data against the subjective opinions of the treating physicians, and render an expert opinion without direct consultation." *Davis v. Unum Life Ins. Co. of America*, 444 F.3d 569, 577 (7th Cir. 2006). As Bake points out, *Davis* involved a claim reviewed under the arbitrary and capricious standard of review, whereas the Court has held that the *de novo* standard applies here. This distinction does not help Bake. The standard of

review affects the plaintiff's burden of proof, but it does not lessen the probative value of a report prepared by a physician who reviews a claimant's medical records. A reviewing physician's report the same evidentiary value under both standards of review. That Dr. Simon's analysis is based on the records of Bake's physicians does not reduce its probative value.

Bake sets up a straw man when she argues that Dr. Simon concluded she could perform sedentary work simply because she could get up in the morning and take a shower. (Resp. Brief p. 10). Dr. Simon's assessment of her functional status considered not just her ability to get up and perform personal hygiene, but her ability to drive, walk, train her dog, cook, and perform overhead tasks with kitchen equipment. He also noted that she exhibited no atrophy, as would occur in a patient confined to less than sedentary activity. Further, Dr. Simon's assessment of her limitations echoes the assessments of Dr. Arnold and Dr. Bovis.

Bake's last argument is that Dr. Simon failed to analyze whether she could perform her specific occupational duties at Corus, such as its cognitive requirements, and instead only analyzed whether she could perform sedentary occupations in general. (Resp. Brief p. 13). This argument is a red herring. Dr. Simon testified, and the Department of Labor's Dictionary of Occupational Titles confirms, that Bake's position was sedentary. (Simon Dep. p. 89-90; SMF ¶ 8). Thus, a finding that Bake could perform sedentary occupations was the same as a finding that she could perform her original occupation. Second, Bake and her physicians never argued that she was disabled because she could not meet the cognitive requirements or travel requirements of her occupation. (Record 673, 700). They argued that she could not perform the physical requirements of the job, such as using a computer and sitting at a chair. Given this, Dr.

---

1  Ultracet is characterized as a weak opioid with minimal addiction potential. *See* http://www.fmaware.org/site/PageServer?pagename=fibromyalgia_overview

Simon had no reason to assess whether Bake could meet the travel or cognitive requirements of her job.

The record shows that Bake did not experience atrophy, that Dr. Arnold and Dr. Bovis noted no limitations on her functionality, that Bake's former position was sedentary, and that Bake engaged in normal life activities after leaving the workforce. On these facts, no reasonable trier of fact would find that Bake's spine condition precludes her from performing her sedentary occupation. Accordingly, summary judgment should be entered in LINA's favor and against Bake.

### B. The evidence that Bake emphasizes in her response brief does not create a genuine issue of fact precluding summary judgment.

Bake argues that under *de novo* review the insurer of an ERISA plan "can prevail on summary judgment 'only if [the claimant] failed to submit evidence' supporting eligibility." (Resp. Brief. p. 6). However, the case she cites for this proposition, *Diaz v. Prudential Ins. Co. of America*, 499 F.3d 640, 645 (7th Cir. 2007), recognizes that a conflict in medical opinions concerning whether the eligibility standard is met does not necessarily preclude summary judgment. In *Sperandeo v. Lorillard Tobacco Co.,* 460 F.3d 866, 867 (7th Cir. 2006), which the *Diaz* court cited, an employee seeking disability benefits under ERISA alleged he could not work in part because of a neurological injury that allegedly resulted from a car accident. The Seventh Circuit held that the district court, conducting *de novo* review, properly found on summary judgment that the neurological injury was not disabling, although the claimant's internist alleged that the neurological injury precluded him from working. *Id.* at 875-76. The vast majority of the medical evidence that the insurer compiled, including the reports of several neurologists,

---

http://www.drugs.com/pro/ultracet.html  The other medications Bake disclosed to Dr. Konowitz are not prescribed for pain relief. (Record 111).

indicated that the neurological injury did not preclude the claimant from working. As a result, the internist's dissenting view did not create a fact issue precluding summary judgment.

Bake argues that, under *Diaz*, Dr. Bergin's finding that she cannot perform her sedentary occupation precludes summary judgment. However, like the internist's report in *Sperandeo*, Dr. Bergin's opinion does not create a fact issue. Dr. Bergin's disability finding lacks probative value because Dr. Bergin has not adequately explained the finding, he gave shifting explanations for the finding, and the finding is contrary to the opinions of Drs. Arnold, Bovis, and Simon.

Dr. Bergin initially excused Bake from work based on cervical radiculopathy for which he and Dr. Bovis performed surgery in January 2006. (SMF ¶ 9). Later, he and Dr. Bovis reported that the surgery was a great success. When Bake applied for disability benefits, Dr. Bergin listed her diagnoses as cervical radiculopathy and thoracic kyphosis. He stated that Bake could not do her job because she was "unable to look forward more than one half hour at a time, unable to use computer and keyboard, [and] needs to change positions frequently." (SMF ¶ 14). Dr. Bergin later changed his explanation. In his May 10, 2007 letter, Dr. Bergin conceded that her cervical spine condition was not disabling. (444). Instead, he claimed she could not work because of her thoracic spine. However, MRIs showed that her thoracic spondylosis was moderate, it had not changed since 2006, and it did not warrant surgery. (Record 444, 610). Dr. Bergin never explained the shift in his emphasis from the cervical spine to the thoracic spine, nor did he explain why moderate thoracic spondylosis would preclude Bake from engaging in sedentary activities.

Dr. Bergin's unexplained finding of disability conflicts with the clinical assessments of the rheumatologist, Dr. Arnold, and the neurosurgeon, Dr. Bovis, who never assessed any limitations on Bake's ability to perform sedentary work. That Bake's rheumatologist and

6343030v2 51096

neurosurgeon did not notice any functional impairments undercuts Dr. Bergin's unexplained opinion that her functional impairments precluded even sedentary work. Additionally, Dr. Bergin did not explain why, if Bake was capable of less than sedentary activity, she did not exhibit muscular deconditioning and she continued performing normal life activities. In the face of the assessments of Drs. Arnold, Bovis and Simon, Dr. Bergin's conclusory opinion is insufficient to support a finding of fact that Bake's spine condition prevents her from performing sedentary work. Summary judgment in LINA's favor is therefore appropriate. *Vollmert v. Wis. Dep't of Transp.,* 197 F.3d 293, 298 (7th Cir. 1999); *Weigel v. Target Stores,* 122 F.3d 461, 468-69 (7th Cir.1997).

Bake relies on *Diaz* and *Patton v. MFS/Sun Life Financial Distributors, Inc.*, 480 F.3d 478 (7th Cir. 2007), in attempting to show that summary judgment is inappropriate, but the cases are factually distinguishable. In *Diaz,* the claimant sought disability benefits because of lumbar degenerative disc disease and radiculopathy, for which he had been treated with epidural steroid injections, back surgery, and powerful narcotics that resulted in opioid dependency. He submitted "several doctors' notes expressing the opinion that his condition prevented him from sitting for more than fifteen to twenty minutes at a stretch." 499 F.3d at 642. In contrast, only Dr. Bergin supported Bake's disability claim; her other treating physicians did not do so. In *Diaz,* diagnostic testing conducted by a physical therapist supported the claim of disability. *Id.* at 646. The physical therapy records here show that Bake was steadily improving and she did not have disabling impairments. Further, Diaz was on a powerful regimen of narcotics, while Bake is only taking Ultracet. (Record 111). The evidence supporting Bake's claim is not comparable to the evidence supporting Diaz's claim.

*Patton* is not remotely comparable to this case. There, the claimant's surgeon, Dr.

Ambrose, sent the insurer of his disability plan contradictory letters regarding whether his knee injury prevented him from performing his job as a truck driver.  In a March 9, 2004 form, Dr. Ambrose stated that Patton had been released to work without restrictions.  480 F.3d at 482.  In a May 12, 2004 letter, Dr. Ambrose stated that severe arthritis permanently prevented Patton from using the clutch on tractor trailer rigs.  *Id*.  Nothing in the record hinted at  which of these diametrically opposed assessments reflected Dr. Ambrose's actual opinion, which precluded the lower court from disposing of the case under Rule 56.  Here, the administrative record does not leave unresolved a case-dispositive issue, such as the opinion of Bake's treating physicians concerning the extent of her abilities.  Unlike in *Patton*, there is no case-dispositive ambiguity in the record that precludes summary judgment.

Bake's counsel makes the strange argument that the administrative record LINA assembled prior to the litigation is inadmissible hearsay because LINA's counsel failed to stipulate to a trial on the papers.  (Resp. Brief f.n. 1).  The Federal Rules of Evidence do not apply to the materials considered by claim administrators of ERISA-governed pension plans.  *Karr v. National Asbestos Workers Pension Fund*, 150 F.3d 812, 814 (7th Cir. 1998) (rejecting argument that form for electing pension benefits was inadmissible because plan failed to authenticate signature); *Steele v. Life Ins. of North America,* 408 F.Supp.2d 627, 631 f.n. 1 (C.D. Ill. 2006).  Aside from her claim that Dr. Bergin's residual functional capacity assessment was omitted from the administrative record (Bake's Response to SMF ¶ 39), Bake has not challenged the completeness or accuracy of the record.  Her hearsay objection is not well-founded.

Bake argues that her award her Social Security Disability Insurance ("SSDI"), and the examination Dr. McFarlane conducted for the Social Security Administration ("SSA") on December 6, 2006, support her contention that she is disabled.  However, Dr. McFarlane noted

that Bake made a sub-maximal effort on strength but still demonstrated motor strength of 4/5 in the upper and lower extremities. He did not report that she was disabled from all work. (Record 356-58). The SSA initially denied Bake's claim based on Dr. McFarlane's exam. (Record 114). On June 21, 2007, the SSA reversed this determination, but the decision form does not give the reason for the reversal. (Record 114). The SSA's interpretation of Bake's medical records does not constitute medical evidence that her spine condition precludes her from working.[2]

Last, Bake argues that LINA ignored whether carpal tunnel syndrome precluded Bake from using a keyboard and computer as required by her former occupation. (Resp. Brief p. 9-10). This argument misses the mark. None of Bake's physicians certified that she was disabled because of carpal tunnel syndrome. (SMF ¶ 27, 34-36). When she was referred for a work-up related to carpal tunnel syndrome, Dr. Williams reported that she had a normal range of motion in the wrists and digits bilaterally. He documented no atrophy or reduction in strength caused by carpal tunnel syndrome. (606). He stated that the carpal tunnel syndrome was mild. (SMF 35-36; Record 606, 484-86). Similarly, Dr. McFarlane reported her grip strength was 4/5 bilaterally and she could flex, extend and oppose her hands and fingers. He did not list carpal tunnel syndrome among her medical problems. (Record 359). Since Bake and her physicians never argued that carpal tunnel syndrome precluded her from performing sedentary work, LINA had no reason to analyze that claim.

Because the evidence would not support a finding that Bake's medical conditions are severe enough to preclude sedentary work, summary judgment should be entered in LINA's favor.

---

[2] Furthermore, even where an employee benefit plan has in the past followed the SSA's findings of disability, the SSA's disability determinations are not binding on the plan. *Anderson v. Operative Plasters' II*, 991 F .2d 356, 358-59 (7th Cir. 1993); *Chandler v. Underwriters Laboratories*, 850 F. Supp. 728 (N.D. Ill. 1994). Different

**C. By filing a motion for summary judgment in accordance with a briefing schedule to which Bake's counsel agreed, LINA's counsel did not engage "serious and studied disregard for the orderly process of justice." Sanctions under 28 U.S.C. § 1927 are therefore inappropriate.**

In Bake's motion to strike and response to LINA's motion for summary judgment, Bake suggested that LINA's counsel had violated 28 U.S.C. § 1927 by filing a dispositive motion in an ERISA case subject to *de novo* review. This argument is curious in light of the fact that Bake's counsel has filed motions for summary judgment in dozens if not scores of ERISA cases subject to *de novo* review. *See, e.g., Marantz v. Long Term Disability Ins.,* No. 06 C 0467 (N.D. Ill.) (Judge Moran denied both parties' cross-motions); *Mallon v. Continental Grain Co. Long Term Disability Plan,* No. 03 C 2054 (N.D. Ill.) (Judge Gottschall entered summary judgment for LINA and the benefit plan); *Coles v. LaSalle Partners Long Term Disability,* No. 03 C 0226 (N.D. Ill.) (Judge Shadur denied cross-motions for summary judgment).

The suggestion that LINA's counsel violated § 1927 by filing LINA's dispositive motion has absolutely no merit. Sanctions under § 1927 may be awarded only if counsel

> has acted in an objectively unreasonable manner by engaging in a "serious and studied disregard for the orderly process of justice"... or where a "claim [is] without a plausible legal or factual basis and lacking in justification." *Pacific Dunlop Holdings v. Barosh,* 22 F.3d 113, 119 (7th Cir. 1994).

On January 24, 2008, the Court entered a schedule for dispositive motions at a hearing attended by both parties' counsel. Bake's counsel did not object to the Court's entry of the briefing schedule. Thereafter, in accordance with the schedule, LINA's counsel filed LINA's dispositive motion. For the reasons stated above and in LINA's opening brief, the dispositive motion has significant support in the law and the evidence. By filing a well-supported dispositive motion in accordance with a briefing schedule to which Bake's counsel agreed,

---

fact finders can reach different though reasonable conclusions based on the same evidence.

LINA's counsel did not commit a "serious and studied disregard for the orderly process of justice." Any motion for sanctions under § 1927 would be devoid of merit, even if this Court finds that Bake's evidence is sufficient to create a fact issue precluding summary judgment.

However, Bake has not moved for sanctions under § 1927. LINA's counsel reserve the right to submit a legal memorandum in opposition to any motion that Bake brings under § 1927.

### III. CONCLUSION

WHEREFORE, LIFE INSURANCE COMPANY OF NORTH AMERICA respectfully requests that this Honorable Court enter summary judgment in its favor and against JANICE BAKE.

Respectfully submitted:

LIFE INSURANCE COMPANY OF NORTH AMERICA

Daniel K. Ryan
Peter E. Pederson
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street - S. 300
Chicago, Illinois 60601
(312) 704-3000
**Fax:** (312) 704-3001

By: /s/ Daniel K. Ryan
   One of its Attorneys

## **CERTIFICATE OF SERVICE**

      I, the undersigned attorney, certify that, on August 4, 2008, I e-filed this document using the Court's CM/ECF filing system, which will make a copy available to counsel of record identified below.

s/ Daniel K. Ryan

## **SERVICE LIST**

Mark D. DeBofsky, Esq.
Daley, DeBofsky & Bryant
55 W. Monroe St., Suite 2440
Chicago, Illinois 60603

6343030v2 51096