IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANICE BAKE ) | |
| ) | |
| Plaintiff ) | Case No.: 07 C 6600 |
| ) | |
| vs. ) | Judge Der-Yeghiayan |
| ) | |
| LIFE INSURANCE COMPANY OF NORTH ) AMERICA ) | Magistrate Judge Cox |
| ) | |
| Defendant. ) | |
| ) | |

## DEFENDANT LIFE INSURANCE COMPANY OF NORTH AMERICA'S RESPONSE TO PLAINTIFF'S 56.1 STATEMENT OF ADDITIONAL FACTS

Defendant, LIFE INSURANCE COMPANY OF NORTH AMERICA ("LINA"), by its attorneys, DANIEL K. RYAN and PETER E. PEDERSON, submits this Response to Plaintiff's Local Rule 56.1 Statement of Additional Facts Requiring Denial of Summary Judgment:

1.      Janice Bake (DOB 5/xx/1949) was employed by Corus Bank for over 30 years, and as of June 2006 held the position of First Vice President-Operations Analyst.  (674, 721). Bake's position required her to manage the operations department, develop and implement operating systems, hire and manage competent staff, keep abreast of relevant legislation and technological advances, and work with various government agencies.  (722-23).  Although the occupation is classified as "sedentary" by the U.S. Government's Dictionary of Occupational Titles (DOT), it nonetheless requires he ability to coordinate complicated activities and manage people, prepare and analyze reports, sit and/or stand for long periods of time and work for varied hours/days, and travel on the local and national level.  (428-29, 718-22).

**RESPONSE:**  The first two sentences are not disputed.  The third sentence is disputed to as Bake and her doctors never claimed that she lacked the cognitive ability to coordinate the activities she supervised or the ability to travel as necessary for her former occupation.  (Dr. Bergin's assessment, 700; Bake's activities questionnaire, 673-74; Dr. Arnold's assessment, 685-87; Dr. Bovis's assessment, 495).

6343221v1 51096

2.      In January 2006, Bake underwent a cervical diskectomy and fusion surgery due to chronic and severe back, arm and shoulder pain related to cervical spondylosis and radiculopathy. (154-58). Although Bake initially attempted to return to work part-time after the surgery, she continued to experience symptoms of neck pain and numbness in her hands and arms. (673, 703). Furthermore, the progression of degenerative disc disease in her thoracic and lumbar spine, thoracic kyphosis, as well as rheumatoid arthritis and worsening carpal tunnel syndrome, all caused Bake significant pain which contributed to her ongoing inability to perform her job duties after June 21, 2006. (484, 673, 700-10).

**RESPONSE:** Admit that Bake underwent cervical diskectomy in January 2006 as treatment for cervical radiculopathy that was causing pain to Bake's upper extremities. (154-58, 156, 501). Admit that Bake continued to complain of pain after returning to work. (673). Deny that Bake's medical conditions preclude her from performing the duties of her occupation at Corus. (Dr. Arnold's assessment, 685-87; Dr. Bovis's assessment, 495; Dr. Simon's report, 93-97; Physical therapy records, 391, 464). Deny that Bake has been formally diagnosed with rheumatoid arthritis because her rheumatologist, Dr. Arnold, never made such a diagnosis (685-87). Deny that carpal tunnel syndrome precludes Bake from working because Dr. Williams doubted she had this condition and noted normal dexterity and strength in the hands. (606)

3.      Bake subsequently applied for LTD benefits under Defendant's policy, and submitted a report on September 13, 2006 describing how she experienced numbness and partial loss of feeling in both hands, fingers, and arms that limited her ability to use them. (673). She noted she cannot sit for long periods because her legs and feet tingle. (*Id*.) She reported pain and loss of balance caused her to drop things and prevent lifting and bending. (*Id*.) She noted that sitting causes muscle spasms to her shoulder and neck, and that she was only seldom able to use a computer due to neck pain and stiffness. (*Id*.)

**RESPONSE:** Admit that ¶ 3 is a fair summary of the cited activities questionnaire. Deny that Bake's medical conditions preclude her from performing the duties of her occupation at Corus. (Dr. Arnold's assessment, 685-87; Dr. Bovis's assessment, 495; Dr. Simon's report, 93-97; Physical therapy records, 391, 464).

4.      (1) Bake's treating orthopedist, Dr. Christopher Bergin, submitted evidence supporting Bake's claims and certifying her disabling impairments. (2) He filled out a medical

2

request form from Defendant on September 12, 2006 certifying his opinion that Bake could not perform her job duties based upon cervical and thoracic problems. (700). (3) He submitted medical records that indicated Bake experienced a return of cervical pain and numbness in her extremities a few months after surgery, as well as worsening thoracic back pain due to severe disc degeneration. (701-04). (4) Dr. Bergin's records show Bake's pain became "more and more debilitating" and interfered with daily activities, and her worsening condition was confirmed by physical examination, x-rays, and a bone scan. (706-06). (5) Further, an April 24, 2006 MRI showed moderate to severe disc degeneration at all levels of Bake's thoracic spine as well as disc protrusions and cord flattening, and Dr. Bergin noted thoracic spinal surgery should be considered. (560, 707-08). (6) In an August 22, 2006 chart note, Dr. Bergin noted numbness in Bake's ulnar distributions, lumbar radiculopathy, thoracic problems, and reported that despite some pain management Bake remained "unable to perform her job duties and this may be permanent." (710).

**RESPONSE:** The first two sentences are not disputed, although Dr. Bergin's opinion is insufficient to raise a fact issue as to whether Bake meets the policy's definition of disability for the reasons set forth in LINA's reply brief. The third sentence is denied because the records cited show that Bake's pain had improved, not worsened. (*See e.g.* 701). As to the fourth sentence, LINA admits that Bake complained of debilitating pain to Dr. Bergin, but denies that a worsening condition was confirmed by physical exam, x-rays and a bone scan given that MRIs showed that her thoracic condition was stable (631-32, 345) and the cited documents are not test results showing a worsening in Bake's condition. As to the fifth sentence: Dr. Bergin noted that the MRI showed no frank spinal cord compression (707), with disc degeneration and disc herniations. (707). While Dr. Bergin considered thoracic spine fusion, but never performed the procedure according to the records presented. As to the sixth sentence, LINA admits that Dr. Bergin noted ulnar distribution, but he said that her thoracic pain and pain radiating to the lower extremities was mild. (710). LINA admits that Dr. Bergin stated Bake might be permanently unable to perform her job duties, but he did not provide an explanation for that finding or identify the particular job duties she could no longer perform. (710).

5. After Defendant's initial denial of her LTD benefits on November 8, 2006, Bake submitted an appeal and additional medical evidence in support of her claim. (422, 481-82, 574-

3

81). She included reports from a neurologist, Dr. Igor Rechitsky, who diagnosed Bake with severe carpal tunnel syndrome after conducting nerve conduction studies on October 24, 2006. (484-86). On March 13, 2007, Dr. Rechitsky recommended surgical intervention for Bake's worsening left carpal tunnel s syndrome. (257).

**RESPONSE:** LINA does not dispute the first sentence. LINA denies the second sentence because Dr. Rechitsky did not diagnose severe carpal tunnel syndrome (484) and Dr. Williams stated her carpal tunnel syndrome was mild. (606). LINA denies the third sentence because Dr. Rechitsky recommended immediate consideration of surgery for carpal tunnel syndrome; he did not recommend surgery. (256).

6. Bake also submitted updated MRI results from January 15, 2007 that revealed "moderate thoracic spondylosis with multilevel disc protrusions again identified." (632). Dr. Bergin commented on January 30, 2007 that Bake's thoracic spine showed severe degenerative changes and that all the discs in her spine showed some degree of degeneration. (610). Dr. Bergin noted Bake had resultant low back pain radiating down her thigh and severe diskopathy. (*Id*.)

**RESPONSE:** The first sentence is not disputed. LINA admits that Dr. Bergin made the comment summarized in the second sentence, but denies the comment is accurate given that the January 2007 MRI showed moderate thoracic spondylosis that was unchanged from April 2006. (610, 631-32 (January 2007 MRI); 345-46 (April 2006 MRI)). LINA admits that the third sentence is a fair summary of Dr. Bergin's January 30, 2007 report.

7. On a March 30, 2007 Residual Functional Capacity Questionnaire (RFC) also submitted to Defendant, Dr. Bergin identified Bake's chronic pain due to cervical myelopathy and thoracic/lumbar spondylosis. (Bergin RFC at 1-2). Dr. Bergin opined that such pain would constantly interfere with Bake's attention and concentration in a typical workday, that she could not sit or stand for more than 20 minutes at a time without taking a break, and that she had significant limitations with reaching, handling, and fingering. (*Id*. at 1-2, 4).

**RESPONSE:** It appears that Dr. Bergin did not complete the Residual Physical Functional Capacity Questionnaire ("RFC") because the report consistently misspells "thoracic" as "thorasic." Dr. Bergin, an orthopedic surgeon, would not make that spelling error. The

remainder of ¶ 7 summarizes statements contained in the RFC, but it is not a complete summary of the RFC.

8. In a May 10, 2007 letter, Dr. Bergin clarified that while Bake's cervical spine alone would not necessarily preclude work, it was still a "contributing factor" to her inability to work along with thoracic degenerative disc disease, lumbar degenerative disc disease, and ulnar and median nerve distributions. (443-44). Dr. Bergin specifically noted Bake's thoracic condition would likely require surgical intervention and precluded even sedentary work. (*Id*.)

**RESPONSE:** This paragraph does not accurately summarize Dr. Bergin's May 10, 2007 note. Dr. Bergin wrote that: "I do agree that her cervical spine alone would not necessarily warrant disability, it is really her thoracic spine and to some extent her lumbar spine that limit her ability to work." (443). LINA does not dispute that Dr. Bergin listed cervical degenerative disc disease and lumbar disc disease as contributing factors. (444). LINA does not dispute that Dr. Bergin claimed that the thoracic spine problem precluded sedentary work, although Dr. Bergin's assessment is unexplained and contrary to the reports of the other doctors. (Dr. Arnold's assessment, 685-87; Dr. Bovis's assessment, 495; Dr. Simon's report, 93-97; Physical therapy records, 391, 464).

9. Bake also underwent physical therapy for her condition, and submitted those notes to Defendant. (389-421, 446-78). On August 25, 2006, the physical therapist (PT) noted that while Bake had made some progress, she continued to have stiffness throughout her thoracic region, significant weakness in her upper extremities, and general deconditioning. (391). On October 13, 2006, the PT noted Bake had decreased shoulder range of motion and reduced upper extremity strength. (390). On January 1, 2007, she noted Bake was still unable to ambulate stairs and was unable to lift pots and pans. (389).

**RESPONSE:** LINA denies the second sentence because the August 25, 2006 note indicates extensive improvement: Bake was able to do more around the house, had an improved ability to relax, and was progressing with pain and posture training. (391). LINA denies the third sentence as the therapist noted that Bake was able to do more around the house and had a range of motion ("ROM") in the shoulders within normal limits. (390). LINA denies the fourth

5

sentence as the therapist noted that Bake had improved range of motion in the upper extremities and endurance in overhead activity and was a good candidate for continued functional improvement. (389). Further, on February 27, 2007, the therapist noted that Bake had increased her activities of daily living, was using arms overhead to work with pots and pans, and was progressing with strength and endurance training. (464).

10. Despite this additional evidence, Defendant upheld its denial of Bake's claim on May 25, 2007. (434-46). Bake subsequently appealed a second time, and submitted evidence that the Social Security Administration awarded her disability benefits, finding her disabled since June 21, 2006. (114). An award of Social Security benefits indicates a finding that Bake was unable to engage in "any substantial gainful activity." 42 U.S.C. § 423(d)(1)(A) (Social Security definition of "disabled.") Bake submitted the entire Social Security claim file to Defendant, which included an independent evaluation performed for the SSA by Dr. Paul McFarlane. (358-59). Dr. McFarlane examined Bake and noted multiple problems, including cervical pain associated with numbness and tingling and decreased range of motion in the cervical spine, thoracic spine pain, diminished range of motion of the lumbar spine, and balance problems, among other things. (358-59).

**RESPONSE:** LINA admits that it denied the appeal on May 25, 2007 and that Bake submitted a second appeal with her award of Social Security Disability Insurance Benefits ("SSDI"). LINA denies that the SSDI benefits signify that she is incapable of performing any substantial gainful activity as the award only represents the Social Security Administration's ("SSA") finding that Bake met that criteria. Further, Dr. McFarlane, while noting Bake's complaints, did not document functional impairments or find that she was disabled. The SSA initially denied Bake's claim for SSDI benefits based on his report. (114, 356-59).

11. Despite the submission of the evidence described in the preceding paragraphs, Defendant again upheld its decision on October 24, 2007, relying on a report it requested from Dr. Avrom Simon, a non-practicing physician who reviewed Bake's file rather than examining her. (90-96). Dr. Simon's report indicated Bake had multiple medical problems, but he concluded there was no "objective" evidence that supports restrictions or limitations that would prevent work. (96). He opined she could perform sedentary work, indicating this was demonstrated by "getting up in the morning, getting dressed and taking a shower." (96).

6

**RESPONSE:** Admit that LINA denied the appeal based on Dr. Simon's report. Deny that Dr. Simon is a non-practicing physician. Dr. Simon indicated that since 2004 he had not provided patient care, but had providing medical consulting services to insurance entities. (Simon Dep. p. 6-9). Deny that this paragraph is a complete or accurate summary of the explanation that Dr. Simon provided for his opinion. Dr. Simon's analysis is summarized in ¶¶ 46-48 of LINA's Statement of Material Facts.

12. Bake's counsel deposed Dr. Simon on April 29, 2008. Dr. Simon stated he had been employed for several years by Intracorp, a subsidiary corporation owned by Defendant and the company who referred him Bake's case. (98-99; Simon Depo. at 5). Dr. Simon stated he conducts approximately eight such file reviews a month for Intracorp, and never examines patients in connection with their benefit claims. (Simon Depo. at 9, 24, 77). Dr. Simon admitted he has engaged in no actual patient care or direct examination of patients for several years, but that his work consists entirely of conducting file reviews for insurers. (*Id*. at 9, 19-22).

**RESPONSE:** Admit the first sentence. Deny that Intracorp is a subsidiary of LINA; the two entities are subsidiaries of the same corporation. Dr. Simon stated it was possible he performed about eight file reviews for Intracorp per month. (Simon Dep. p. 77). Dr. Simon had provided patient care up until 2004, when he began consulting on a full time basis. (Simon Dep. p. 9).

13. Dr. Simon, addressing the opinion in his report as to lack of "objective" evidence of Bake's limitations, admitted that no conclusive test exists to objectively determine exactly how much pain a person experiences. (*Id*. at 17). Dr. Simon conceded the most accurate way to determine pain limitations would be to perform a physical examination, take an in-person medical history, elicit specific pain responses, and test range of motion. (96; Simon Depo. at 45-47, 59, 87-88). Dr. Simon further acknowledged the independent examination of Bake by a Social Security physician showed markedly decreased range of motion in the lumbar and cervical spine. (Simon Depo. At 55-56).

**RESPONSE:** The first sentence is not disputed. The second sentence is denied because Dr. Simon did not concede that a physical exam was the sole or most accurate way of measuring pain. (Simon Dep. p. 45-47, 59, 87-88). The third sentence is not disputed.

14. Dr. Simon further admitted he never considered whether Bake's medical problems would prevent her from performing her job duties at Corus Bank. (*Id*. at 69-70). Rather, he only considered whether she could perform work in a "sedentary" capacity. (96). Dr. Simon also conceded that performing even a sedentary job would require more capability than is required by showering once a day, as he had noted in his report for Defendant. (96; Simon Depo. at 70-75). Dr. Simon further admitted he gave no consideration at all to Bake's ability to perform her significant non-exertional job requirements. (*Id*. at 67-68).

**RESPONSE:** The first and second sentences of ¶ 14 is denied as Dr. Simon testified that Bake's position at Corus was sedentary, meaning that an analysis of her ability to perform sedentary work necessarily addressed whether she could perform her prior occupation. (Simon Dep. 88-89). The third sentence is denied because Dr. Simon relied on much more than Bake's ability to take a shower in concluding she could perform sedentary work. He cited her ability to do activities of daily living, train her dog, cook, drive, read and watch television. (Record 96; Simon Dep. p. 67-68). The allegation in the fourth sentence that Dr. Simon failed to analyze whether Bake could perform the non-exertional duties of her job is a red herring because Bake did not contend she unable to perform the non-exertional duties of her occupation.

Respectfully submitted:

LIFE INSURANCE COMPANY
OF NORTH AMERICA

By:  /s/ Peter E. Pederson
         One of its Attorneys

Daniel K. Ryan, Esq.
Peter E. Pederson, Esq.
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street
Suite 3000
Chicago, Illinois  60601
(312) 704-3000
**Fax:**  (312) 704-3001
dryan@hinshawlaw.com
ppederson@hinshawlaw.com

6343221v1 51096

**CERTIFICATE OF SERVICE**

      I, the undersigned attorney, certify that on August 4, 2008, I e-filed this document using the Court's CM/ECF system, which will make copies of available to all counsel of record.

                              /s/ Peter E. Pederson

**Service List**

Mark D. DeBofsky, Esq.
Daley, DeBofsky & Bryant
55 W. Monroe St., Suite 2440
Chicago, Illinois 60603
(312) 372-5200 x4880
FAX (312) 372-2778
E-mail: mdebofsky@ddbchicago.com

6343221v1 51096